## IN THE CIRCUIT COURT OF LEFLORE COUNTY
## MISSISSIPPI

**DIETRICHE S. JONES, BRANDON DAVIS,**
**ANTOINETTE STEWART, the Wrongful Death Beneficiaries of**
**LILLIAN STEWART DAVIS, Deceased**                                    **Plaintiffs**

**V.**                                                         Cause No. _2025-005-CICI_

**GREENWOOD LEFLORE HOSPITAL,**
**RICHARD SCOTT JOHNSON, PLLC,**
**RICHARD S. JOHNSON, MD**
**TIMOTHY LAMB, DO AND**
**JOHN/JANE DOES 1-20**                                             **Defendants**

## COMPLAINT
## (JURY TRIAL DEMANDED)

**COMES NOW**, Plaintiff, Dietriche S. Jones, individually and on behalf of the wrongful death beneficiaries of Lillian Stewart Davis, deceased, by and through undersigned counsel, and files this Complaint against Defendants as follows:

## PARTIES, JURISDICTION AND VENUE

1. **Plaintiff**, Dietriche S. Jones, daughter of Lillian Stewart Davis, is a citizen Lee County and resident of Mississippi.  Plaintiff submits to the personal jurisdiction and venue of this Court.

2. **Plaintiff**, Brandon Davis, son of Lillian Stewart Davis, is a citizen Leflore County and resident of Mississippi.  Plaintiff submits to the personal jurisdiction and venue of this Court.

3. **Plaintiff**, Antoinette Stewart, daughter of Lillian Stewart Davis, is a citizen Lee County and resident of Mississippi.  Plaintiff submits to the personal jurisdiction and venue of this Court.

4. The wrongful death beneficiaries of Lillian Stewart Davis, deceased, are Antionette Lashun Stewart, Dietriche R. Jones, and Brandon Louis Davis.  There are no other heirs that the Plaintiffs are aware of.

5. **Defendant, Greenwood Leflore Hospital,** is a "governmental entity" and "political subdivision", as that term is used as defined in Miss. Code Ann. §11-46-1, et seq. of the State of Mississippi, and may be served with process of this Court by service upon Gary Marchand, Chief Executive Officer, 1401 River Road, Greenwood, MS 38930.

6. Defendant, Greenwood Leflore Hospital is subject to personal jurisdiction of this Court.

7. Defendant, Greenwood Leflore Hospital is subject to the subject-matter jurisdiction of this Court in this case.

8. Defendant, Greenwood Leflore Hospital is subject to the venue in this Court.

9. Defendant, Greenwood Leflore Hospital has been properly served with this Complaint.

10. At all times relevant to this Complaint, Greenwood Leflore Hospital was the employer or other principal of one or more of the individual defendants in this action.

11. At all times herein mentioned, Defendants 1-20, inclusive, were and are registered nurses, nurse practitioners, licensed vocational nurses, practical nurses, registered technicians and other paramedical personnel, holding themselves our as duly licensed to practice their profession under and by virtue of the laws of the State of Mississippi, and were and now are engaged in the practice of their profession under and by virtue of the laws of the State of Mississippi.

12. **Defendants Greenwood Leflore Hospital, Timothy Lamb, DO, Richard S. Johnson, MD and Richard Scott Johnson, PLLC and Jane/John Does 1-20,** inclusive, were at all times herein mentioned, duly organized Mississippi companies, corporations and partnerships existing under and by virtue of the laws of the State of Mississippi.  Said Defendants, and each of them, owned, operated, managed, controlled and administered a general medical facility, hospital or 24-hour care facility within said County State of Mississippi, and held themselves out to the public at large and to Plaintiffs herein as properly equipped, fully accredited, competently staffed by qualified and prudent personnel and operating in compliance with the standard of care maintained in other properly equipped and efficiently operated and administered accredited general medical facilities, hospitals and outpatient clinics in said community, offering full, competent and efficient hospital, emergency, clinical, medical, laboratory, x-ray, anesthesia, paramedical services and outpatient clinics to the general public and to the decedents herein.  Plaintiffs are informed and believe and thereon allege that said Defendants, and each of them, administered, governed, controlled, managed and directed all the necessary functions, activities and operations of said general medical facility, hospital or 24-hour care facility, including its nursing care, intern, resident and house staff, physicians and surgeons, medical staff, x-ray, intensive care, recovery room and emergency room departments and clinics, including but not limited to personnel, staff and supplies of said facilities and clinics.

