**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | |
| | ) | |
| GREENWOOD LEFLORE HOSPITAL | ) | Case No. 26-11337-SDM |
| | ) | Chapter 9 |
| Debtor. | ) | |
| | ) | |

**MOTION FOR DETERMINATION THAT APPOINTMENT OF
PATIENT CARE OMBUDSMAN IS UNNECESSARY**

COMES NOW Greenwood Leflore Hospital, a public community hospital ("**GLH**" or the

"**Debtor**"), and files this *Motion for Determination that Appointment of Patient Care Ombudsman is*

*Unnecessary* (the "**Motion**").  In support of the Motion, the Debtor shows as follows:

1.      GLH filed its Voluntary Petition under Chapter 9 of the United States Bankruptcy

Code, 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**").

2.      GLH is a twenty-five (25) bed community hospital located in Greenwood,

Mississippi jointly owned by the City of Greenwood, Mississippi, and Leflore County,

Mississippi, treating culturally diverse patients primarily from Mississippi.  GLH has a 120-year

history of providing high quality and accessible healthcare services to residents of Leflore,

Tallahatchie (north), Grenada (northeast), Carroll (east/southeast), Holmes (south), Humphreys

(southwest), and Sunflower (west) Counties in Mississippi. *See* Mission Statement attached

hereto as Exhibit A.  GLH is duly licensed by the Mississippi State Department of Health

("**MSDH**"). *See* Exhibit B.  GLH is designated as a Rural Community Hospital Demonstration

facility serving this seven-county region.

3.      GLH remains in possession of its property and continues to operate its business. No trustees, examiners or committees have been appointed in this case.

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2)(A), (0) and 1334(b).  This Motion is governed by §§ 105 and 333 of the Bankruptcy Code and Bankruptcy Rule 2007.2.   Venue of this case is proper in this Court pursuant to 28 U.S.C. § 1408.

**Background**

5.      Under § 333(a)(l) of the Bankruptcy Code and Bankruptcy Rule 2007.2, the Court is to appoint a patient care ombudsman to monitor the quality of patient care and to represent the interests of the patients of a healthcare facility unless the Court finds that the appointment of such Ombudsman is not necessary for the protection of the patients under the specific facts of the case.

6.      Contained herein and in Exhibits A through I, attached hereto, is a detailed summary describing both (i) the state and federal regulatory oversight to which GLH is subject and (ii) GLH's internal operating guidelines, policies and procedures it has implemented to ensure that high quality healthcare is provided to its patients in a safe environment by skilled and competently managed healthcare professionals.

**Factors to Consider in Determining Whether an Ombudsman is Needed**

7.      Courts have formulated a framework to consider whether appointment of an ombudsman is needed.  A test comprised of nine non-exclusive factors to consider was first discussed in *In re Alternative Family Care,* 377 B.R. 754 (Bankr. S.D. Fla. 2007):

a.      The cause of the bankruptcy;

b.      The presence and role of licensing or supervising entities;

c.      The Debtor's past history of patient care;

d.      The ability of the patients to protect their rights;

e.       The level of dependency of the patients of the facility;

f.        The likelihood of tension between the interests of the patients and the Debtor;

g.       The potential injury to the patients if the debtor drastically reduced its level of patient care;

h.       The presence and sufficiency of internal safeguards to ensure appropriate level of care; and

i.        The impact of the cost of an ombudsman on the likelihood of a successful reorganization.

8.       Courts have followed the framework established by the *In re Alternative Family Care* court in determining whether appointment of an ombudsman was necessary.  *See In re Pediatrics at Whitlock, P.C.,* 507 B.R. 10 (Bankr. N.D. Ga. 2014); *In re Smiley Dental Arlington, PLLC,* 503 B.R. 680 (BAnkr. N.D. Tex. 2013).  Courts have generally held that no one factor is determinative but give weight to each factor in their discretion.  3 COLLIER ON BANKRUPTCY, ¶ 333.02[2] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.)

9.       GLH respectfully shows that appointment of an ombudsman is not necessary.  As reflected below and in the Exhibits, it is competent and capable of providing proper care to its patients, and that it is in full compliance with all state and federal regulatory requirements for patient care.

### a.  Cause of Bankruptcy

10.       GLH has filed its *Statement of Eligibility* [Dkt #5] summarizing the financial and operational issues that led to GLH's need to seek bankruptcy protection, and the same is incorporated herein by reference.

### b.  Presence of Licensing/Supervising Entities

11.       Greenwood Leflore Hospital is in full compliance with patient care and safety standards established by the following government or supervisory entities:

3

- **Centers of Medicare and Medicaid Services ("CMS")**: CMS's mission is to ensure and promote quality care for all healthcare beneficiaries.  The hospital maintains agreements with insurance companies and Medicaid that reference compliance with CMS standards set forth in the Conditions of Participation.

