**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| GREENWOOD LEFLORE HOSPITAL | ) | Case No. 26-11337-SDM |
| | ) | Chapter 9 |
| Debtor. | ) | |
| | ) | |

## PLAN OF ADJUSTMENT

This *Plan of Adjustment* (the "**Plan**") dated June 7, 2026, is proposed and submitted by Greenwood Leflore Hospital, a public community hospital (as further defined herein below, "**GLH**").

### INTRODUCTION

GLH proposes this Plan under Chapter 9 of the Bankruptcy Code.  ALL CREDITORS ARE ENCOURAGED TO CONSULT THE ACCOMPANYING DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  NO OTHER SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

### ARTICLE 1.
### Definitions

Unless the context requires otherwise, for purposes of this Plan and any subsequent amendments or modifications hereof, the following words and phrases shall have the meaning set forth below when used in initially-capitalized form, and any term used herein that is defined in the Bankruptcy Code, but not otherwise defined herein, shall have the meaning set forth in the Bankruptcy Code:

1.1.    **"Administrative Claim"** means any indebtedness or obligations incurred or assumed by GLH in connection with administration of this Case or performance of this Plan, any fees and expenses of Professionals payable pursuant to §§ 943(b)(3) and (5) of the Bankruptcy Code, and any other Allowed Claims for actual, necessary costs and expenses asserted under §§ 503(b) and 507(a)(2) that were incurred after the Petition Date in operating the business of GLH.

1.2.    **"Administrative Bar Date"** shall be established in the Confirmation Order as the date that is thirty (30) days after the Effective Date, or such other date as the Court may direct, and such date shall be the deadline by which all request for any unpaid Administrative Claims shall have been asserted.

1.3.      **"Allowed Claim"** means a Claim (a) in respect of which a proof of claim has been filed with the Court within the applicable period of limitation fixed by Rule 3003 of the Federal Rules of Bankruptcy Procedure, or filed thereafter with the Court pursuant to a final order, or (b) appears in the books and records of GLH to the extent the same is not listed as disputed, contingent, or unliquidated as to amount, and in either case, as to which no written objection to the allowance thereof has been filed within any applicable period of limitation fixed by Rule 3007 of the Federal Rules of Bankruptcy Procedure, or an order of the Court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal and as to which no appeal is pending. An Allowed Claim shall not include unmatured or post-petition interest on the principal amount of such Claim, except as specifically provided herein.

1.4.      **"Ballot"** means with respect to any class of Claims that are Impaired and entitled to vote under this Plan, the forms which will be distributed to holders of Claims to be used for showing acceptance or rejection of this Plan.

1.5.      **"Case"** means the above-styled Chapter 9 bankruptcy case of GLH currently pending in the Northern District of Mississippi.

1.6.      **"Cash"** is lawful currency of the United States of America.

1.7.      **"Causes of Action"** means any and all actions, causes of action, controversies, liabilities, obligations, rights, suits, damages, debts, dues, sums of money, accounts, judgments, claims and demands whatsoever of GLH, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, including all Causes of Action and rights to recover money or property under Chapter 5 of the Bankruptcy Code.  Causes of Action shall not include any such rights transferred to or derivative of any rights transferred to UMMC in the UMMC Transaction.

1.8.      **"City"** means the City of Greenwood, Mississippi.

1.9.      **"Claim"** shall have the meaning set forth in Bankruptcy Code § 101(5) with regard to any claim asserted against any of GLH.

1.10.     **"Claimant"** is any holder of a Claim against any of GLH.

1.11.     **"Claim Bar Date"** is the deadline established by the Bankruptcy Court by which a Proof of Claim is required to be filed with the clerk of the Bankruptcy Court by creditors and governmental units.

1.12.     **"Claim Objection Deadline"** is the deadline date by which objections to Claims, including Administrative Claims, shall be filed, said deadline being prior to the date of entry of a Final Decree and the closing of the Case.

1.13.     **"Code"** or **"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, and any amendments thereto.

1.14.     **"Confirmation"** shall mean the confirmation and approval of the Plan by the Bankruptcy Court in accordance with § 943 of the Bankruptcy Code after notice and a hearing is held in accordance with Bankruptcy Code § 1128 to consider confirmation of the Plan.

1.15.   **"Confirmation Order"** means the order entered by the Court confirming the Plan in accordance with the provisions of Chapter 9 of the Code, whether or not such order shall have become a Final Order.

1.16.   **"Contribution Agreement"** means the Contribution and Asset Transfer Agreement between and among UMC and GLH, the City and the County that is the principal agreement in the UMMC Transaction.

1.17.   **"Convenience Claim**" is any Claim that is an Unsecured Claim and that is (i) Allowed in an amount of Five Thousand Dollars ($5,000) or less, or (ii) Allowed in an amount greater than Five Thousand Dollars ($5,000) but which is reduced to Five Thousand Dollars ($5,000) by an irrevocable written election of the holder of such Claim made on a properly delivered Ballot.

1.18.   **"County"** means Leflore County, Mississippi.

1.19.   **"Court"** or **"Bankruptcy Court"** means the United States Bankruptcy Court for the Northern District of Mississippi in which GLH's Case is pending, and any court having competent jurisdiction to review its orders of or to hear appeals from its decisions.

1.20.   **"Debtor"** shall mean GLH.