13. **Defendant, Timothy Lamb, DO,** Upon information and belief, Defendant, Timothy Lamb, DO., is a licensed physician in the State of Mississippi, practicing in emergency medicine, who may be served at 1401 River Road, Greenwood, MS 38930 or wherever he may be found.

14. **Defendant Timothy Lamb, DO** is subject to personal jurisdiction of this Court.

15. **Defendant, Timothy Lamb, DO** is subject to the subject-matter jurisdiction of this Court in this case.

16. **Defendant, Timothy Lamb, DO** is subject to the venue in this Court.

17. **Defendant, Timothy Lamb, DO** has been properly served with this Complaint.

18. At all times mentioned herein, Defendant, Timothy Lamb, DO held himself out to the public at large and to the Plaintiffs herein as a qualified physician duly licensed to practice their professions by virtue and under the laws of the State of Mississippi, with expertise, specialized knowledge, and training, education, learning skill, techniques and expertise in certain specialties of medicine.

19. **Defendant, Richard S. Johnson, MD,** Upon information and belief, Defendant, Richard S. Johnson., is a licensed physician in the State of Mississippi, practicing in emergency medicine, who may be served at 130 Chadwyck Place, Madison, MS 39110 or wherever he may be found.

20. **Richard S. Johnson, MD** is subject to personal jurisdiction of this Court.

21. **Richard S. Johnson, MD** is subject to the subject-matter jurisdiction of this Court in this case.

22. **Richard S. Johnson, MD** is subject to the venue in this Court.

23. **Richard S. Johnson, MD** has been properly served with this Complaint.

24. At all times mentioned herein, Defendant, Richard S. Johnson held himself out to the public at large and to the Plaintiffs herein as a qualified physician duly licensed to practice their professions by virtue and under the laws of the State of Mississippi, with expertise, specialized knowledge, and training, education, learning skill, techniques and expertise in certain specialties of medicine.

25. **Defendant, Richard Scott Johnson, PLLC,** Upon information and belief, Defendant, Richard Scott Johnson, PLLC, is a domestic professional association of physicians engaged in professional medical care, having a principal place of business and may be served at 130 Chadwyck Place, Madison, MS 39110.

26. **Richard Scott Johnson, PLLC** is subject to personal jurisdiction of this Court.

27. **Richard Scott Johnson, PLLC** is subject to the subject-matter jurisdiction of this Court in this case.

28. **Richard Scott Johnson, PLLC** is subject to the venue in this Court.

29. **Richard Scott Johnson, PLLC** has been properly served with this Complaint.

30. Plaintiffs name the Defendants herein, and each of them, because Plaintiffs are in doubt and do not know from which of said Defendants Plaintiffs are entitled to redress and whether the injuries and damages to the Plaintiffs herein alleged were caused by the combined negligence of all of the Defendants, or one or more of them. For that reason, the Plaintiffs name all of the said Defendants and ask that the Court determine liability of each and all of the said Defendants in this action as to what extent and what responsibility falls upon each of said Defendants either jointly or severally as may be found liable.

31. The true names, identities or capacities, whether individual, associate, and corporate or otherwise of Defendant DOES 1-20, inclusive, are unknown to the Plaintiffs who therefore sue said Defendants by such fictitious names. When the true names, identities, or capacities of such fictitiously designated Defendants are ascertained, Plaintiffs will ask leave of the court to amend this Complaint to insert the true names, identities, and capacities together with the charging allegations.

32. At all times herein mentioned, Defendants and each of them, were the agents, servants, employees, and joint ventureres of each other and of their co-Defendants, and were acting within the purpose and scope of their employment, agency or joint venture.