- **Mississippi State Department of Health:**  GLH maintains the appropriate and necessary licenses to operate in the State of Mississippi. The hospital is surveyed by MSDH using CMS guidelines for standards of care overseeing Medicare programs and other federal laws. Our most recent survey in May 2024, GLH was found in compliance with the CMS Conditions of Participation. In February 2026, GLH completed an MSDH survey for initial accreditation of a swing bed unit and received that certification. The survey process for initial accreditation is the same process as regular survey compliance for hospital accreditation.

- **Independent Medical Staff:** The medical staff is comprised of an independent body of providers licensed by the State of Mississippi.  GLH hospitalists are responsible for direct oversight of patient care and admission to services at GLH. The medical staff is governed by medical staff bylaws which describes the specific structures for monitoring the delivery of medical care provided to patients. All members of the medical staff are credentialed and privileged to work at GLH as defined by strict and rigorous guidelines for appointment through a credentialing committee. The credentialing committee is comprised of medical staff and a quality director who reviews applications and ensures all criteria are met to practice safely. The conduct of the medical staff in its role as the direct monitor of patient services is reviewed as part of all licenses and accreditation surveys or inspections. *See* Exhibit C.

- **Hospital Board of Commissioners**: Mississippi statutes governing the Hospital Board of Commissioners require a five-member board comprised of residents from Leflore County and City of Greenwood. There are two county appointed members, two city appointed members, and one jointly appointed member. The board is responsible for business affairs of GLH in a manner which can attest to one level of care for all and are governed by the Governing Board's bylaws. *See* Exhibit D.  The conduct of the Hospital Board of Commissioners in its governance of the hospital is reviewed as part of all licensure and accreditation surveys or inspections. A board member is also part of the quality council committee which is responsible for monitoring and reviewing patient quality data, patient satisfaction, and policies and procedures of the hospital.  The hospital Chief of Staff reports on the actions of the Quality Council Committee at the monthly meetings of the Board of Commissioners.

- **Greenwood City Council and Leflore County Board of Supervisors:** These are the governing bodies of the joint owners of the hospital, City of Greenwood, Mississippi, and Leflore County. Hospital management regularly reports the affairs of the hospital to

4

the Greenwood City Council and Leflore County Board of Supervisors, including reports on financial and operating matters.  Resident access to the members of both elected bodies serves as an additional check on hospital operations, including services offered and the satisfaction, or not, of patients receiving care.  The hospital regularly shares suggestions for improvement with its elected officials.

### c.  Past History of Patient Care

12.     The hospital has a longstanding reputation of providing excellent care from previous surveys by the Joint Commission and current surveys with MSDH. The hospital has always maintained its accreditation status with all regulatory agencies. The hospital has also operated several rural health clinics and they have maintained compliance and passed accreditation with federal guidelines and compliance for the rural health clinic designation. The laboratory at the hospital has been surveyed by CLIA and has passed inspection for clinics and hospital operations. The radiology department is accredited by MSDH allied health division every 2 years.  The radiation safety inspector also monitors and checks all radiation film badges and makes sure we follow radiation safety protocols. GLH is ACR (American College of Radiation) certified every year for CT, mammography, and MRI.

13.     Patient care and clinical services are provided in accordance with a formal system of policies and procedures. These procedures are continuously monitored and updated to reflect changes in technology and medical practice.  *See* Exhibit E.

### d.  Ability of Patients to Protect Their Rights

14.      GLH has implemented numerous policies and procedures intended to provide patients with the highest standards of care and the means to communicate problems or issues. Likewise, GLH maintains internal procedures to maintain awareness and address any issues that arise with patient care.  These policies include:

- **Patient Bill of Rights:** The Patient Bill of Rights is mandated by CMS. The hospital informs, in writing, each patient and/or the patient's representative their patient's rights

at the time of admission to the hospital. The Patient Bill of Rights is available to patients in English and Spanish.

- **Compliance Hotline:**  The hospital maintains a Compliance Plan that meets CMS criteria.  GLH maintains a patient hot line. This is an anonymous toll-free telephone number that is dedicated for the reporting of consumer concern about how their care was provided, including the potential fraud and abuse.  Any reported compliance concerns are required to be reported to the Board of Hospital Commissioners. *See* Exhibit F.

- **Hospital Consumer Assessment of Healthcare Providers & Systems (HCAHPS) Survey:** This is a standardized survey instrument for measuring the patient's perspective of the hospital. This data is submitted voluntarily and publicly reported on all payor types. The data collection is performed by an outside independent reporting agency and covers patient's concerns, their perceptions of safety and customer service.  HCAHPS reports received from the reporting agency are required to be reported to the hospital board. *See* Exhibit G.