1.21.   **"Disallowed"** means any Claim to the extent that it is not yet an Allowed Claim, whether in whole or in part.

1.22.   **"Disclosure Statement"** is the disclosure statement approved by the Court as containing adequate information concerning the Plan, in accordance with Bankruptcy Code § 1125.

1.23.   **"Disputed"** with respect to any Claim is one to which an objection is timely filed, or which is otherwise contested in any manner, until such objection is resolved by Final Order.

1.24.   **"Effective Date"** of the Plan means the date after the entry of the Confirmation Order confirming this Plan that all conditions to the effectiveness of the Plan have been satisfied or waived, or as soon thereafter as is practicable.

1.25.   **"Escrow Account"** means the account into which the Escrow Funds shall be deposited as provided in the Escrow Agreement.

1.26.   **"Escrow Agreement"** means the agreement to be entered into as part of the UMMC Transaction and shall become effective from and after closing.

1.27.   **"Escrow Funds"** means the Cash and other "Liquidation Proceeds" as defined in the Escrow Agreement required to be deposited into the Escrow Account, together with all interest earned thereon.

1.28.   **"Executory Contract"** means any executory contract of any of GLH as such term is used in § 365 of the Bankruptcy Code.

**1.29.**   **"Final Order"** shall mean an order or judgment of the Court as to which the time to modify, amend, or appeal, petition for certiorari, or seek reargument or rehearing has expired and as to which no modification, amendment, appeal, reargument, certiorari petition, or rehearing is pending, or if such action has been sought, the order of the Court has been affirmed by the highest court to which the

order was appealed or from which the reargument or rehearing was sought, or certiorari has been denied, or the appeal is dismissed or rendered moot, and the time to take any further appeal or to seek certiorari or further reargument or rehearing has expired.

1.30. **"GLH"** shall mean the debtor in this Case, Greenwood Leflore Hospital, a public community hospital formed and existing under § 41-13-10 of the Mississippi Code. GLH is jointly owned by the City and County and, as a public community hospital, is recognized under Mississippi law as a stand-alone municipal entity separate and apart from its owners.

1.31. **"Impaired"** means, with regard to any Class of Claims, that the rights of the claimants in such Class are deemed impaired under § 1124 of the Bankruptcy Code.

**1.32. "Insurance Coverage"** means any insurance coverage under any Insurance Policy which is available for the payment of liability, damages, fees or expenses arising from or related to Tort Claims.

1.33. **"Pension Plan"** means the GLH Pension Plan instituted October 1, 1974, as thereafter amended and restated.

1.34. **"Petition Date"** means April 15, 2026, the date GLH filed its petition initiating this Case.

1.35. **"Plan"** shall mean this Plan, all addenda, exhibits, schedules, releases and other attachments, as may be hereafter amended, modified or altered.

1.36. **"Post-Confirmation Budget"** means the estimated costs and expenditures that constitute Post-Confirmation Expenses to be formulated and maintained by GLH, as updated and modified, pursuant to which GLH will fund performance of the Plan from and after the Effective Date. GLH shall provide UMMC with Post-Confirmation Budget for each calendar month and with periodic reconciliations both of which are to be acceptable to UMMC in form, manner of administration and substance.

1.37. **"Post-Confirmation Expenses"** shall mean all administrative and operational costs incurred by GLH from and after the Effective Date in performing the Plan, administering its remaining affairs, winding down operations and dissolving GLH's corporate existence. Post-Confirmation Expenses shall be paid from Cash, assets and properties of GLH that constitute "Excluded Assets" as defined in the UMMC Transaction and which shall be reported as provided in the Escrow Agreement. Post-Confirmation Expenses shall be administered and subject to the Post-Confirmation Budget.

1.38. **"Professional"** means any professional person or organization retained by GLH to provide services in or in connection with this Case.

1.39. **"*pro rata*"** shall mean in the same proportion that the amount of any Allowed Claim in a class bears to the aggregate amount of all Claims in such class, including in such aggregate amount both the Allowed Claims and any then unresolved Disputed Claims in such class as of the date of any distribution payment pursuant to this Plan.

1.40. **"Rejection Claim"** is an Unsecured Claim asserted under § 502(g) of the Bankruptcy Code resulting from the rejection of any Executory Contract or Unexpired Lease in accordance with § 365 of the Bankruptcy Code.

1.41. **"Tort Claim"** is a Claim against any of GLH arising from a private or civil wrong or injury, other than breach of contract.

4

1.42.  **"Tort Claim Reserves"** means the trust fund established and administered by GLH as a self-insured political subdivision under § 11-46-17(3) of the Mississippi Code. Replacement liability insurance coverage provided by any subsequent insurer or insurers that fully assume all of GLH's liabilities upon termination of GLH's self-insured status shall be considered to be Tort Claim Reserves under the Plan.

1.43.  **"UMMC"** means the University of Mississippi Medical Center.

1.44.  **"UMMC Transaction"** means the transaction between GLH and UMMC as described in Section 6.1, below, to be closed on the Effective Date.

1.45.  **"Unexpired Lease"** means any unexpired lease of any of GLH as such term is used in § 365 of the Bankruptcy Code.

1.46.  **"Unimpaired"** means, as to any Class of Claims, that the rights of claimants in such Class are not Impaired.