33. Plaintiffs are informed and believe and thereon allege that each of the Defendants sued herein as a DOE are responsible in some manner for the events or happenings herein referred to, thereby proximately causing the injuries and damages to their decedent Lillian Stewart Davis as herein alleged.

34. That all of the facts, acts, events and circumstances herein mentioned and described occurred in the County of Leflore, Mississippi.

## COMPLIANCE WITH STATUTES

35. Proper written notice of intention to file this action and notice of claim has been provided to the Defendants, via certified mail return receipt requested and regular U.S. Mail, pursuant to Miss. Code Ann §15-1-36 (15) and 11-46-11.

36. Attached to this Complaint is a Certificate of Compliance and Expert Consultation pursuant to the requirements of Miss Code Ann. §11-1-58(1)(a).

## NATURE OF THIS ACTION

37. This medical malpractice and ordinary negligence action arises out of care provided to 74 year old Lillian Stewart Davis at Greenwood Leflore Hospital, in Greenwood, Mississippi (the "Hospital") on January 3, 2024.

38. This action is brought by Ms. Davis' children, Dietriche S. Jones, Brandon Davis and Antoinette Stewart, the wrongful death beneficiaries of Ms. Davis.

39. The wrongful death beneficiaries assert a wrongful death claim pursuant to MS Code §11-7-13 on behalf of all wrongful death beneficiaries.

40. As used here, the phrase "standard of care" means the degree of care and skill ordinarily employed by the medical profession generally under similar conditions and like circumstances as pertained to Defendant's conduct here.

### Factual Summary



41. Just two weeks shy of her 75th birthday, on January 2, 2024, Ms. Lillian Stewart Davis was experiencing nasal congestion and coughing.

42. Plaintiff Dietriche Jones, contacted her brother, Brandon Davis, on the morning of January 2, 2024, with concerns regarding her mother's symptoms.

43. Based on their conversation, Brandon Davis drove Ms. Davis to the after-hours clinic that was affiliated with Greenwood Leflore Hospital.

44. As Mr. Davis drove his mother to the hospital, he observed Ms. Davis wheezing and coughing up large amounts of yellowish liquid that she was able to expel in a cup that he had in his car.

45. When they arrived at the after-hours clinic, Ms. Davis was able to walk on her own and she checked in at the desk.

46. The after-hours clinic diagnosed Ms. Davis with the flu, prescribed Zithromax and instructed her to go across the street to the main hospital for chest X-rays.

47. The x-ray was performed and the technician advised Ms. Davis that she could expect the results by the end of the day and no later than the next morning; however, she never received the results, but the x-ray report taken on January 2, 2024 revealed that Ms. Davis had undergone a prior cervical fusion.

48. On the morning of January 3, 2024, Ms. Davis was also prescribed another antibiotic, promethazine cough syrup and an albuterol pump for the fluid in her lungs by the Greenwood Leflore after-hours clinic.

49. On the evening of Wednesday, January 3, 2024, EMS was called at 21:12 (9:12 pm) to the home of Ms. Davis.

50. At this time, Ms. Davis was complaining of breathing problems. She was awake, alert, and oriented; however, she was now too weak to walk. Therefore, Brandon Davis, his nephew DJ and one of the paramedics assisted in carrying Ms. Davis downstairs.

51. Her initial room air oxygen saturation was noted at 86%. She was placed on a non-rebreather mask.

52. Ms. Davis was transported via EMS from her home back to Greenwood Leflore Hospital.

53. She arrived back to Greenwood Leflore Hospital at or around 10:00 pm.

54. Her son Brandon, followed behind the ambulance to Greenwood Leflore Hospital.

55. She was admitted to Greenwood Leflore Hospital on January 3, 2024, with flu-like symptoms, respiratory distress, and a history of multiple comorbidities, including Type 2 diabetes, hypertension, chronic obstructive pulmonary disease (COPD), and obesity.

56. At the time of admission, Ms. Davis was 5 feet 9 inches and weighed 219 lbs with a BMI of 35.

57. Ms. Davis was febrile with a temperature of 101 and breathing heavily. Her heart rate vacillated between the 120s and 150s for the duration of her stay according to her medical records.