- **EMTALA Compliance Hotline:** This number is placed in the emergency room so if patients or employees have concerns or complaints about care or concerns received from emergency or obstetric and labor services provided during an ER visit. The patient can make an anonymous compliant to report their situation.

- **The Ethics Committee:** The Ethics Committee of the Medical Staff investigates reported ethics issues as reported by either patients, family, medical staff or hospital staff.  A member of the medical staff attends meetings of the Hospital Board of Commissioners for the purpose of keeping the Hospital Board of Commissioners apprised of any medical staff matters.

### e.   Level of Dependency of Patients at the Facility

15.     The majority of our patients are ambulatory, and have active involvement of friends and family in their care. Specifically, the average length of inpatient stay is 3.5 days. Most patients are ambulatory and cognizant which allows the patient the ability to actively participate in his/her medical care. The hospital has posted visitation hours; family members have the ability to stay overnight with the patient.

### f.   Likelihood of Tension between the Interest of the Patients and Debtor

16.     Most patients have a third-party payor source so there is a limited financial impact for co-pays and deductibles.  Patients and their insured are responsible for managing their co-

pays and deductibles.   The hospital provides bills for its services that are adjusted to the patient's insurance contract. Medical care decisions are made by the patient's physician who are independent medical practitioners. Treatment decisions are based on medical conditions and not financial resources.

### g.  Potential Injury to Patients if the Debtor Drastically Reduced Its Level of Patient Care

17.    GLH is meeting the national staffing standards. GLH has developed a staffing matrix based on current national standards. *See* Exhibit H.  Current management has revised these standards to address new operational requirements.  The hospital's administrative team continually monitors and revises this matrix as necessary to reflect current conditions, including the closure of service lines it is unable to appropriately staff with the proper skills or competencies.

### h.  Presence and Sufficiency of Internal Safeguards to Ensure Appropriate Level of Care.

18.    GLH currently meets or exceeds normative standards for all Core Measures. Core Measures monitor a variety of evidence-based, scientifically researched standards of care which have been shown to result in improved clinical outcomes for patients. CMS established the Core Measures in 2000 and began publicly reporting data relating to the Core Measures in 2003. Core Measures cover a diverse set of services, including Inpatient and Outpatient.  The quality council committee monitors Core Measure performance scores and suggests corrective action plans when deemed appropriate. CMS publicly reports quality data quarterly and is available to patients and consumers.  *See* Exhibit I.

19.    GLH utilizes the CMS standards of care known as InterQual Level of Care Admission Criteria to screen patients for admission and an appropriate level of care.  InterQual

Level of Care Admission Criteria is a set of evidence-based standards used to determine the appropriate level of care for patients admitted to healthcare facilities. These criteria are designed to support payers and providers in delivering better, safer, and lower-cost healthcare. This process is followed for all patients admitted to the hospital for an inpatient, skilled or observation stay and is updated during and after a patient's stay.

### i. The impact of Cost of Ombudsman on the Likelihood of the Successful Reorganization

20.     For all of the reasons previously cited, GLH does not believe that an ombudsman is necessary or beneficial to protect the interest of its patients and would in fact be counterproductive to the operation of effective patient protection and care delivery systems already in place.

21.     Further, GLH believes that the appointment of an ombudsman would unnecessarily duplicate services already provided by the current hospital management team and create additional administrative burdens on hospital management and staff.  Additionally, appointment and operation of an ombudsman could easily cost $100,000 per month.  Payment of these expenses would directly impair the repayment of the legitimate claims of GLH's creditors and impose unnecessary additional financial burdens on GLH and all interested parties.

WHEREFORE, PREMISES CONSIDERED, GLH respectfully requests that this Court, upon a hearing hereof, will order that appointment of a patient care ombudsman is unnecessary and for such other relief as is just and appropriate.

THIS the 23rd day of April, 2026.

Respectfully submitted,

**GREENWOOD LEFLORE HOSPITAL**

By:  /s/ *Douglas C. Noble*

Douglas C. Noble, MS Bar No. 10526
**McCraney | Montagnet | Quin | Noble PLLC**
602 Steed Road • Suite 200
Ridgeland, Mississippi 39157
Telephone:  (601) 707-5725
Facsimile:   (601) 510-2939
Email:  dnoble@mmqnlaw.com

## CERTIFICATE OF SERVICE

I do hereby certify that the foregoing pleading was filed electronically through the Court's CM/ECF system and served electronically on all parties enlisted to receive service electronically and were also served *via* U.S. Mail, First Class, on the following:

State LTC Ombudsman
MS Dept. of Human Services
Division of Aging
750 North State Street
Jackson, MS 39202

SO CERTIFIED, this the 23rd day of April, 2026.

 /s/ *Douglas C. Noble*