1.47.  **"Unsecured Claim"** shall mean any Allowed Claim, other than an Administrative Claim, that arises under any Executory Contract or Unexpired Lease which has been rejected, any deficiency Claim, any Claim of a general trade creditor, and any other obligation, liability or Claim of any kind or nature held against GLH which was incurred on or before the Petition Date.

## ARTICLE 2.
### Plan Summary

The Plan provides for adjustment of GLH's debts by entering into the UMMC Transaction to be closed whereby the hospital operations and facilities will be transferred to UMMC on the Effective Date pursuant to the Contribution Agreement and ancillary agreements, under which only certain expressed assets are transferred to UMMC and certain expressed obligations are assumed by UMMC, in its sole and absolute discretion.  Thereafter, GLH will continue the winding down of its affairs, disposing of and collecting remaining assets and properties, funding the Escrow Account as required, resolving all Claims, and ultimately dissolving when all administrative matters are completed.

## ARTICLE 3.
### Administrative Claims

3.1.  *Allowance and Payment.*

3.1.1.  Unless otherwise agreed, each holder of an Allowed Administrative Claim shall be paid in Cash equal to the amount of the holder's Allowed Administrative Claim on the later of (i) the Effective Date, (ii) the date funds become available to pay such Allowed Administrative Claim or (iii) as soon as practicable after such Administrative Claim becomes payable pursuant to (a) any agreement between GLH, as applicable, and the holder of such Administrative Claim or (b) by Final Order.  In the event an Allowed Administrative Claim is not paid in full on or before the Effective Date, such Claim shall be deemed included as a Post-Confirmation Expense that GLH shall satisfy as soon as practicable after the Effective Date.

3.1.2.  All requests for payment of previously unpaid Administrative Claims shall have been made by the Administrative Bar Date, and the failure to do so shall render such unpaid Administrative Claims shall be waived, discharged and forever barred.  All such requests are subject to review and approval by the Bankruptcy Court after notice and a hearing.

3.2.    *Compensation of Professionals*.  All Professionals holding an Administrative Claim for unpaid fees and expenses for services provided to GLH in or in connection with this Case shall have filed, within five (5) days prior to the Confirmation Hearing, a declaration stating all amounts paid or to be paid by GLH.  Unpaid compensation and expenses shall be paid on the Effective Date if GLH determines them to be reasonable, failing in which such declaration shall serve as request for Allowance of an Administrative Claim to which GLH may object and have resolved by the Court.

**ARTICLE 4.**
**Classification Of Claims**

4.1.    *Unclassified Claims*.  Administrative Claims are not classified pursuant to § 1123(a) of the Bankruptcy Code and are treated separately as provided in § 1129(a) of the Bankruptcy Code.

4.2.    *Classified Claims*.  Claims against in GLH are classified in the following classes:

4.2.1.   <u>Class 1</u>:        Convenience Claims

4.2.2.   <u>Class 2</u>:        Pension Claims

4.2.3.   <u>Class 3</u>:        Tort Claims

4.2.4.   <u>Class 4</u>:        Unsecured Claims

**ARTICLE 5.**
**Treatment and Voting Rights of Classified Claims**

5.1.    *Treatment of Claims*

5.1.1.   Class 1: Convenience Claims

a.      **Treatment**.  Holders of Allowed Class 1 Convenience Claims will receive Cash equal to (i) Ten Percent (10%) of the Allowed amount of its Claim or, (ii) if the aggregate amount distributable to Class 1 Claims exceeds $50,000, their *pro rata* share of $50,000, on the Effective Date in full satisfaction and release of such Claim.

b.      **Impairment**.  Class 1 is Impaired and entitled to vote on the Plan.

5.1.2.   <u>Class 2</u>: Pension Claims

a.      **Treatment**.  Class 2 consists of all Pension Claims.  Holders of Allowed Class 2 Claims shall be entitled to payment solely from the GLH Pension Plan strictly in accordance with its terms and provisions and only to the extent of benefits available for payment to participants thereunder. The holder of a Class 2 Claim shall have no right to assert any further Claim against GLH or to seek further recovery from GLH or its assets or properties on account of an Allowed Class 2 Claim.

b.      **Impairment**.  Class 2 is Impaired.  Holders of Class 2 Claims will receive nothing under the Plan outside of amounts available to them under the GLH Pension Plan and are therefore not entitled to vote on the Plan.

5.1.3.    Class 3: Tort Claims

a.        **Treatment**.  Class 3 consists of all Tort Claims.  Holders of Allowed Class 3 Claims shall be entitled to payment solely from Tort Claim Reserves to the extent of the amount of coverage available thereunder.  From and after the Effective Date, the automatic stay shall be lifted with respect to the prosecution of any Tort Claim, and the holder of a Tort Claim shall have no right to assert any further Claim against GLH or to seek further recovery from GLH or its assets or properties on account of an Allowed Class 3 Claim.

b.        **Impairment**.  Class 3 is Impaired.  Holders of Class 3 Claims that were liquidated prior to the Petition Date are entitled to vote on the Plan.  Holders of Class 3 Tort Claims that remain unliquidated are Disputed and not entitled to vote on the Plan.