58. Dr. Timothy Lamb, DO ordered a series of tests to be performed on Ms. Davis.

59. Her initial labs revealed a white blood count of 16,000; glucose was 368; she was in renal failure with a creative level of 1.6 and she had a bicarbonate level of 12.

60. At or around 11:00 pm on January 3, 2025, Ms. Davis' initial blood gas revealed a partially compensated metabolic acidosis. Her partial pressure of carbon dioxide (pCO2) was 32 and her pH was 7.29.

61. According to the medical records and based on Ms. Davis' vitals, at or around 11:00 pm, on January 3, 2025, Ms. Davis was now septic; and, she is also very tachycardic.

62. Ms. Davis' oxygen saturation alternated throughout the night from low to mid ninety's and then at or around 2:44 she desaturate to around 86% at 7 liters.

63. At the time of her admission, a simple oxygen mask was given to Ms. Davis. That simple oxygen mask was left on her for over five (5) hours, despite her experiencing progressive respiratory failure.

64. Care of Ms. Davis was transferred to Richard S. Johnson, MD at or around 23:35 (11:35 pm) according to the medical records.

65. The medical records reflect that somewhere between 4:38 am and 5:46 am on January 4, 2024, she was started on BiPAP.

66. Subsequently, the decision was made to intubate Ms. Davis at our around 6:30 am on January 4, 2024.

67. Ms. Davis was administered 10 milligrams of etomidate (sedatives) at around 6:40 am on January 4, 2024.

68. *Two minutes later*, she is administered 100 milligrams of succinylcholine (first-line paralytic).

69. Given her weight and height, Ms. Davis was under-dosed both etomidate and succinylcholine, meaning she was partially asleep and partially paralyzed.

70. Following the administration of the rapid sequence intubation (RSI) drugs, Defendants, Dr. Lamb and Dr. Johnson attempted to intubate Ms. Davis at approximately 6:43 am on January 4, 2024.

71. According to the medical records at 6:44 am on January 4, 2024, Ms. Davis' heart rate is 113, her blood pressure is 98/52 and her O2 is 91.

72. The medical records reflect that despite Ms. Davis' decline, Dr. Lamb and Dr. Johnson continued their attempts to intubate Ms. Davis for an additional 4 to 6 minutes as the window to save Ms. Davis closes.

73. During their continued attempts, her heart rate went to 45 bpm and her oxygen saturation was now 72%.

74. Ms. Davis continued to desaturate, ultimately coded and became pulseless sometime between 6:51 and 6:53 am on January 4, 2024.

75. At 6:53 am on January 4, 2024, Ms. Davis was administered epinephrine and chest compressions began.

76. Defendants, Dr. Lamb and Dr. Johnson were unable to intubate Ms. Davis through her nose and therefore, they called the Anesthesia department who was ultimately able to intubate her with a video laryngoscope.

77. After approximately 13 minutes of coding, at 7:06 am on January 4, 2024, Ms. Davis gets return of circulation, but was no longer responsive.

78. The standard of care mandated that intubation should be performed using proper dosages of sedatives and paralytics, with continuous oxygen saturation monitoring. The failure to correctly dose succinylcholine and etimodate, along with the inadequate oxygen monitoring, deviated from the standard airway management practices.

79. Further, the Defendants intubation attempts were grossly mismanaged by their failure to recognize when to halt further attempts to intubate Ms. Davis and properly oxygenate her before continuing.

80. The repeated failed intubation attempts led to prolonged hypoxia, which resulted in catastrophic consequences, including brain damage and cardiac arrest.

81. The Defendants breached the standard of care in failing to pause intubation attempts, and re-oxygenate Ms. Davis.

82. The failure to stop and restore oxygenation constituted a severe breach of airway management protocol, particularly in a patient such as Ms. Davis who was already struggling to breathe.

83. As a direct result of this negligent airway management, Ms. Stewart suffered hypoxia-induced cardiac arrest, requiring 13 minutes of CPR and caused severe anoxic brain injury.

84. Despite the critical nature of her condition, Greenwood Leflore Hospital's medical staff failed to provide timely and appropriate care, which ultimately led to her death.