5.1.4.    Class 4: Unsecured Claims

a.        **Treatment**.  Each holder of an Allowed Class 4 Unsecured Claim will receive distributions of its *pro rata* share of net Cash realized from the liquidation and collection of GLH properties and assets after the Effective Date. Distributions shall be made as provided in Section 7.4 and as and when otherwise provided for in this Plan and shall constitute payment in full satisfaction of said Allowed Class 4 Claims.

b.        **Impairment**.  Class 4 is Impaired and entitled to vote on the Plan.

5.2.    *Voting Classes*.  There are 3 voting Classes under this Plan.  Holders of Allowed Claims in Classes 1, 3 and 4 are Impaired, and are therefore entitled to vote to accept or reject this Plan.

5.3.    *Voting Rights as to Confirmation of Plan; Necessity of Allowance of Claims*.  If a Claim is a Disputed Claim prior to confirmation of the Plan, such Disputed Claim shall not be entitled to vote on the Plan unless such Claim is estimated, for voting purposes, by Final Order of the Bankruptcy Court.

5.4.    *Acceptance by Impaired Classes*.  An Impaired Class of Claims shall have accepted this Plan if (a) the holders (other than any holder designated under Bankruptcy Code § 1126(e)) of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept this Plan, and (b) the holders (other than any holder designated under Bankruptcy Code § 1126(e)) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept this Plan.

### ARTICLE 6.
### Means for Implementation of Plan

6.1.    *UMMC Transaction*.  Upon the Effective Date, GLH shall close the UMMC Transaction in accordance with the Contribution Agreement in form and substance substantially identical to that attached hereto as **Exhibit "A"** together with Escrow Agreement and various ancillary agreements, exhibits and schedules thereto.  GLH will transfer and transition hospital ownership and operations to UMMC pursuant thereto on the Effective Date.  UMMC shall not be deemed a successor to GLH, the City or the County nor shall it incur any liabilities associated with any of them except those expressly assumed in the Contribution Agreement.  The Contribution Agreement, the Escrow Agreement and other ancillary agreements are incorporated into this Plan solely for purposes of implementing and enforcing the rights, protections, limitations, and conditions in favor of UMMC. Nothing in this Plan shall amend, waive, impair, limit, or modify any right, condition, consent right, termination right, approval right, protection, defense, or remedy of UMMC under the Contribution Agreement or the Escrow Agreement unless expressly agreed to in writing by UMMC.

7

6.2.    *Post-Confirmation Management*

6.2.1.   <u>Continued Corporate Existence</u>.  From and after the Effective Date, GLH shall continue its corporate existence for as long as the Board of Commissioners deems necessary or appropriate to carry out the terms of this Plan and to wind down the affairs of GLH.

6.2.2.   <u>Board of Commissioners Remain in Place</u>.  The Board of Commissioners of GLH shall remain in place and shall continue to oversee the affairs of GLH.

6.2.3.   <u>Key Management and Personnel</u>.  GLH will employ such persons as are deemed necessary, from time to time and on such terms as it deems appropriate, to perform the Plan and carry out its business from and after the Effective Date. These personnel are expected to include certain senior management and other administrative employees needed to permit GLH to carry out the tasks set forth in Section 6.3 and otherwise perform the Plan. At such point in time that GLH has fully wound-down its affairs, it may designate or contract with a third-party to administer it remaining non-operational obligations under the Plan.

6.3.    *Post-Confirmation Operations and Administration*

After occurrence of the Effective Date and closing of the UMMC Transaction, GLH presently anticipates that its post-confirmation obligations will include the following:

6.3.1.   <u>Disposition of Assets</u>.  All properties and assets of GLH that are not transferred to UMMC in the UMMC Transaction (defined in the Contribution Agreement as "Excluded Assets") will be liquidated or otherwise disposed of as necessary to furtherance of administration.  This will include the "Excluded Real Property" as defined in the UMMC Transaction.

6.3.2.   <u>Collection of Accounts Receivable and Assertion of Causes of Action</u>.  Subject to the Contribution Agreement, GLH will continue to manage all billing and collection of accounts receivable and shall be empowered to file and prosecute its rights to recover the same in adversary proceedings in the Bankruptcy Court or other litigation in any other appropriate forum.  Except to the extent expressly waived under the Plan, as of the Effective Date, pursuant to Bankruptcy Code § 1123(b)(3), any and all Causes of Action shall remain property of GLH. GLH shall retain the power and authority to litigate, abandon, sell, settle or compromise any Cause of Action.

6.3.3.   <u>Termination of Pension Plan and related benefit plans</u>.  GLH's Pension Plan will terminate pursuant to its terms, specifically Sections 10.05 and 10.06 of the Pension Plan.  GLH will follow all required procedures in the Pension Plan regarding the termination, and holders of Pension Claims shall receive distributions in such amounts and at such times as provided in the Pension Plan. GLH will also terminate an employee profit-sharing plan and transition employee accounts as directed by the employees. GLH will also be required to terminate its employee health benefit plan.

6.3.4.   <u>Management of Tort Claims and Related Claims</u>.  It is the intention as part of implementation of the Plan that GLH will terminate its self-insured plan and transition its liabilities for Tort Claims to one or more insurance companies to provide coverage for such liabilities substantively equal to that provided under the Tort Claim Reserves. Until such time, which may happen prior to or after the Effective Date of the Plan, it will continue to administer Tort Claims.  GLH will continue to administer workers compensation claims and unemployment claims until all such claims are resolved.