85. Ms. Davis never regained consciousness and ultimately died due to the injuries sustained as a direct result of the Defendant's negligent actions.






## GENERAL NOTICE OF CLAIMS

### Claim 1 - Professional Negligence: Dr. Lamb and Corporate Defendants

86. Plaintiff incorporates by reference all paragraphs of this complaint.

87. At all times relevant hereto, Defendant, Timothy Lamb, DO was a physician engaged in the practice of medicine in the State of Mississippi.

88. On January 3, 2024, Timothy Lamb, DO entered into a physician-patient relationship with Lillian Stewart Davis.

89. Defendant, Timothy Lamb, DO, thus owed a duty to provide care to Ms. Davis within the applicable standard of care.

90. Defendant, Timothy Lamb, DO failed to comply with the applicable standard of care in the care he provided Ms. Davis.

91. Defendant, Timothy Lamb, DO failed to timely diagnose and treat sepsis.

92. Defendant, Timothy Lamb, DO failed to provide appropriate respiratory support.

93. Defendant, Timothy Lamb, DO failed to timely intubate Ms. Davis.

94. At all times relevant hereto, Defendant, Dr. Timothy Lamb was an employee or other agent of one or more of the corporate Defendants and was acting within the course and scope of his employment or other agency.

95. One or more of the Corporate Defendants are therefore liable for Dr. Lamb's failures to comply with the applicable standard of care.

### Claim 2 - Professional Negligence: Dr. Johnson and Corporate Defendants

96. Plaintiff incorporates by reference all previous paragraphs of this complaint.

97. At all times relevant hereto, Defendant, Richard S. Johnson, MD was a physician engaged in the practice of medicine in the State of Mississippi.

98. On January 3, 2024, Richard S. Johnson, MD entered into a physician-patient relationship with Lillian Stewart Davis.

99. Defendant, Richard S. Johnson, MD thus had a duty to provide care to Ms. Davis within the applicable standard of care.

100. Defendant, Richard S. Johnson, MD, failed to comply with the applicable standard of care in the care he provided Ms. Davis.

101. Defendant, Richard S. Johnson, MD failed to timely diagnose and treat Ms. Davis sepsis

102. Defendant, Richard S. Johnson, MD, failed to improperly administer sedatives and paralytics during intubation, in violation of standard airway management practices.

103. Defendant, Richard S. Johnson, MD failed to halt intubation attempts despite severe hypoxia, in direct contravention of the standard of care.

104. At all times relevant hereto, Defendant, Richard S. Johnson, MD was an employee or other agent of one or more of the corporate Defendants, and was acting within the course and scope of his employment or other agency.

105. Defendant, Richard S. Johnson, failed to recognize the dangers of prolonged unsuccessful intubation and the need for alternative airway management in a patient who was already experiencing significant respiratory distress.

106. One or more of the Corporate Defendants are therefore liable for Dr. Johnson's failures to comply with the applicable standard of care.

### Claim 3 - Professional Negligence: Nursing Staff and Corporate Defendants

107. Plaintiff incorporates by reference all previous paragraphs of this complaint.

108. At all times relevant hereto, the nurses providing care for Ms. Davis were registered nurses engaged in the practice of nursing in the State of Mississippi.

109. On January 3, 2024, the nurses providing care for Ms. Davis entered into a nurse-patient relationship with Lillian Stewart Davis.

110. The nurses providing care for Ms. Davis on January 3-4, 2024 thus had a duty to provide care to Ms. Davis within the applicable standard of care.

111. The nurses providing care for Ms. Davis failed to comply with the applicable standard of care in the care they provided to Ms. Davis.

112. The nurses and other medical professionals providing care to Ms. Davis on January 3, 2024, failed to properly monitor and document Ms. Davis' condition, vitals, and deterioration in a timely manner.

113. The nurses and other medical professionals providing care to Ms. Davis on January 3, 2024, failed to conduct routine vitals per critical care standards.

114. The nurses and other medical professionals providing care to Ms. Davis failed to escalate concerns or push for intervention despite Ms. Davis' clear signs of clinical deterioration.