6.3.5.   <u>Financial and Corporate Records</u>.  GLH will be required to comply with statutory audit requirements and regulatory filings (*e.g.*, Medicare and Medicaid cost reports) and to otherwise attend

8

to all of its financial and administrative affairs and to finalize and close all books and records at such time as the Plan has been performed.  As and when appropriate, GLH will take necessary and appropriate actions to dissolve its corporate existence.

6.3.6.   <u>Management and Termination of Employees</u>.  As and when no longer necessary or beneficial to GLH's implementation of the Plan, employees will be terminated.  GLH will continue to oversee all matters relating to legal, regulatory and administrative requirements relating to employment matters.

**ARTICLE 7.**
**Plan Implementation and Execution**

7.1.   *Consent under § 904 of the Bankruptcy Code*.  Pursuant to and for purposes of Bankruptcy Code § 904, GLH consents to entry of the Confirmation Order on the terms and conditions set forth herein and to entry of any further orders as necessary or required to implement the provisions of the Plan or any related transactions, *provided, however*, that, other than as set forth specifically herein, the terms and provisions of this Plan are without prejudice to the rights of GLH pursuant to § 904 of the Bankruptcy Code, and, other than as specifically set forth herein, shall not be deemed to constitute GLH's consent to the Bankruptcy Court's interference with (i) any of the governmental powers of GLH; (ii) any of the property or revenues of GLH; or (iii) GLH's use or enjoyment of any income-producing property.

7.2.   *Authority to Implement Plan*.  GLH shall be empowered and authorized to take any and all steps it deems necessary or appropriate to manage its affairs, administer its assets and properties, and to otherwise implement the Plan.  GLH shall neither be required nor obligated to seek approval from the Bankruptcy Court in the performance of its duties, but may do so, if it determines in its discretion to do so, to the extent of the Bankruptcy Court's retained jurisdiction under the Plan.

7.3.   *Post-Confirmation Budget and Funding of Escrow Account*. GLH will perform its obligations under the Plan in accordance with the Post-Confirmation Budget. The Post-Confirmation Budget identifies and quantifies the Post-Confirmation Expenses associated with administering the matters discussed above and all expected matters required of GLH to wind-down its affairs.  Consistent with the Escrow Agreement, GLH and UMMC will mutually agree to procedures for management of the Post-Confirmation Budget and the flow of funds relating to payment of Post-Confirmation Expenses. Notwithstanding anything in this Plan or the Post-Confirmation Budget to the contrary, no Post-Confirmation Expense, reserve, budget item, distribution, or other use of Cash or proceeds shall prime, reduce, delay, impair, or otherwise limit the funding, replenishment, maintenance, use, or disbursement of the Escrow Account or Escrow Funds for UMMC's benefit, except for directly related liquidation costs expressly permitted by the Escrow Agreement. All "Liquidation Proceeds" as defined in the Escrow Agreement shall be handled, deposited, applied, and disbursed in accordance with the Escrow Agreement and the Contribution Agreement.

7.4.   *Distributions to Class 4 Claims*

7.4.1.   <u>Excluded Real Estate Proceeds</u>.  Distributions to Holders of Allowed Class 4 Unsecured Claims shall be made first from the net Cash realized from the sale of "Excluded Real Estate" as defined in the UMMC Transaction documents.  GLH shall cause the Excluded Real Estate to be sold and distributions made to holders of Allowed Class 4 Unsecured Claims on a *pro rata* basis as and when it deems appropriate but as soon as is practicable and in the best interest of such Holders but after payment or reservation for Administrative Claims and Post-Confirmation Expenses.

7.4.2.    Residual Escrow Account Proceeds.    If and to the extent available upon termination of the Escrow Account, as provided under the terms of the Escrow Agreement, holders of Allowed Class 4 Claims shall receive *pro rata* distributions from Escrow Funds. No holder of a Class 4 Claim shall have any direct right to the Escrow Account or the Escrow Funds except to the extent such residual funds are released from escrow in accordance with the Escrow Agreement.

# ARTICLE 8.
## Administration of Claims

8.1.    *Objection to Claims*. From and after the Effective Date, GLH shall have the exclusive authority to file objections, settle, compromise, withdraw or litigate to judgment objections to Claims.  GLH may withdraw, abandon, settle or compromise any Claim and may, but shall not be required, to seek entry of an order from the Bankruptcy Court approving of such action.

8.2.    *Objection Deadline.*  Objections to Claims shall be filed with the Bankruptcy Court, served upon the holders of each Claim to which objection is made, and resolved or withdrawn prior to entry of the Final Decree in these Cases.

8.3.    *Allowance of Claims.*  Except as to Claims Allowed by the Plan, or as otherwise expressly provided herein or in any order by the Bankruptcy Court prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed in accordance with the Plan.

8.4.    *Treatment of Disputed Claims.*  Cash shall be distributed to a holder of any type of Disputed Claim when, and only to the extent that, such Disputed Claim becomes an Allowed Claim as provided in the Plan.