115. The nurses and other medical professionals providing care to Ms. Davis left Ms. Davis on a simple mask despite having COPD, which is known to impair respiratory drive under excessive oxygenation conditions.

116. The nurses and other medical professionals providing care to Ms. Davis failed to adequately chart/document critical periods, including cardiac arrest and intubation, showing only medication administrations with missing timestamps and explanations.

117. The purpose of closely monitoring the patient is early detection of any clinical deterioration, to provide appropriate treatment or intervention without delay.

118. Because monitoring a patient's vitals enables early detection of clinical deterioration, nothing is more basic to the job of a nurse than monitoring a patient's vitals.

119. By failing to monitor Ms. Davis' vitals as required, the nurses and other medical professionals providing care to Ms. Davis deviated from the standard of care.

120. In fact, the nurses and other medical professionals providing care to Ms. Davis deviated grossly from the standard of care.

121. By failing to monitor Ms. Davis' vitals as required, these nurses and other medical professionals providing care to Ms. Davis also failed to exercise even slight diligence.

122. Had the nurses monitored, reported, and documented Ms. Davis' vitals as required (especially her oxygen saturation and respiratory rate), her vitals would have likely alerted the medical staff that her hypoxia was rapidly worsening.

123. Had the nurses monitored, reported, and documented Ms. Davis' vitals as required the medical professionals caring for Ms. Davis could have recognized that Ms. Davis' already impaired ability to maintain ventilation was diminishing quickly.

124. As a result, the medical professionals caring for Ms. Davis could have intubated her without delay- before her hypoxia resulted in respiratory arrest and inevitably her death.

125. Each failure to monitor Ms. Davis' vitals thus contributed to her respiratory arrest, cardiac arrest, and death.

126. Each such failure was also a cause of the pain and suffering she likely experienced as she gradually died from oxygen deprivation – in the hands of healthcare providers.

127. At all times relevant hereto, the nurses providing care to Ms. Davis at Greenwood Leflore Hospital were employees or other agents of one or more of the corporate Defendants, and were acting within the course and scope of their employment or other agency.

128. One or more of the Corporate Defendants are therefore liable for the nurses that provided care to Ms. Davis' failures to comply with the applicable standard of care.

### *Claim 4 – Administrative Negligence: Corporate Defendants*

129. Plaintiff here incorporates by reference all previous paragraphs of this complaint.

130. Mississippi law recognizes that both ordinary negligence and medical malpractice can co-exist and combine to cause harm — creating liability for both ordinary negligence and medical malpractice

131. Federal regulations impose requirements on hospital administrators concerning patient safety.

132. The Joint Commission's accreditation standards impose requirements on hospital administrators concerning patient safety.

133. Each of the Corporate Defendants owed ordinary duties of care to Lillian Stewart Davis.

134. Each of the Corporate Defendants breached those duties.

135. Each of the Corporate Defendants are directly liable for the breach of those duties.

136. Each of the Corporate Defendants breached those duties through the acts and omissions of professional staff performing purely administrative tasks.

137. Negligent administration by Corporate Defendants created unnecessary and unreasonable potential for medical error by providers involved in the care of Lillian Stewart Davis.

138. Negligently administered systems and organizational cultures facilitated, rather than prevented, individual medical error.

139. By violating its duties of ordinary care, each of the Corporate Defendants harmed Lillian Stewart Davis.

140. Defendant, Greenwood Leflore Hospital, through its policies, administration, and employed medical professionals, contributed to the failures in Ms. Davis' care including:

a.  Failure to ensure adequate training of medical and nursing staff to recognize and treat severe sepsis and respiratory failure;

b.  Failure to implement hospital-wide policies that mandated timely escalation of care for critically ill patients;

c.  Failure to maintain adequate staffing levels, leading to delays in treatment and monitoring;

d.  Failure to supervise and ensure compliance with standard airway management protocols when intubation was attempted

141. The Corporate Defendants are thus vicariously liable for the ordinary negligence of those administrators.

142. As the direct and proximate result of the negligence alleged herein, Lillian Stewart Davis experienced pain, suffering, injury, and death.