8.5.    *Disallowed Claims.*  All holders of Claims against whom GLH has or has asserted a Cause of Action that arises under Chapter 5 of the Bankruptcy Code shall be deemed disallowed pursuant to § 502(d) of the Bankruptcy Code, and holders of such Claims may not vote to accept or reject the Plan until the Cause of Action against the holder of such Claim has been settled or a Final Order entered and all sums due on account thereof have been paid in full.

8.6.    *Estimation of Claims.*  GLH may for any purpose, including for purposes of making distributions hereunder, request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to § 502(c) of the Bankruptcy Code without regard to whether such Claim has been subject to a previous objection or whether such objection has been ruled upon or is subject to continued proceedings, including appeal.

8.7.    *Distributions Pending Allowance*.  Notwithstanding any other provision of the Plan, if any Claim or any portion of a Claim is Disputed, no payment or distribution provided in the Plan shall be made on account of such Claim unless and until the Disputed Claim is resolved and becomes Allowed.  GLH on Agent may estimate an amount to which a Disputed Claim may be Allowed, and may reserve from any distribution such amounts as GLH deems necessary and appropriate.

8.8.    *Means of Payment*.  Payments made pursuant to this Plan shall be made in Cash and paid by check drawn or by wire transfer initiated from a domestic bank as determined by GLH.

8.9.    *Delivery of Distributions*.  For purposes of all distributions under the Plan, GLH shall be entitled to rely on the name and address of the holder of each Allowed Claim or Interest as shown any timely filed proof of Claim and, if no such proof of Claim is filed, as shown on the Schedules, except to the

10

extent that GLH receives adequate written notice of a transfer or change of address, properly executed by the holder or its authorized agent.  If a distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until GLH is notified, in writing, of such holder's then current address, at which time distributions shall be made to such holder without interest.  Any amounts deemed by GLH to be unclaimed funds after delivery hereunder has failed shall be deemed to escheat to the City and County in equal proportion.

8.10.    *Right of Offset*.  Pursuant to Bankruptcy Code § 553 or applicable non-bankruptcy law, GLH may set off against any Allowed Claim or Interest and the distributions to be made pursuant hereto on account of such Claim (before any Distribution is made on account of such Claim), the claims, equity interests, rights, and causes of action of any nature that GLH may hold against the holder of such Allowed Claim; *provided, however*, that neither the failure to effect such a setoff nor the Allowance of any Claim hereunder shall constitute a waiver or release by GLH of any such claims, rights, and causes of action that GLH may possess except as specifically provided herein.  No entity shall retain the right of offset, set off, recoupment, or any other right, against GLH under Bankruptcy Code § 553 or otherwise unless such entity is the Holder of a Claim that has been timely filed under Bankruptcy Code § 502 and such Claim is an Allowed Claim.

### ARTICLE 9.
### Executory Contracts and Unexpired Leases

9.1.    *Assumption.*

9.1.1.    Assumption and Assignment.  On the Effective Date, the Executory Contracts and Unexpired Leases identified in Schedule 9.1 attached hereto shall either be assumed by GLH or assumed and assigned to UMMC as part of the UMMC Transaction, respectively and as separately indicated in Schedule 9.1. At that time, GLH or UMMC, as applicable, shall, except as to defaults described in § 365(b)(2) of the Bankruptcy Code, (i) cure, or provide adequate assurance that they will promptly cure, any existing default in the Executory Contract or Unexpired Lease, (ii) compensate, or provide adequate assurance that they will promptly compensate, another party to the Executory Contract or Unexpired Lease for any actual pecuniary loss to such other party resulting from such default, and (iii) provide adequate assurance of future performance under such Executory Contract or Unexpired Lease.  GLH and UMMC reserve the right to amend or supplement Schedule 9.1.

9.1.2.    Cure Amounts.  GLH and UMMC, as applicable, shall promptly satisfy on the Effective Date, if not paid before then, the cure amounts stated in Schedule 9.1, or such other amount or upon such repayment terms and conditions as may be otherwise mutually agreed, to the respective counterparties to the Executory Contracts and Unexpired Leases identified therein. Failure of any counterparty to object to the amount stated in Schedule 9.1 in connection with the confirmation of this Plan shall result in said amounts being fully and finally determined to be the cure amount required to assume and assign the Executory Contracts and Unexpired Leases stated therein.

9.1.3.    Approval of Assumption.  Entry of the Confirmation Order shall constitute the approval, pursuant to §§ 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption and assignment of the Executory Contracts and Unexpired Leases assumed pursuant to Section 9.1 hereof.

9.2.    *Rejection*

9.2.1.    Blanket Rejection.  Except for those Executory Contracts and Unexpired Leases previously assumed or rejected during the pendency of this Case or otherwise specifically addressed elsewhere in this Plan, all Executory Contracts and Unexpired Leases that existed as of the Petition Date to

which GLH was a party and which has not expired by its terms shall be rejected.  Subject to the occurrence of the Effective Date, the rejection of any Executory Contract or Unexpired Lease pursuant to this Article shall be effective upon the earliest of (i) the date that GLH provides notice to the counterparty of the effectiveness of such rejection and (ii) the date specified as the effective date of rejection in any order of the Court.

        9.2.2.   <u>Approval of Rejection</u>.  Entry of the Confirmation Order shall constitute the approval, pursuant to §§ 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of all Executory Contracts and Leases not otherwise assumed under the Plan.