143. As the direct and proximate result of the negligence alleged herein, Plaintiff and her family experienced pain, suffering, severe emotional distress, and other damages.

144. Plaintiff is thus entitled to survival and wrongful-death damages in an amount to be proved at trial.

### CAUSES OF ACTION FOR WRONGFUL DEATH BY PLAINTIFFS

145. Plaintiffs repeat the allegations in the foregoing paragraphs as though each were set forth and incorporated herein in full.

146. The negligence of the Defendants, and each of them, include but is not limited to:
   a.  Failing to properly monitor and assess Ms. Davis' condition;
   b.  Failing to properly document Ms. Davis' condition;
   c.  Failing to timely communicate with other healthcare providers;
   d.  Failing to timely execute/implement orders;
   e.  failing to intervene to protect Ms. Davis;
   f.  failing to timely diagnose sepsis;
   g.  failing to timely perform medical interventions to alleviate respiratory distress;
   h.  failing to appreciate the gravity of Ms. Davis' condition and risk factors;
   i.  failing to follow appropriate protocols, policies, and procedures regarding the care and treatment of Ms. Davis;
   j.  failing to use reasonable and adequate care, administration, treatment, diagnosis, resuscitation, available equipment and attention to their provision of care and treatment of Ms. Davis;
   k.  failure to provide skilled, competent and properly trained healthcare providers to render care and treatment to Ms. Davis;
   l.  failure to properly perform any and all medical procedures undertaken;

m. failure to prevent harm to Ms. Davis caused or occasioned by failure to treat a known, developing or worsening condition;

n. otherwise acting negligently.

o. Failure to ensure adequate training of medical and nursing staff to recognize and treat severe sepsis and respiratory failure;

p. Failure to implement hospital-wide policies that mandated timely escalation of care for critically ill patients;

q. Failure to maintain adequate staffing levels, leading to delays in treatment and monitoring;

r. Failure to supervise and ensure compliance with standard airway management protocols when intubation was attempted

s. failure to improperly administer sedatives and paralytics during intubation;

t. failure to halt intubation attempts despite severe hypoxia;

u. failure to provide appropriate respiratory support to Ms. Davis;

v. failure to timely intubate Ms. Davis;

w. failure to recognize the dangers of prolonged unsuccessful intubation and the need for alternative airway management in a patient who was already experiencing significant respiratory distress.

147. As a direct and proximate result of said negligence of the Defendants and the resulting death of the decedent, Plaintiffs have and will continue to be deprived of the love, companionship comfort, affection, society, solace, moral support, care, counsel, physical assistance, services, financial support and protection of the decedent, Lillian Stewart Davis, have thereby sustained pecuniary loss in a sum according to proof in the jurisdiction of this Court.

148. The medical negligence of one or more Defendants herein that resulted in the death of Ms. Davis under the circumstances then and there existed may be established by application of res ipsa loquitur.

149. In addition to being liable and responsible in damages for their own acts of negligence or that of their employees or independent contractors, the acts of the individual healthcare providers are imputed as a matter of law to each and all Defendants named herein, pursuant to principals of agency, master/servant liability, employer/employee liability, respondeat superior, and other impositions of vicarious liability, including the liability imposed upon joint venturers and/or through application of *Hardy vs Brantley, 471 So. 2d. 358 (Miss. 1985)* and *Gatlin v. Methodist Medical Center, Inc.*, 772 So. 2d 1023 (Miss. 2000).

150. That Defendant, Greenwood Leflore Hospital, failed to exercise due care in hiring, training, supervising, or retaining the medical professionals providing care to Ms. Davis on January 3, 2024 as a partner, agent, and/or employee.

151. Defendant, Greenwood Leflore Hospital had a duty to act reasonably in hiring competent health care professionals trained in the administration of the medications

that Ms. Davis relied to her detriment on Defendants fulfilling that duty when she permitted Defendant to give her care and treatment.

152. One or more Defendants failed to exercise reasonable care in hiring, training, and supervising and as such their acts were below the standard of care.