        9.2.3.   <u>Bar Date for Asserting Rejection Claims</u>.  Rejection Claims arising out of the rejection of an Executory Contract or Unexpired Lease pursuant to this Plan must be filed with the Court within thirty (30) days after the Effective Date.  The Confirmation Order shall provide that notice of the Effective Date be provided to all counterparties to any rejected Executory Contract or Unexpired Lease.  Any Rejection Claim arising from rejection of a previously rejected Executory Contract or Lease during the pendency of the Cases shall have been filed by the date set by the Court in the order approving such rejection.  Any Rejection Claims not filed within such times are/will be forever barred from assertion against GLH and its property.  If any Rejection Claim becomes an Allowed Claim, it shall be treated as an Unsecured Claim under Class 4.

## ARTICLE 10.
### Cramdown and Plan Modification

10.1.   *Confirmation by "Cram Down"*.  If any Impaired Class does not vote to accept the Plan as provided in § 1126 of the Bankruptcy Code, GLH will request confirmation of the Plan pursuant to § 1129(b) of the Code with respect to any Impaired Class in the applicable voting estate.  GLH reserves the right to amend the Plan pursuant to this Article 10.

10.2.   *Right to Modify.*  GLH reserves the right to amend or modify the Plan before the Effective Date.  After the Effective Date, GLH may remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intentions of the Plan.

10.3.   *Deemed Acceptance or Rejection.*  A Holder of a Claim that has accepted or rejected the Plan will be deemed to have either accepted or rejected, as the case may be, the Plan as modified or amended, even if the modifications or amendments are made after the solicitation of votes of acceptance or rejection of the Plan, unless the Bankruptcy Court orders that such Claimant may change its previous vote within a time established by the Bankruptcy Court for such change to be made.

## ARTICLE 11.
### Conditions to Confirmation and Effective Date of Plan

11.1.   *Conditions to Confirmation.*  The Plan shall not be confirmed unless the Confirmation Order and the Plan, as confirmed pursuant to the Confirmation Order, shall be in a form and substance satisfactory to GLH and UMMC and in compliance with the requirements thereof under the UMMC Transaction.

11.2.   *Conditions to Occurrence of the Effective Date.*  The Effective Date of the Plan shall not occur unless and until the following conditions shall have been satisfied, waived or extended, as the case may be, in writing by GLH:

12

11.2.1.  The Confirmation Order shall have been entered, unstayed and become a Final Order.

11.2.2.  The UMMC Transaction shall have closed and all actions to be taken incident thereto have occurred or been waived or extended; and

11.2.3.  All consents, regulatory approvals and other authorizations required for implementation of the Plan have been granted and effective.

11.3.    *Revocation or Withdrawal of the Plan.*

11.3.1.  GLH may revoke or withdraw the Plan prior to the Confirmation Date.

11.3.2.  If the Plan is revoked or withdrawn prior to the Confirmation Date in accordance with Section 11.3.1 hereof, or the Effective Date does not occur because the conditions precedent thereto have not been satisfied, then at the election of GLH the Plan may be deemed null and void.  In such event, (i) GLH and all holders of Claims shall be restored to the status quo ante as of the day immediately preceding the filing of the Plan, and (ii) all GLH's obligations with respect to the Claims shall remain unchanged, all of GLH's rights against all parties shall be fully preserved and nothing contained herein or in the Disclosure Statement shall be deemed an admission or statement against interest or to constitute a waiver or release of any claims by or against GLH or any other party or to prejudice in any manner the rights of GLH or any party in any further proceedings.

11.4.    *Notice of Effective Date.*  The Confirmation Order shall provide that, promptly after the occurrence of the Effective Date, GLH shall cause to be served on all creditors a notice that informs such creditors of (i) entry of the Confirmation Order and the resulting confirmation of the Plan; (ii) the occurrence of the Effective Date; (iii) the assumption and assignment and or the rejection of Executory Contracts and Unexpired Leases pursuant to the Plan, as well as the deadline for filing of Rejection Damage Claims; (iv) the deadline established under the Plan for the assertion of Administrative Claims; and (v) such other matters as GLH finds appropriate or the Court may direct.

## ARTICLE 12.
### General Provisions

12.1.    *Effect of Confirmation.*  The provisions of § 944 of the Bankruptcy Code shall apply in full to the Plan and the actions contemplated here on and after the Effective Date.

12.2.    *Discharge.*  Except as expressly provided otherwise in this Plan or the Confirmation Order, the Confirmation Order will be a judicial determination, as of the Effective Date, of a discharge of all Claims and other debts and liabilities against GLH, pursuant to §§ 524(a)(1), 524(a)(2) and 944(b) of the Bankruptcy Code, and such discharge will void any judgment obtained against GLH at any time, to the extent that such judgment relates to a discharged Claim; provided that such discharge will not apply to (i) Claims specifically exempted from discharge under the Plan; and (ii) Claims held by any entity that, before the Confirmation Date, had neither notice nor actual knowledge of the Case.

12.3.    *Automatic Stay.*  Unless otherwise modified by order of the Bankruptcy Court during the Case, the automatic stay of § 362 of the Bankruptcy Code shall continue in effect until the Effective Date.