## UNCONSTITUIONALITY OF MISS CODE

153. Plaintiffs repeat the allegations in the foregoing paragraphs as though each were set forth and incorporated herein in full.

154. Application of Miss. Code Ann. §11-1-60 is unconstitutional under the conditions and circumstances present, as it violates provisions of and rights guaranteed by the Constitution of the State of Mississippi, including, but not limited to, the right to trial by jury afforded pursuant to Article 3, Section 31; the separation of powers clauses in Article 1, Sections 1 and 2, and; Article 3, Section 24, providing that every person shall have access to the courts, and shall have remedy by due course of law. As §11-1-60 is unconstitutional, such statute may not be legally applied or relied upon to cap, limit, or otherwise reduce Plaintiffs' non-economic damages to which they are otherwise entitled.

## DAMAGES

155. Plaintiffs repeat the allegations in the foregoing paragraphs as though each were set forth and incorporated herein in full.

156. As a proximate result of the negligence, gross negligence, and wrongful acts of Defendants as set forth herein, Plaintiffs are entitled to compensatory damages for the wrongful death of Lillian Stewart Davis. Such damages, include, but are not limited to: all damages available pursuant to Mississippi's Wrongful Death Statute, Miss. Code Ann. §11-7-13, for the death of Ms. Lillian Stewart Davis, including, but not limited to, funeral costs, medical bills and expenses, damages for the physical pain and suffering and experienced by Ms. Davis, loss of future income for the remainder of his life, loss of society and services, damages for the mental pain suffering of Plaintiffs, the loss of society and services, damages for the mental pain and suffering of Plaintiffs, the loss of society and companionship of the deceased, the loss of his services, and other such damages to be determined by the jury, in an amount to be determined by the fact-finder or jury in this action; in addition to damages including, but not limited to, attorneys' fees, pre-judgment interest on all such amounts.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs, the wrongful death beneficiaries of Ms Lillian Stewart Davis, deceased, hereby demand judgment against the Defendants, in an amount in excess of the jurisdictional minimums of this Court, in compensatory damages, in addition to all costs of this action, for other damages set forth herein, for attorneys' fees, for pre-judgment interest on all such amounts, and for any other relief appropriate under the law.

Respectfully, submitted, this the ⟨25th⟩ day of February, 2025.

Elizabeth R. Carr, Esq.
One of the Attorneys for the Plaintiffs


Janessa E. Blackmon, Esq. (MSB#101544)
jeblackmon@blackmoncarr.com
Elizabeth R. Carr, Esq. (MSB# 101579)
ecarr@blackmoncarr.com
**BLACKMON CARR, LLC**
682 Towne Center Blvd.
Ridgeland, MS 39157
601-933-0370  Telephone
601-933-0374  Facsimile
www.blackmoncarr.com


Edward Blackmon, Jr.
**BLACKMON & BLACKMON, PLLC**
907 W. Peace Street
Canton, MS 39046
(601) 859.1567 (ph)
edblackmon@blackmonlawfirm.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Miss Code Ann. §11-1-58, I hereby certify that I have reviewed the facts of this case and have consulted with at least one (1) expert qualified pursuant to the Mississippi Rules of Civil Procedure and the Mississippi Rules of Evidence, who is qualified to give expert testimony as to standard of care or negligence, and who I reasonably believe is knowledgeable in the relevant issues involved in this particular action. I have further concluded on the basis of such review and consultation that there is reasonable basis for the commencement of this action.

Dated this the 25th day of February, 2025.

_____
Elizabeth R. Carr, Esq.
One of the Attorneys for the Plaintiffs

Janessa E. Blackmon, Esq. (MSB#101544)
jeblackmon@blackmoncarr.com
Elizabeth R. Carr, Esq. (MSB# 101579)
ecarr@blackmoncarr.com
BLACKMON CARR, LLC
682 Towne Center Blvd.
Ridgeland, MS 39157
601-933-0370 Telephone
601-933-0374 Facsimile

**FILED**
LEFLORE COUNTY
02/26/25
DATE
JOHNNY L. GARY, JR., CIRCUIT CLERK
BY: _____ D.C.