**12.4.    *INJUNCTION.*  On the Effective Date, All entities or persons that have held, currently hold or may hold any Claim released or exculpated pursuant to the Plan will be permanently enjoined from taking any of the following actions against GLH or UMMC any of its respective assets or**

**properties on account of such released Claim: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien, claim or encumbrance; (iv) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due UMMC; (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan; and (vi) taking any action to interfere with implementation or consummation of the Plan. For the avoidance of doubt, from and after the Effective Date, no holder of any Claim or other person may assert against UMMC, the Transferred Assets, or any affiliate or designee of UMMC any Excluded Liability or any claim based on successor liability, transferee liability, continuation, de facto merger, alter ego, substantial continuity, or similar theory arising from GLH's or any other Transferor's acts, omissions, circumstances, or liabilities occurring on or before the Effective Date.**

12.5.  *EXCULPATION*.  **This Plan does not affect an exculpation or release of any person or entity, save and except the Board of Commissioners, officers and persons employed by GLH during the pendency of these Cases or serving in such capacity as of the Effective Date, GLH, and the Professionals employed by GLH.  Upon the Effective Date, such protected persons shall be released by GLH pursuant to § 1123(b)(3) of the Bankruptcy Code and shall not have or incur any liability to GLH or the estates under any theory of liability for any act or omission occurring on or after the Petition Date in connection with or related to GLH or the Case, including, but not limited to, (i) formulating, preparing, disseminating, implementing, confirming, consummating or administering this Plan (including soliciting acceptances or rejections thereof); or (ii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with this Plan, except for acts constituting willful misconduct or gross  negligence, and in all respects such protected persons shall be entitled to rely in good faith upon the advice of counsel.**

12.6.  *Effect of Injunction and Exculpation*

12.6.1.  Other than as limited by the foregoing injunction (Section 12.4) and exculpation (Section 12.5) provisions of this Plan, or any other provision of the Plan, neither the Plan, the Confirmation Order nor any documents executed or filed in connection with the Plan, the Confirmation Order or the Case shall release, impair or affect any claims or causes of action possessed by the holder of a Claim against any non-debtor person who may be liable with GLH on account of such Claim; provided, however, that nothing in this Plan preserves or permits any claim against UMMC, the Transferred Assets, or any affiliate or designee of UMMC to the extent barred by the Contribution Agreement, the Escrow Agreement, this Plan, or the Confirmation Order.

12.7.  *Default*.  In the event that GLH fails to make any payment required under this Plan when due, or that GLH fails to perform any obligation required to be performed under this Plan timely, the aggrieved party may notify GLH of such default by providing written notification as required under the Plan of such failure to perform or failure to pay and thirty (30) business days to cure the default.  Upon default, such aggrieved party may exercise any remedy to which it may be entitled under this Plan, the Bankruptcy Code, or non-bankruptcy law to recover its Allowed Claim without further action required by the Bankruptcy Court, except to the extent prohibited by Section 13.3, supra.

12.8.  *Binding Effect*.  On the Effective Date, according to § 944 of the Bankruptcy Code, the provisions of this Plan will bind GLH, GLH and any holder of a Claim or Interest, whether or not the Claim is Impaired under the Plan and whether or not the holder of the Claim has accepted the Plan.

12.9.    *Notices.*  Except as otherwise specified, all notices and requests will be given by any written means, including but not limited to, telex, telecopy, telegram, first class mail, express mail or similar overnight delivery service and hand delivered letters, and any such notice or request will be deemed to have been given when received.  Notices will be delivered as follows:

*If to GLH*

> Greenwood Leflore Hospital
> ATTN:  Dawne Holmes
> 2001 Garrard Ave
> Greenwood, Mississippi 38930
> Email:  dholmes@glh.org

*with a copy to*

> Douglas C. Noble
> **McCraney | Montagnet | Quin | Noble PLLC**
> 602 Steed Road • Suite 200
> Ridgeland, Mississippi 39157
> Telephone: (601) 707-5725
> Facsimile:  (601) 510-2939
> Email:   dnoble@MMQNLaw.com

12.10.   *Headings.*  The headings used in the Plan are inserted for convenience only and constitute part neither of the Plan nor in any manner affect the provisions or interpretations of the Plan.

12.11.   *Enforceability.*  Should any provision of the Plan be determined to be unenforceable for any reason, such determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

12.12.   *Closing of Case*.  At such time as GLH determines that the Plan has been fully performed and the Case fully administered, it will close the case as provided in § 946 of the Bankruptcy Code.

## ARTICLE 13.
## Retention of Jurisdiction

The Bankruptcy Court will retain jurisdiction of all matters arising out of or related to the Case and the Plan as long as necessary for the purposes of §§ 105(a) and 945 of the Bankruptcy Code as may be necessary for implementation of this Plan.

*[remainder of page intentionally left blank]*

15

THIS the 7th day of June, 2026.

Respectfully submitted,

**GREENWOOD LEFLORE HOSPITAL**

By:  /s/ *Dawne Holmes*

Chief Financial Officer and Interim Chief Executive Officer

Douglas C. Noble, MS Bar No. 10526
**McCraney | Montagnet | Quin | Noble PLLC**
602 Steed Road • Suite 200
Ridgeland, Mississippi 39157
Telephone: (601) 707-5725
Facsimile:  (601) 510-2939
Email:  dnoble@MMQNLaw.com

*Counsel to Greenwood Leflore Hospital*

16