IN THE CHANCERY COURT OF THE FIRST JUDICIAL DISTRICT OF MADE 1 2026
HINDS COUNTY, MISSISSIPPI

EDDIE JEAN CARR, CHANCERY CLERK

BY_____ D.C.

GREENWOOD LEFLORE HOSPITAL                                    APPELLANT

VS.                                        CAUSE NO. G2025-1314 T/1

MISSISSIPPI DIVISION OF MEDICAID AND                         APPELLEES
CINDY BRADSHAW, IN HER OFFICIAL CAPACITY
AS EXECUTIVE DIRECTOR OF THE MISSISSIPPI
DIVISION OF MEDICAID

## MEMORANDUM OPINION OF THE COURT AND THE COURT'S FINDING OF FACTS AND CONCLUSIONS OF LAW ON APPELLANT'S EMERGENCY MOTION TO STAY RECOUPMENT

**THIS CAUSE** came before this Court on the 11th day of March, 2026, where this Court has received the Appellant's, Greenwood Lefore Hospital (GLH) Verified Emergency Motion to Stay Recoupment, and this Court instructed both GLH and Appellees, Mississippi Division of Medicaid (Division), to file with this Court their competing Finding of Facts and Conclusions of Law on the issue of recoupment of funds based upon GLH's Verified Emergency Motion to Stay Recoupment, and this notice was through an email from this Court's administrator on March 5, 2026.  This Court has received submissions from GLH and the Division, and this Court, after receiving GLH's and the Division's submissions, now enters its Memorandum Opinion and Finding of Facts and Conclusion of Law on GLH's Verified Emergency Motion to Stay Recoupment of certain funds that MDM wished to recoup, as follows, to-wit:

1

**EXHIBIT "A"**

## FINDING OF FACTS

On June 23, 2025, GLH was informed by the Division of Medicaid (the "Division") that the Division would be "recouping" $5,518,829 in State Fiscal Year 2024 Mississippi Hospital Access Program ("MHAP") payments by withholding future MHAP payments that GLH otherwise receive (the "June 23 Decision").  See Dkt. 4, at 4.  On September 17, 2025, the Division rejected GLH's proposed alternative recoupment schedules, which were designed to keep GLH open and viable and thus continuing to receive the same MHAP payments against which the recoupment could be offset (the "September 17 Decision"). GLH sought to appeal the September 17 Decision, but, on October 29, 2025, the Division denied GLH's right to appeal (the "October 29 Final Decision").  See Dkt. #3, at Ex. A.

GLH filed this appeal and the subject motion to stay on November 10, 2025, to address the imminent impact of the Division's decision to recoup $900,000 per quarter from GLH until the total outstanding balance of $3,524,294.41 was recouped.  GLH sought a stay of these recoupments because GLH would not be able to stay open without relief.

On December 1, 2025, the Division's Executive Director informed GLH that the Division agreed to pause the recoupments at least until March 2026.  On December 12, 2025, the Division informed GLH that the decision to pause the recoupments had been reversed and that GLH's entire MHAP payment due in December would be withheld. Without the December MHAP payment, GLH would be unable to make payroll past December 19, 2025, and forced to close.

In the present motion, GLH asks this Court to stay all recoupments pending this appeal and any administrative appeal conducted on remand.  GLH further requests such other equitable relief as the Court deems proper and necessary to provide relief from the irreparable harm caused by the Division's refusal to entertain its administrative appeal.

On December 18, 2025, this Court conducted a hearing, at which the Court heard arguments of counsel and received testimony from GLH.  GLH's witness, interim chief executive officer Gary Marchand, testified to GLH's financial condition, the impact of the MHAP recoupments on GLH, GLH's efforts to remain financially viable in the face of these recoupments, and options available to GLH, including leasing or selling the hospital, bankruptcy, and obtaining a bond.  Mr. Marchand explained why these options were either not available or would not alleviate GLH's financial crisis.

At the conclusion of the hearing, at the Court's request, the parties negotiated an Agreed Order Regarding Appellant's Motion to Stay Recoupments and Appellees' Motion to Dismiss, which was subsequently entered by this Court.  See Dkt. #13.

On March 4, 2026, counsel for GLH emailed the Court to announce that GLH had exhausted all reasonable efforts to obtain a bond or other security instrument to secure repayment of the unpaid balance of GLH's SFY 2024 MHAP overpayment, that, unfortunately, GLH was unable to obtain any such bond or other security instrument, and that good faith negotiations with the Division for an agreement on another option acceptable to the Division to secure GLH's debt had been unsuccessful.  GLH, therefore, asks the Court to grant its motion to stay the recoupments pending this appeal.

## CONCLUSIONS OF LAW

GLH is entitled to a stay of the recoupments as a matter of right pursuant to Miss. Code Ann. Section 43-13-121(1)(j) (emphasis added), which provides in relevant part:

> The division shall be authorized to collect any overpayments to providers sixty (60) days *after the conclusion of any administrative appeal unless the matter is appealed to a court of proper jurisdiction* and bond is posted.

Miss. Code Ann. Section 43-13-121(1)(j) (emphasis added).  As explained below, GLH requests this Court to set bond at a reasonable amount.  Subject to the Court's ruling on that issue, the Court finds that GLH is entitled to a stay of the recoupments pending this appeal pursuant to Section 43-13-121(l)(j).

In addition to this statutory right to a stay, GLH is entitled to a stay pursuant to MRAP 8(b)(1).  Trial courts sitting as appellate  tribunals follow the Mississippi Rules of Appellate Procedure to the extent applicable.  *Pilate v. Miss. Dept. of Employment*, 282 So.3d 566, 569 n. 4 (Miss. 2019) ("it seems every few years this Court rules in another case that the Rules of Appellate Procedure apply to the trial clerks and trial courts when a trial court is sitting as an appellate court"); see *Van Meter v. Alford*, 774 So.2d 430, 432 (Miss. 2000) (appeal from county court to circuit court governed by MRAP).  Relevant here, MRAP 9(b)(1) provides:

> Application for a stay of the judgment or the order of a trial court pending appeal or for approval or disapproval of a contested supersedeas bond or for an order suspending, modifying, restoring, or granting an injunction during the pendency if an appeal must ordinarily be made in the first instance to the trial court.  The court shall require the giving of security by the appellant in such form and in such sum as the court deems proper, and for good cause shown may set a supersedeas bond in an amount less than the 125 percent required in cases under Rule 9(a).

4

GLH has met the requirements of MRAP 8(b)(1).  *First*, GLH moved for a stay of the recoupments in the administrative proceedings below.  When the Division rejected GLH's appeal, it denied this motion as moot.  *See* Dkt. #3, at Ex. A.  Second, GLH has requested the Court to set bond at a reasonable amount that GLH can obtain without sacrificing its healthcare mission.  *Third*, and most important, GLH has shown that it will be forced to close if a stay is not granted.  Certainly, this constitutes good cause for relief under MRAP 9(b)(1).  For these reasons, GLH's motion to stay should be granted pursuant to MRAP 8(b)(1).

The Division argues GLH's motion as a motion for a preliminary injunction under Miss. R. Civ. P. 65.  Without deciding whether GLH is required to meet the elements of such a motion to receive the relief requested, the Court finds that GLH has met those elements in this instance.

1. **Substantial Likelihood of Success**

GLH has established the likelihood of success on the merits of this appeal by showing that the Division's own Administrative Code permitted GLH to appeal the Division's decision to deny GLH's request for a revised MHAP recoupment schedule.  Importantly, this is not an appeal of the June 23 Decision or the September 17 Decision.  Instead, this is an appeal of the October 29 Final Decision, in which the Division refused to grant GLH an appeal of the September 17 Decision.

According to Part 300, Rule 3.1(A)(2) of the Division's Administrative Code, "[t]he Mississippi Division of Medicaid conducts provider hearings for the following reasons:

...[t]he provider is dissatisfied with a Final Agency Action of the Division of Medicaid

**relating to ... withholding of funds resulting from overpayments."** See 23 Miss. Admin.

Code Pt. 300, R. 3.1(A)(2).  The October 29 Final Decision, denying GLH's right to appeal the

rejection of GLH's proposed alternative recoupment schedules, is plainly "relat[ed] to ...

withholding of funds resulting from overpayments," and, therefore, falls squarely within the

categories of appealable actions under Rule 3.1(A)(2).  See 23 Miss. Admin. Code Pt. 300,

R. 2.1(A)(2).

GLH timely requested an appeal of the Division's September 17 Decision.  See Dkt. 4-

1.  Rather than provide the hearing and due process rights required by its own

Administrative Code, the Division summarily denied GLH these rights.  Dkt. 4-3.  That

denial – and not the underlying repayment schedule – is the subject of this appeal.

Because the Division's own Administrative Code unambiguously grants GLH the right

to appeal decisions "relating to ... withholding of funds resulting from overpayments," and

because GLH's underlying request to appeal the September 17 Decision clearly fell within

that category, GLH has shown a substantial likelihood of success on its argument that the

Division's denial of GLH's appeal rights were arbitrary and capricious, exceeded the scope

of the Division's authority, and violated the GLH's appeal and due process rights.

*Mississippi Div. of Medicaid v. All. Health Ctr.*, 174 So.3d 254, 258 (Miss. 2015).  Thus, GLH

has established "a substantial likelihood of success on the merits" in the present appeal,

justifying a stay of the MHAP recoupments pending this appeal and any administrative

appeal conducted on remand.  *Mississippi State Bd. of Contractors v. Hobbs Constr., LLC,*

291 So.3d 762, 774 (Miss. 2020).  This factor weighs in favor of granting GLH's requested stay.

### 2. **Irreparable Harm.**

GLH has established irreparable harm – without a stay, GLH faces imminent closure. See Dkt. 4-1; *see also* Jackson Womens' Health Org. v. Currier, 940 F. Supp. 2d 416, 423-424 (S.D. Miss. 2013), *clarified sub nom. Jackson Women's Health Org. v. Mary Currier, MD., M.P.H.*, No. 3:12CV436-DPJ-FKB, 2013 WL 12122002 (S.D. Miss. Aug. 13, 2013), *aff'd as modified sub nom. Jackson Women's Health Org. v. Currier*, 760 F.3d 448 (5th Cir. 2014)  (the closure of a medical provider is irreparable harm).

Based on GLH's financial projections, DOM's recoupments will render GLH unable to fund its payroll without a stay.  GLH will be required to issue notices under the Worker Adjustment and Retraining (WARN) Act, 29 U.S.C. Section 2101, et seq., to its employees informing them that GLH will close and that all employees will be laid off. *Id*.  GLH has clearly shown irreparable harm in the absence of a stay.  This factor weighs in favor of granting GLH's requested stay.

### 3. **The Public Interest**

Instead of just "a loss of money" as argued by the Division, see Dkt. 7, at 9, GLH's closure will have immediate and long-lasting consequences not just for GLH, but for those GLH employees laid off, for those Medicaid beneficiaries in GLH's service area who will be deprived of accessible and necessary medical services, and for the Division itself, which will lose the source of funds from which the recoupment is collected (future payments to

GLH), none of which can be redressed by GLH reopening at some undefined point in the future. This factor weighs in favor of granting GLH's requested stay.

### 4. **Balancing the potential harm**

The potential harm to the Division and the public at large align with the harm to GLH. GLH, the Division, and the public will all be harmed by the commencement of the Division's accelerated recoupment schedule, as GLH's closure harms all three. *Hobbs Constr., LLC,* 291 So.3d at 774 (describing elements that "injury to the plaintiffs outweighs the harm an injunction might do the defendants" and that an injunction "is consistent with the public interest"). This factor weighs in favor of granting GLH's requested stay.

### 5. **Bond**

MRAP 8(b)(1) allows an appellate court to set bond "in such amount as the court deems proper, and for good cause shown may set supersedeas bond in an amount less than the 125 percent required in cases under Rule 8(a)." GLH has shown good cause to set the bond in an amount that GLH can feasibly obtain while continuing to meet its healthcare-related expenses. A bond for 125% of $3.5 million is likely impossible for GLH to obtain. Indeed, GLH has tried but been unable to obtain such a bond. Even if GLH could obtain such a bond, doing so would divert valuable resources that would be better allocated to ensuring GLH's continued ability to care for its patients. Rather than create a procedural hurdle that will be difficult for GLH to meet and which heightens the Division's risk of receiving a shortfall to a surety, this Court will set a nominal bond, which will allow this matter to proceed to the merits.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the 2024 MHAP recoupments are stayed pending this appeal and any administrative appeal that may occur if this Court grants relief to GLH, provided that GLH post a cash bond in the amount of $50,000 within thirty (30) days of the date of this Order.

**IT IS FURTHER ORDERED** that counsel for the parties shall confer in good faith to submit an Agreed Scheduling Order for the completion of this appeal.

**SO ORDERED**, this the _____ day of March, 2026.

_____
J. DEWAYNE THOMAS, CHANCELLOR

MEMORANDUM

**Mississippi Hospital Access Program & Greenwood Leflore Hospital**

MISSISSIPPI DIVISION OF
MEDICAID

### General Authority of DOM

The Division of Medicaid (Division or DOM) administers Medicaid and Children's Health Insurance Program (CHIP) benefits provided for in:

- Title 42, Chapter 7, Subchapters XIX and XXI of the United States Code
- Title 43, Chapter 13 of the Mississippi Code

Administration of those benefits involves reimbursing healthcare providers for medical services provided to the Division's beneficiaries, among other things.

### Direct Reimbursement for Services

Reimbursement is made through two models: (1) a fee-for-service ("FFS") model in which providers submit claims for reimbursement directly to the Division for payment, and (2) a managed care model in which the Division pays a private managed care organization ("MCO") a predetermined monthly fee for each of the Medicaid beneficiaries enrolled with that MCO and the MCO is then responsible to reimburse all healthcare providers for services rendered to those beneficiaries.[1]

Payments made under either model represent *direct reimbursement* for services rendered.  Providers, such as Greenwood Leflore Hospital (GLH), submit claims for reimbursement to the Division and the three MCOs when services are rendered to an enrolled beneficiary.  Claims are processed and paid on a weekly basis.

---

[1] For reference, Medicaid Managed Care is analogous to Medicare Advantage.  In both programs, the agency responsible for administering benefits pays what is essentially an insurance premium to a private sector health insurer.  That insurer is responsible to reimburse providers for all covered services and is at-risk of financial loss if the amount of provider reimbursement exceeds the amount of income received in "premiums."

1 of 17

# EXHIBIT "B"

**Mississippi Hospital Access Program (MHAP)**

The Division also administers the Mississippi Hospital Access Program (MHAP), which is a state directed payment program authorized by:

- Miss. Code Ann. § 43-13-117
- 42 C.F.R. § 438.6(c)

MHAP is designed to support access to inpatient and outpatient hospital services and to incentivize quality improvement efforts by the participating hospitals. Payments under the MHAP program are *supplemental* in nature and *do not represent* direct reimbursement for services rendered to Medicaid beneficiaries.

The Centers for Medicare & Medicaid Services (CMS)[2] must approve the MHAP program on an annual basis. CMS provides a template – called a "preprint" – for all states to use to submit their state directed payment programs for approval. The CMS-approved preprint is the governing document for each year's payment model and is published on the Division's website[3] and CMS' website.[4]

The Division has chosen to administer MHAP on the State Fiscal Year (SFY) – July 1 to June 30 – which is also referred to as the "rating period." There are issues related to the SFY 2024, SFY 2025, and SFY 2026 MHAP payments made to GLH which may be impacted by GLH's bankruptcy. To understand these issues, it is important to understand how the Division calculates MHAP payments for each hospital.

---

[2] CMS is a sub-agency of the United States Department of Health and Human Services and is the Division's federal funding partner.

[3] https://medicaid.ms.gov/value-based-incentives-archive/

[4] https://www.medicaid.gov/medicaid/managed-care/guidance/state-directed-payments/approved-state-directed-payment-preprints

### I.    MHAP Funding

In Mississippi, the federal government funds approximately 75% of all medical payments made under the Medicaid program.  MHAP is eligible for that same level of federal financial participation.  The available amount of federal funding for state directed payments, such as MHAP, is limited only by (1) designing a payment model that meets CMS' requirements for approval and (2) the state's ability to generate the state portion of those payments ("the state share").

The state share of MHAP payments is primarily funded through a hospital assessment authorized under Miss. Code Ann. § 43-13-145.[5] The basis of the assessment is defined in statute and does not directly correspond with a hospital's ability to receive MHAP payments. Mississippi is responsible for approximately 25% of MHAP payments and the revenue generated through the hospital assessment is used to meet that obligation.

### II.    MHAP Payment Calculations

The total dollar amount of MHAP is calculated using the state's payment model approved by CMS in the preprint.  The exact dollar amount changes annually.  Hospitals are eligible for a comparative amount of MHAP funds based on each hospital's utilization in the managed care program.

Each SFY, 100% of MHAP funds are distributed to participating hospitals as interim payments based on the utilization data from a prior year. (For SFY 2024 interim payment calculations, the Division used SFY 2022 actual utilization data.)  After the actual utilization data for the SFY is available, the Division is required by CMS to reconcile the interim

---

[5] Funds for the state share are also generated through specific legislative appropriations and intergovernmental transfers.  This explanation of the MHAP funding is informational only and not relevant to the issues which are impacted by the GLH bankruptcy.

payments.  Some hospitals will have been underpaid in initial payments if their utilization had increased, while others will have been overpaid if their utilization had decreased.  The Division must appropriately redistribute 100% of the MHAP funds.

The following example is overly simplified, but illustrative, of how the amount of MHAP funds each hospital is eligible to receive is determined.[6]  As a hypothetical example, if the state has $100,000,000 available in total MHAP funds and five participating hospitals, the MHAP funds available to each hospital may be calculated as follows:

|  | Total Managed Care Encounters | Percentage of Statewide Utilization | MHAP Funds Hospital is Eligible to Receive |
|---|---|---|---|
| Hospital A | 350 | 3.38 % | $3,381,642.51 |
| Hospital B | 5750 | 55.56 % | $55,555,555.56 |
| Hospital C | 1200 | 11.59 % | $11,594,202.90 |
| Hospital D | 300 | 2.90 % | $2,898,550.72 |
| Hospital E | 2750 | 26.57 % | $26,570,048.31 |
| *Statewide Total* | *10,350* | *100 %* | *$100,000,000.00* |

This distribution is complicated because federal regulation requires that MHAP payments be based on utilization for the "rating period" (or SFY) in which they are made. Hospitals have a "runout period" of 180 days after the date of service to file a claim with an MCO.  Thus, the Division does not have the full set of utilization data available until the 180-day runout period has passed. This is an example of that timeline for SFY 2024:

---

[6] For actual calculations, refer to the MHAP payment model.  For purposes of this memorandum, the simplified hypothetical explains what created GLH's debt to the Division. For the sake of full disclosure, MHAP distribution is calculated in three ways:

- Each hospital is paid a "uniform dollar" amount for each Medicaid Managed Care inpatient discharge (*i.e.*, every hospital is paid $X for each discharge, regardless of acuity or length of stay.)

- Each hospital is paid a "uniform percentage" increase for each Medicaid Managed Care encounter (*i.e.,* every hospital is paid X% on top of the direct reimbursement for each outpatient encounter.)

- QIPP funds are proportionally calculated using the amount of MHAP funds from the prior SFY. (See III. The Two Components of MHAP, below, for an explanation of QIPP.)



**\*\*\*\*\* January 2025 is the first time the Division has access to a full set of data from SFY 2024.**

As illustrated below, the 180-day claims runout period means that each SFY's runout period overlaps the next SFY.   In fact, the subsequent SFY is always more than halfway over before the Division has a full set of data (\*\*\*\*\*) to measure each hospital's managed care utilization in the preceding SFY. Once complete managed care utilization data is available, the Division reconciles the interim payments with each hospital's actual utilization during the rating period.   All hospitals are on notice of this reconciliation far in advance of ever receiving a single penny subject to that reconciliation.[7]

For example, the most recent full data set available to the Division at the beginning of SFY 2024 (*see* vertical black line in the image below) is the utilization data from SFY 2022 (blue \*\*\*\*\*).   Thus, the utilization data from SFY 2022 was used to calculate interim MHAP payments made to hospitals throughout SFY 2024.   When the full utilization data for SFY

---

[7] For example, SFY 2024 Notice of MHAP Parameters email sent to the Mississippi Hospital Association for distribution for all hospitals sent more than three months prior to distribution of first SFY 2024 MHAP funds.

2024 became available (orange *****) in early 2025, the Division reconciled those interim payments with the hospital's actual experience during SFY 2024.



The following calculations illustrate how such reconciliations would be calculated and the impact on the MHAP funds for each hospital:

### *Interim MHAP Payments (utilization data from SFY 2022)*

|  | Total Managed Care Encounters | Percentage of Statewide Utilization | MHAP Funds Available to the Hospital |
|---|---|---|---|
| Hospital A | 350 | 3.38 % | $3,381,642.51 |
| Hospital B | 5,750 | 55.56 % | $55,555,555.56 |
| Hospital C | 1,200 | 11.59 % | $11,594,202.90 |
| Hospital D | 300 | 2.90 % | $2,898,550.72 |
| Hospital E | 2,750 | 26.57 % | $26,570,048.31 |
| ***Statewide Total*** | ***10,350*** | ***100.00 %*** | ***$100,000,000.00*** |

### *Final MHAP Payments (utilization data from SFY 2024)*

|  | Total Managed Care Encounters | Percentage of Statewide Utilization | MHAP Funds Available to the Hospital |
|---|---|---|---|
| Hospital A | 435 | 4.43% | $4,434,250.76 |
| Hospital B | 5,900 | 60.14% | $60,142,711.52 |
| Hospital C | 350 | 3.57% | $3,567,787.97 |
| Hospital D | 375 | 3.82% | $3,822,629.97 |
| Hospital E | 2,750 | 28.03% | $28,032,619.78 |
| ***Statewide Total*** | ***9,810*** | ***100.00%*** | ***$100,000,000.00*** |

In this example, Hospital C's utilization declined significantly between SFY 2022 and SFY 2024 – going from 1200 total managed care encounters to 350.  Because each hospital's MHAP funds are calculated comparatively to all other hospitals based on their volume of managed care utilization, Hospital's C's significant utilization decline resulted in an increase in the MHAP funds available to the other four hospitals.  More funds are available even to Hospital E, whose actual utilization in SFY 2022 and SFY 2024 was unchanged.  The following chart illustrates how those funds would be redistributed:

|  | Total Interim Payments Received | Total Final Amount of MHAP Funds | Amount to be Redistributed |
|---|---|---|---|
| Hospital A | $3,381,642.51 | $4,434,250.76 | $1,052,608.25 |
| Hospital B | $55,555,555.56 | $60,142,711.52 | $4,587,155.96 |
| Hospital C | $11,594,202.90 | $3,567,787.97 | ($8,026,414.93) |
| Hospital D | $2,898,550.72 | $3,822,629.97 | $924,079.25 |
| Hospital E | $26,570,048.31 | $28,032,619.78 | $1,462,571.47 |
| *Statewide Total* | *$100,000,000.00* | *$100,000,000.00* | *$0.00* |

Once the reconciliation is completed, the Division will immediately pay Hospitals A, B, D, and E the amounts to be redistributed to them in a lump sum.  For Hospital C, the Division will offset current year MHAP payments with the amount of that overpayment.  As shown in the timelines illustrated above, the hospital would be receiving ongoing SFY 2025 interim MHAP payments at the time of the SFY 2024 reconciliation.  Those payments would be returned to the Division rather than remitted to the hospital until such time as the Division had been made whole for the full amount of Hospital C's SFY 2024 overpayment.

It is important to note that although MHAP is approximately 75% federally funded and the state share is derived from the hospital assessment rather than the State General Fund, the Division only has authority to use the exact amount of federal funds approved by CMS.  Therefore, when the underpaid hospitals are immediately paid the amounts they are

due in a lump sum but the amount to be returned by the overpaid hospitals has not been fully returned to the Division – it is State General Funds that are at risk in the event the Division is ultimately unable to fully recover.

### III.     The Two Components of MHAP

There are two components to MHAP payments: (1) the Fee Schedule Adjustment ("FSA"), and (2) the Quality Incentive Payment Program ("QIPP").  The FSA is intended to increase the amount paid for each inpatient discharge and outpatient encounter.  It is calculated based on the hospital's' actual utilization.  Hospitals receive FSA payments as long as (1) CMS approves the Division's preprint and (2) the hospital has managed care utilization during the rating period.

QIPP payments promote quality care in hospitals throughout the state.  QIPP has programs designed to reduce preventable hospital readmissions, reduce preventable health complications, and expand data sharing for care coordination across Mississippi's healthcare community.  Unlike FSA, utilization alone does not entitle the hospital to a QIPP payment. There are specific actions, certifications, and quality metrics the hospital must meet for the various programs under QIPP, and failure to do any of those things results in portions of the QIPP payment being unearned.

### IV.     Enhanced MHAP Beginning in SFY 2024

Starting in SFY 2024, an enhanced MHAP rate was paid to qualifying hospitals following efforts by Governor Reeves' administration to provide more financial support to Mississippi hospitals.[8]  The total MHAP pool jumped from $601,153,602 to $1,522,313,885 – an increase of more than 250% in MHAP funds paid to hospitals.

---

[8] https://us11.campaign-archive.com/?e=1c51692119&u=08cb3e52aa1308600f84d49ea&id=03358e364d



### Greenwood Leflore Hospital

Between SFY 2022 and SFY 2024, GLH voluntarily reduced the services offered by the hospital, including completely shuttering obstetrics and pediatrics – two service lines utilized extensively by Medicaid beneficiaries. Medicaid is the payer for approximately 60% of newborn deliveries in Mississippi[9] and covers approximately half of the state's children.[10]

In SFY 2024, GLH knew it had voluntarily discontinued highly utilized Medicaid services but continued to spend interim MHAP payments which were based on utilization data prior to the closure of those service lines.  GLH knew or should have known these payments would ultimately be reconciled with their actual, much lower, utilization and should have put some of those interim funds in reserve.

Further, the interim MHAP payments received by GLH in SFY 2026 were approximately 250% higher than the MHAP payments paid to GLH in prior SFYs. The

---

https://mailchi.mp/d3b69877f6d7/governor-tate-reeves-medicaid-reimbursement?e=1c51692119
https://governorreeves.ms.gov/cms-approves-second-component-of-governor-reeves-medicaid-reimbursement-reforms/

[9] https://www.kff.org/state-health-policy-data/state-indicator/births-by-source-of-payment-for-delivery/?currentTimeframe=0&sortModel=%7B%22colId%22:%22Location%22,%22sort%22:%22asc%22%7D

[10] https://www.kff.org/state-health-policy-data/state-indicator/children-0-18/?currentTimeframe=0&sortModel=%7B%22colId%22:%22Location%22,%22sort%22:%22asc%22%7D

enhanced MHAP funding coupled with decreased operational costs due to closing some of its service lines should have put GLH in a position to easily maintain an appropriate reserve to address any MHAP overpayment at the time of reconciliation.  However, GLH chose not to put any MHAP funds aside – resulting in putting the taxpayers at risk of GLH's failure to repay the overpaid MHAP funds.

The following charts illustrate the scale of GLH's voluntary reduction in services and its impact on Medicaid managed care utilization.





Despite the scale of GLH's intentional reduction of services between SFY 2022 and SFY 2024, GLH's MHAP payments exponentially increased due to the enhanced MHAP plan:

|  | Interim MHAP Payments | Final MHAP Payments |
|---|---|---|
| SFY 2022 |  | $7,990,637 |
| SFY 2023 |  | $8,089,950 |
| SFY 2024 | $20,818,834 | $15,319,905 |
| SFY 2025 | $16,664,334 | $11,789,004 |
| SFY 2026 | $9,071,402* |  |

*Anticipated total interim payments through the end of SFY 2026.
SFY 2024 was the first year enhanced MHAP funds were paid to the hospitals.

Even post-reconciliation, GLH was paid 191% *more* in MHAP funds in SFY 2024 than it was paid in SFY 2022 while providing Medicaid Managed Care beneficiaries 42% *less* in outpatient services and 94% *less* in inpatient services.  Moreover, MHAP payments are *in addition to* the direct reimbursement GLH was paid for those services.

GLH has participated in the MHAP program since its inception in December 2015 and was on clear notice of how the MHAP reconciliation works.  GLH should have been well-aware that its decision to reduce the primary service lines used by Medicaid Managed Care beneficiaries would have a dramatic impact on its MHAP payments – especially since the primary purpose of MHAP is to increases access to medical services for Medicaid Managed Care beneficiaries.[11]

Yet, GLH received almost double the amount of MHAP funding in SFY 2024 than it did in the previous SFYs, net of the reconciliation.  This begs the question, ***how did GLH spend the more than $20,000,000 it received in initial SFY 2024 MHAP payments?***  It can be

---

[11] GLH was not the only hospital whose initial SFY 2024 MHAP payments exceeded the amount the hospital was eligible to receive in SFY 2024 once the final reconciliation was completed.  Forty-four hospitals had overpayments which had to be recouped by the Division and redistributed to other hospitals, including four hospitals which had to return more than $5,000,000 and 17 hospitals which had to return more than $1,000,000.

safely assumed from GLH's utilization numbers, that money was not spent providing services to Medicaid Managed Care beneficiaries.

In addition to MHAP payments, GLH receives ongoing claims payments for services rendered and supplemental payments from the fee-for-service program.  For context, the following charts represent the most current information the Division has regarding payments made to GLH during SFYs 2024, 2025, and 2026.

### *State Fiscal Year 2024*

| Source of Payment | Amount |
|---|---|
| Fee for Service Claims | $2,594,088 |
| Magnolia Health Plan Claims | $1,758,822 |
| Molina Healthcare of Mississippi Claims | $579,703 |
| UnitedHealthcare Community Plan of Mississippi Claims | $1,402,482 |
| TrueCare Claims | - |
| MHAP Payments | $20,818,834 |
| Fee for Service Supplemental Payments | $1,142,558 |
| **Total Payments from the Medicaid Program to GLH** | **$28,296,487** |
| **MHAP Overpayment** | **$5,518,929*** |

*\*$3,077,256.02 of this overpayment remains outstanding.*

### *State Fiscal Year 2025*

| Source of Payment | Amount |
|---|---|
| Fee for Service Claims | $2,136,368 |
| Magnolia Health Plan Claims | $2,070,107 |
| Molina Healthcare of Mississippi Claims | $781,931 |
| UnitedHealthcare Community Plan of Mississippi Claims | $1,400,689 |
| TrueCare Claims | - |
| MHAP Payments | $16,664,334 |
| Fee for Service Supplemental Payments | $582,685 |
| **Total Payments from the Medicaid program to GLH** | **$23,636,114** |
| **MHAP Overpayment** | **$4,875,330*** |

*\* Not final. None collected.*

*State Fiscal Year 2026 (to date)*

| Source of Payment | Amount |
|---|---|
| Fee for Service Claims | $1,244,510 |
| Magnolia Health Plan Claims | $1,759,169 |
| Molina Healthcare of Mississippi Claims | $738,405 |
| UnitedHealthcare Community Plan of Mississippi Claims | $65,213 |
| TrueCare Claims | $487,482 |
| MHAP Payments | $6,335,982* |
| Fee for Service Supplemental Payments | $371,914** |
| **Total Payments from the Medicaid program to GLH** | **$11,002,675** |

*\*The MHAP Payments number represents payments made to date. $2,735,420 is scheduled to be paid in May and June.  That amount is not included here.*

*\*\*The FFS Supplemental Payment number includes all payments to be made for the entirety of SFY26.*

## I.        SFY 2024 MHAP Reconciliation

It is undisputed that, upon final reconciliation of SFY 2024 MHAP payments, GLH was eligible to receive $5,518,929 *less* than it received in initial payments. Although the parties do not dispute that GLH received these excess funds, GLH did challenge the Division's intended timeline for such collection.

GLH filed an administrative appeal regarding the recoupment schedule with the Division's Office of Appeals, which was denied on October 29, 2025.  The appeal did not raise an issue that is appealable under Title 23, Part 300 of the *Mississippi Administrative Code* and GLH is contractually obligated to repay overpayments "within 30 days … or on other terms approved by the Division of Medicaid."[12] GLH appealed the Division's denial of its administrative appeal to the Chancery Court of Hinds County, Mississippi.

The original balance to be recouped following the final reconciliation of SFY 2024 MHAP payments was $5,518,929.  Following partial recoupments in June, September, and

---

[12] GLH Provider Agreement.

December 2025, the current balance owed to the Division for the SFY 2024 MHAP overpayment is now $3,077,256.02. This $3,077,256.02 debt is **undisputed**. However, the Chancery Court has entered an order preventing the Division from any further recoupment until the appeal is resolved.[13]

## II. SFY 2025 Reconciliation and Preprint Parameters

On November 14, 2025, the Division notified all hospitals of a preliminary reconciliation using managed care encounters incurred in SFY 2025 which were available to the Division through September 30, 2025.[14] At that time, GLH had an estimated overpayment in SFY 2025 MHAP funds of $1,779,269. GLH included this amount on their schedule of creditors.

The Division attempted to begin immediate reduction of ongoing SFY 2026 MHAP payments to reduce the impact of a large recoupment at the time of final reconciliation. However, GLH filed an administrative appeal with the Division regarding this reduction. Because the SFY 2025 preprint stated that recoupments due to reconciliation would begin in May 2026, the Division ceased any efforts to recoup or offset the SFY 2025 MHAP overpayment prior to May 2026 and dismissed the appeal as moot.

Since the run-out period has ended, the Division has been preparing the final SFY 2025 reconciliation, which shows the SFY 2025 MHAP overpayment to GLH as being $4,875,330. This overpayment – as with the SFY 2024 MHAP overpayment – was caused by

---

[13] *Greenwood Leflore Hospital v. Mississippi Division of Medicaid and Cindy Bradshaw, in her official capacity as Executive Director of the Mississippi Division of Medicaid,* Civil Action No. 25CH1:25-CV-01314T/1, In the Chancery Court of the First Judicial District of Hinds County, Mississippi.

[14] This reconciliation was preliminary because the full claims runout period would not close until after December 27, 2025 (180 days after the close of SFY 2025).

GLH's voluntary reduction in services which GLH knew or should have known would result in reducing the amount of MHAP funds available.

The reason for this significant increase from the interim reconciliation was the reallocation of the QIPP pool, resulting in a $2,980,892 overpayment to GLH in QIPP alone.[15] The preliminary reconciliation only involved the FSA portion of MHAP.  The final reconciliation of the FSA portion of MHAP funds was more closely aligned with the interim reconciliation at $1,894,438.

The SFY 2025 preprint has this language regarding reconciliation of the FSA portion of MHAP:

> Interim FSA payments for the single class of network providers will be calculated using managed care inpatient discharges and outpatient payments from the state fiscal year July 1, 2022, through June 30, 2023 (based on paid date). This data represents the best information on utilization that is available to use at the time the payment calculations need to be performed. *These interim FSA payments will be adjusted using actual fiscal year utilization data in April 2026 when a reconciliation will be completed.* The actual utilization will be reconciled based on encounters for the rating period, July 1, 2024 - June 30, 2025 (based on service date). In May 2026, any underpayments will be paid via a lump-sum payment and any overpayment will be recouped in the May 2026 MHAP payment. If necessary, any recoupments from hospitals may extend beyond the May 2026 MHAP payment. *For hospitals who have closed or filed bankruptcy, they will not be considered in the reconciliation, and the amounts paid under the interim arrangement will be considered final.*

Of note, GLH would still have appeal rights as to the identification and calculation of the SFY 2025 MHAP overpayment and therefore this debt is not undisputed.

---

[15] QIPP payments are based on prior year MHAP fund amounts.  *See* FN6, above.  When the SFY 2025 interim payments were calculated, the SFY 2024 MHAP payments had not yet been fully reconciled.  Therefore, the reduction in GLH's SFY 2024 overall MHAP payments reduced its SFY 2025 QIPP payment.

### III.   SFY 2026 Ongoing MHAP Payments and Preprint Parameters

GLH is currently receiving ongoing MHAP payments in SFY 2026.  Those payments are scheduled as follows:

| | | |
|---|---|---|
| July 2025 | $288,380.93 | PAID |
| August 2025 | $288,380.93 | PAID |
| September 2025 | $2,447,038.75* | PAID |
| October 2025 | $288,380.93 | PAID |
| November 2025 | $288,380.93 | PAID |
| December 2025 | $2,447,038.75** | PAID |
| January 2026 | $288,380.93 | PAID |
| February 2026 | $288,380.93 | PAID |
| March 2026 | $2,447,038.75 | PAID |
| April 2026 | $288,380.93 | PAID |
| May 2026 | $288,380.93 | NOT PAID AS OF DATE OF MEMO |
| June 2026 | $2,447,038.75*** | NOT PAID AS OF DATE OF MEMO |

*$900,000 was recouped from the September 2025 MHAP payment and applied to the outstanding balance of the SFY 2024 MHAP overpayment.*

*\*\*447,038.75 was recouped from the December 2025 MHAP payment and applied to the outstanding balance of the SFY 2024 MHAP overpayment.*

*\*\*\*Estimated amount, which may be adjusted to include funds reallocated from other hospitals.*

The FSA payment is made monthly.  The QIPP payment is made quarterly.  The dollar amounts paid in September, December, March, and April represent the quarterly QIPP payment in addition to the monthly FSA payment.

The Division believes GLH's utilization has stabilized somewhat and anticipates an FSA overpayment between $300,000 and $400,000.  However, this estimate does not take into account the recent announcements by GLH regarding service line closures which immediately preceded the bankruptcy filing.  The Division anticipates the QIPP reconciliation and overpayment will be higher than the FSA overpayment because it will reflect the reduction in MHAP funds to GLH in SFY 2025.

The SFY 2026 preprint contains this language regarding the Fee Schedule Adjustment

portion of MHAP:

Interim FSA payments for the classes of network providers will be calculated using managed care inpatient discharges and outpatient payments from the state fiscal year July 1, 2023, through June 30, 2024 (based on paid date). This data represents the best information on utilization that is available to use at the time the payment calculations need to be performed. These interim FSA payments will be adjusted using actual fiscal year utilization data in the second quarter of calendar year 2027 (expected to occur in April 2027) when a reconciliation will be completed. The actual utilization will be reconciled based on encounters for the rating period, July 1, 2025 - June 30, 2026 (based on service date). DOM plans to begin in May 2027 making any underpayments via a lump-sum payment, and any overpayments via recoupments from monthly MHAP payments. *The Division may run "initial" encounter reconciliation reports prior to the final reconciliation to determine if significant variation in the managed care encounters have occurred for any providers comparing the SFY 2026 rating period to the base period of SFY 2024. If the Division determines that significant variation has occurred for any provider, the Division may require payment from or make payments to the providers based on the interim reconciliation amount prior to the end of the SFY 2026 rating period.*

DOM will evaluate the reconciliation of encounters in the reconciliation process to determine that sufficient time has been allowed for a complete reconciliation. If necessary, any recoupments from providers may extend beyond the May 2027 MHAP payment. *For providers who have closed or filed bankruptcy, they will not be considered in the reconciliation, and the amounts paid under the interim arrangement will be considered final.*

Of note, GLH would still have appeal rights as to the identification and calculation of any SFY

2026 MHAP overpayment and therefore any debt related to the SFY 2026 MHAP payments

is not undisputed.

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

**GREENWOOD LEFLORE HOSPITAL**                                         **APPELLANT**

**v.**                                                    **CIVIL ACTION NO.** 3:26-cv-336-KHJ-MTP

**STATE OF MISSISSIPPI/DIVISION OF MEDICAID
AND CINDY H. BRADSHAW, IN HER OFFICIAL
CAPACITY AS THE EXECUTIVE DIRECTOR OF
THE MISSISSIPPI DIVISION OF MEDICAID**                              **APPELLEES**

### NOTICE OF REMOVAL

COME NOW State of Mississippi/Division of Medicaid (hereinafter "Medicaid") and

Cindy H. Bradshaw, in her official capacity as the Executive Director of the Mississippi Division

of Medicaid (hereinafter "Ms. Bradshaw), in the above styled and numbered civil action, and

files this their Notice of Removal and in support thereof would respectfully show as follows, to-

wit:

1.      An appeal of an administrative decision of the Division of Medicaid was

commenced by the filing of a *Notice of Appeal* on November 10, 2025, in the Chancery Court of

the First Judicial District of Hinds County, Mississippi, Civil Action Number 25-cv-01314 (the

"Chancery Case") by Greenwood Leflore Hospital (the "Appellant") as Appellant, against the

State of Mississippi/Division of Medicaid and Cindy Bradshaw as Appellees.  On the same date,

the Appellant filed a *Motion to Stay Recoupment* seeking injunctive relief to prohibit Medicaid

from recouping funds it owes the Appellant, "against" funds that the Appellant owes Medicaid.

2.      The Chancery Court entered its Memorandum and Order on the March 11, 2026,

which purported to enjoin Medicaid from recouping funds it owes to the Appellant "against"

funds owed by the Appellant to Medicaid, after certain administrative action had been taken.

The funds Medicaid sought to recoup are not routine ordinary claims payments for treatment of

# EXHIBIT "C"

patients.  Medicaid continues to pay claims for medical services for patients who are Medcaid

beneficiaries.  Rather, the funds Medicaid sought to recoup are funds that are part of a federally

funded program Mississippi Hospital Access Program known as MHAP.

3.       The Appellant's Chancery Case claims against Medicaid allegedly arise out of an

administrative appeal by the Appellant, seeking injunctive relief to avoid the recoupment of

funds that Medicaid had begun.  Generally, orders and judgments entered in pending state court

actions, prior to the filing of a voluntary petition in bankruptcy, remain binding absent further

action being taken in the bankruptcy court.  The Chancery Case litigation now involves

fundamental bankruptcy issues and questions, which include, but are not limited to: whether

Medicaid may continue to recoup (which is not barred by the automatic stay) claims that are

owed to it by the Appellant "against" claims and obligations it owes the Appellant; the automatic

stay of 11 U.S.C. § 362; use of property of the bankruptcy estate; the continuation of injunctive

relief despite an insufficient bond; claims by Medicaid against the Appellant/bankruptcy estate;

adjustment of the debtor/creditor relationship between Appellant and Medicaid; released issues

which may or may not entitle Appellant to any of the funds Medicaid seeks to recoup; federal

questions regarding a federal program (MHAP); regulations regarding the functioning and

funding of the MHAP; and numerous related issues.  It is noted that Medicaid continues to

process, and pay, claims for patient treatment rendered by the Appellant.

4.       Accordingly, these matters described hereinabove are core proceedings pursuant

to 28 U.S.C. §§ 157(b)(2)(A), (B), (F), (K), (M), (N) and (O), related statutes, related rules and

various orders of reference.

5.       Alternatively, this action is a claim or cause of action arising in or related to a

case under Title 11 of the United States Code over which the United States District

Court/Bankruptcy Court hold original, but not exclusive, jurisdiction pursuant 28 U.S.C. § 1334(b).

6.    On April 15, 2026 (the "Petition Date"), the Appellant/Debtor filed its voluntary petition for relief under Chapter 9 of Title 11 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Mississippi (the "Bankruptcy Court"), which case was assigned Bankruptcy Case No. 26-11337. A copy of the Notice of Bankruptcy Filing is attached hereto as **Exhibit "A"**.

7.    Pursuant to applicable provisions of Chapter 9 of the Bankruptcy Code, the Appellant/Debtor is operating its business and managing its affairs in its Chapter 9 case.

8.    Pursuant to Section 1107 of the Bankruptcy Code, the Debtor generally has all of the rights and powers of a Chapter 11 trustee, as more particularly specified in Section 1106 of the Bankruptcy Code.

9.    The United States District Court/Bankruptcy Court have original jurisdiction over this action pursuant to 28 U.S.C. § 1452(a) (Removal of Claims Related to Bankruptcy Cases).

10.    Thus, the underlying action may be removed to this Court by Medicaid and Ms. Bradshaw pursuant to the provisions of 28 U.S.C. § 1452(a). This Notice of Removal was properly and timely filed. Medicaid and Ms. Bradshaw will seek to transfer this case to the United States Bankruptcy Court for the Southern District of Mississippi pursuant to applicable law and this Court's standing order regarding bankruptcy matters.

11.    Medicaid and Ms. Bradshaw consent to entry of a final order or judgment by the United States Bankruptcy Court.

12.    Notice of the filing of this Notice of Removal has been given to all parties to the removed action as required by Fed. R. Bankr. P. 9027(b).

-3-

13.    A copy of this Notice of Removal is being filed with the Clerk of the Chancery Court of First Judicial District of Hinds County, Mississippi contemporaneously herewith in accordance with Fed. R. Bankr. P. 9027(c).

WHEREFORE, PREMISES CONSIDERED, the State of Mississippi/Division of Medicaid and Ms. Bradshaw hereby remove this case from the Chancery Court of First Judicial District of Hinds County, Mississippi, to the United States District Court for the Southern District of Mississippi.

SO NOTICED, this the ___11th___ day of May, 2026.

Respectfully submitted,

STATE OF MISSISSIPPI/DIVISION OF MEDICAID AND CINDY H. BRADSHAW, IN HER OFFICIAL CAPACITY AS THE EXECUTIVE DIRECTOR OF THE MISSISSIPPI DIVISION OF MEDICAID

By Their Attorneys,

LAW OFFICES OF GENO AND STEISKAL, PLLC

By: _____
    Craig M. Geno

OF COUNSEL:

Craig M. Geno; MSB No. 4793
Christopher J. Steiskal, Sr.; MSB No. 101654
LAW OFFICES OF GENO AND STEISKAL, PLLC
601 Renaissance Way, Suite A
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
csteiskal@cmgenolaw.com

-and-

Suzanne C. Hudson, Esq., MSB No. 103079
Laura M. Glaze, Esq., MSB No. 100625
Mississippi Division of Medicaid
550 High Street, Ste 1000
Jackson, MS 39201
T: 601-359-6462
Suzanne.Hudson@medicaid.ms.gov
Laura.Glaze@mediciad.ms.gov
N:\Firm Data\Users\Bankrupt\MS Division of Medicaid (Greenwood Leflore Bkcy)\Adv. Proc\USDC Removal\Pleadings\Revised Notice of Removal 5-7-26.wpd

## CERTIFICATE OF SERVICE

I, Craig M. Geno, do hereby certify that I have caused to be served this date, via electronic transmission, a true and correct copy of the above and foregoing to the following:

George Howard Ritter, Esq.            Douglas C. Noble, Esq.
Ghr@wisecarter.com                   Dnoble@mmqnlaw.com

THIS, the ___11th___ day of May, 2026.

_____
Craig M. Geno

-5-

United States Bankruptcy Court
Northern District of Mississippi

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was filed under Chapter 9 of the United States Bankruptcy Code, entered on 04/15/2026 at 3:35 PM and filed on 04/15/2026.

**Greenwood Leflore Hospital**
1401 River Road
Greenwood, MS 38930
Tax ID / EIN: 64-6000400



The case was filed by the debtor's attorney:

**Douglas C. Noble**
McCraney Montagnet,Quin & Noble, PLLC
602 Steed Road, Suite 200
Ridgeland, MS 39157
601-707-5725

The case was assigned case number 26-11337-SDM to Judge Selene D. Maddox.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our *Internet* home page http://www.msnb.uscourts.gov or at the Clerk's Office, Cochran U.S. Bankruptcy Courthouse, 703 Highway 145 North, Aberdeen, MS 39730.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth important deadlines.

**Shallanda J. Clay**
**Clerk, U.S. Bankruptcy Court**

## EXHIBIT "A"

# Mississippi Electronic Courts
## Fifth Chancery Court District (Hinds Chancery Court - Jackson)
### CIVIL DOCKET FOR CASE #: 25CH1:25-cv-01314

| | |
|---|---|
| Greenwood Leflore Hospital v. Cindy H. Bradshaw, In Her Official Capacity As The Executive Director Of The Mississippi Division Of Medicaid, Assigned to: J. Dewayne Thomas | Date Filed: 11/10/2025 Current Days Pending: 183 Total Case Age: 183 Jury Demand: None Nature of Suit: Appeal - from Administrative Agency (115) |

**Upcoming Settings:**

None Found

---

**Appellant**

| | | |
|---|---|---|
| **Greenwood Leflore Hospital** | represented by | **George Howard Ritter** Post Office Box 651 JACKSON, MS 39205 601-968-5526 Fax: 601-944-7738 Email: ghr@wisecarter.com *ATTORNEY TO BE NOTICED* |

V.

**Appellee**

| | | |
|---|---|---|
| **Cindy H. Bradshaw, In Her Official Capacity As The Executive Director Of The Mississippi Division Of Medicaid,** | represented by | **Janet Mcmurtray** J McMurtray Law 800 Woodlands Parkway, suite 209 RIDGELAND, MS 39157 601-499-5168 Email: janet@jmcmurtraylaw.com *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |
| | | **Maureen Burke Speyerer** J McMurtray Law, PLLC 800 Woodlands Parkway Suite 209 RIDGELAND, MS 39157 601-499-5168 Email: Mimi.speyerer@yahoo.com *ATTORNEY TO BE NOTICED* |
| | | **Craig M Geno** Law Offices of Craig M. Geno, PLLC 601 Renaissance Way Suite A RIDGELAND, MS 39157 601-427-0048 |

Fax: 601-427-0050
Email: cmgeno@cmgenolaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/10/2025 | 3 | NOTICE of Appeal by Greenwood Leflore Hospital (Attachments: # 1 Civil Cover Sheet,) (KH) (Entered: 11/10/2025) |
| 11/10/2025 | 4 | MOTION to Stay *Recoupment Pending the Present Appeal* by Appellant Greenwood Leflore Hospital (Attachments: # 1 Exhibit A - GLH DOM Appeal Letter, # 2 Exhibit B - DOM Appeal Motion to Stay Recoupment, # 3 Exhibit C - Provider Denial Letter - GLH,) (Ritter, George) (Entered: 11/10/2025) |
| 12/05/2025 | 5 | NOTICE of Appearance *on behalf of the Mississippi Division of Medicaid* by Maureen Burke Speyerer on behalf of Cindy H. Bradshaw, In Her Official Capacity As The Executive Director Of The Mississippi Division Of Medicaid, (Speyerer, Maureen) (Entered: 12/05/2025) |
| 12/05/2025 | 6 | NOTICE of Appearance *on behalf of the Mississippi Division of Medicaid* by Janet Mcmurtray on behalf of Cindy H. Bradshaw, In Her Official Capacity As The Executive Director Of The Mississippi Division Of Medicaid, (Mcmurtray, Janet) (Entered: 12/05/2025) |
| 12/09/2025 | 7 | RESPONSE in Opposition re 4 MOTION to Stay *Recoupment Pending the Present Appeal filed by the Mississippi Division of Medicaid* by Cindy H. Bradshaw, In Her Official Capacity As The Executive Director Of The Mississippi Division Of Medicaid,. (Attachments: # 1 Exhibit, # 2 Exhibit,) (Speyerer, Maureen) (Entered: 12/09/2025) |
| 12/09/2025 | 8 | MOTION to Dismiss for Lack of Jurisdiction *filed by the Mississippi Division of Medicaid* by Appellee Cindy H. Bradshaw, In Her Official Capacity As The Executive Director Of The Mississippi Division Of Medicaid, (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit,) (Mcmurtray, Janet) (Entered: 12/09/2025) |
| 12/15/2025 | 9 | NOTICE of Hearing re 4 MOTION to Stay *Recoupment Pending the Present Appeal* by Greenwood Leflore Hospital (Ritter, George) (Entered: 12/15/2025) |
| 12/16/2025 | 10 | NOTICE of Hearing re 8 MOTION to Dismiss for Lack of Jurisdiction *filed by the Mississippi Division of Medicaid* by Cindy H. Bradshaw, In Her Official Capacity As The Executive Director Of The Mississippi Division Of Medicaid, (Mcmurtray, Janet) (Entered: 12/16/2025) |
| 12/16/2025 | 11 | RESPONSE to Motion re 8 MOTION to Dismiss for Lack of Jurisdiction *filed by the Mississippi Division of Medicaid* by Greenwood Leflore Hospital. (Ritter, George) (Entered: 12/16/2025) |
| 12/16/2025 | 12 | REPLY to Response to Motion re 7 Response in Opposition to Motion, by Greenwood Leflore Hospital. (Attachments: # 1 Exhibit D - Affidavit of Charlie Ross, # 2 Exhibit E - Affidavit of Gary Marchand,) (Ritter, George) (Entered: 12/16/2025) |
| 12/29/2025 | 13 | AGREED ORDER Regarding Appellant's Motion To Stay Recoupments And Appellees' Motion To Dismiss. Signed by Judge J. Dewayne Thomas on 12/29/2025. (BR) (Entered: 12/29/2025) |
| 03/06/2026 | 14 | MISCELLANEOUS DOCUMENT: Supplement re 4 MOTION to Stay *Recoupment Pending the Present Appeal* by Greenwood Leflore Hospital. (Attachments: # 1 Exhibit A - Supplemental Affidavit of Gary Marchand,) (Ritter, George) (Entered: 03/06/2026) |

| 03/11/2026 | 15 | MEMORANDUM AND OPINION of the Court and the Court's Finding of Fact and Conclusions. Signed by Judge J. Dewayne Thomas on 3/11/2026. (NF) (Entered: 03/11/2026) |
| 03/11/2026 | 16 | Emergency ORDER Staying Recoupment. Signed by Judge J. Dewayne Thomas on 3/11/2026. (NF) (Entered: 03/11/2026) |
| 03/26/2026 | 17 | NOTICE of of Filing of Bond by Greenwood Leflore Hospital (Attachments: # 1 Exhibit A - Issued Bond,) (Ritter, George) (Entered: 03/26/2026) |
| 05/11/2026 | 18 | NOTICE of Notice of Removal by Cindy H. Bradshaw, In Her Official Capacity As The Executive Director Of The Mississippi Division Of Medicaid, (Geno, Craig) (Entered: 05/11/2026) |



FILED

NOV 10 2025

EDDIE JEAN CARR, CHANCERY CLERK

BY _____ K. Howard _____ D.C.

**IN THE CHANCERY COURT OF THE FIRST JUDICIAL DISTRICT OF**
**HINDS COUNTY, MISSISSIPPI**

**GREENWOOD LEFLORE HOSPITAL**                                    **APPELLANT**

**VS.**                                              **CAUSE NO.:** G2025-1314 T/1

**MISSISSIPPI DIVISION OF MEDICAID and**
**CINDY BRADSHAW, in her official capacity as**
**Executive Director of the Mississippi Division of Medicaid**          **APPELLEES**

---

### NOTICE OF APPEAL

---

COMES NOW Appellant Greenwood Leflore Hospital ("GLH"), by and through counsel,

pursuant to Miss. Code Ann. § 43-13-121(1)(j) and the equitable right of appeal pursuant to

*Charter Medical Corp. v. Miss. Health Planning and Dev. Agency*, 362 So. 2d 180 (Miss. 1978),

and gives notice that it hereby appeals the final decision of the Appellees Mississippi Division of

Medicaid and Cindy Bradshaw, in her official capacity as Executive Director of the Mississippi

Division of Medicaid, dated October 29, 2025 ("the October 29 Final Decision"), denying GLH

the right to appeal Appellees' final decision dated September 17, 2025 ("the September 17 Final

Decision"), which denied GLH's request for an extended schedule for recoupment of payments

made to GLH during State Fiscal Year 2024 under the Mississippi Hospital Access Program

(MHAP) needed to allow GLH to remain open and to continue serving Medicaid and other patients.

The October 29 Final Decision also denied GLH's Motion to Stay Recoupment as being moot.

Copies of the October 29 Final Decision, the September Final 17 Decision, and GLH's Motion to

Stay Recoupment are attached to this Notice as Exhibits A, B, and C respectively.

GLH requests that this Court reverse the October 29 Final Decision, thus affording GLH

the right to administratively appeal the denial of the September 17 Final Decision. As required

under Miss. Code Ann. § 43-13-121(1)(j), and to avoid irreparable harm to GLH and the

communities and patients that it serves, GLH requests the Court to stay the MHAP recoupments

from GLH pending completion of this appeal and the appeal of the September 17 Final Decision.

GLH further requests that the Court waive the requirement of bond for this appeal and grant such

other relief as the Court deems just and appropriate.

**RESPECTFULLY SUBMITTED**, this the **10th** day of **November 2025**.

GREENWOOD LEFLORE HOSPITAL
APPELLANT

BY: _____
GEORGE H. RITTER (MSB #5372)

OF COUNSEL:

George H. Ritter (MSB #5372)
Beau M. Bettiga (MSB #105905)
**WISE, CARTER, CHILD & CARAWAY, P.A.**
Post Office Box 651 (39205)
401 East Capitol Street, Suite 600
Jackson, Mississippi 39201
Telephone: (601) 968-5500
Facsimile: (601) 944-7738
ghr@wisecarter.com
bmb@wisecarter.com
*Attorneys for Appellant Greenwood Leflore Hospital*

2

## CERTIFICATE OF SERVICE

I hereby certify that on this day I served by hand-delivery a copy of this Notice of Appeal to the following:

Terri Adams, J.D.
Director, Office of Appeals
Division of Medicaid
550 High Street, Suite 1000
Jackson, MS 39201

Cindy Bradshaw
Executive Director
Division of Medicaid
550 High Street, Suite 1000
Jackson, MS 39201

**THIS** the **10th** day of **November 2025**.

**GEORGE H. RITTER**

3

OFFICE OF THE GOVERNOR

Walter Sillers Building | 550 High Street, Suite 1000 | Jackson, Mississippi 39201



**MISSISSIPPI DIVISION OF**
**MEDICAID**

October 29, 2025

**SENT VIA CERTIFIED MAIL AND EMAIL**
Greenwood Leflore Hospital
**ATTN**: George H. Ritter
P.O. Box 651
Jackson, MS 39205-0651
ghr@wisecarter.com

Dear Mr. Ritter:

The Division of Medicaid (DOM) received your letter dated October 2, 2025, requesting an administrative appeal of the decision "denying [Greenwood Leflore Hospital's (GLH)] request for an extended schedule for recoupment of payments made to GLH during [State Fiscal Year (SFY)] 2024 under the Mississippi Hospital Access Program (MHAP)."

The appeal request is specific to the *repayment schedule* approved by DOM and is not an appeal related to the determination that funds were overpaid to GLH. As such, the request does not raise an issue that is appealable under Title 23, Part 300, Chapter 3, Rule 3.1(A) of the Mississippi Administrative Code.

Pursuant to the DOM Medical Assistance Participation Agreement, Medicaid–Title XIX Program, Section C-1, Page 3, as mutually agreed upon by DOM and GLH:

> "In the event funds have been overpaid or disallowed, the Provider shall repay such funds within 30 days of discovery by the Provider or notification by the Mississippi Division of Medicaid or its designated agent, or *on other terms approved by the Mississippi Division of Medicaid*."

Because the repayment schedule is not subject to appeal, your request is denied by the Office of Appeals as improper. All accompanying motions are therefore moot.

Sincerely,

*Terri Adams*

Terri Adams, J.D.
Director, Office of Appeals

cc:  Cindy Bradshaw, DOM Executive Director
     Suzanne Hudson, DOM Chief Legal Counsel
     Charlie Ross, GLH Counsel
     Beau Bettiga, GLH Counsel



**EXHIBIT**

**A**

**From:** QIPP <QIPP@medicaid.ms.gov>
**Date:** September 17, 2025 at 2:52:23 PM CDT
**To:** RRoberson@mhanet.org, Richard Grimes <rgrimes@mhanet.org>, Shane Hariel <shariel@cricpa.com>, Joshua Hammons <JHammons@highlandhillsmc.com>, "Jennifer Bouchillon (Highland Hills" <jennifer@bouchilloncpa.com>, Jenny Miller <JMiller@highlandhillsmc.com>, swill@qchospital.org, Melissa Jenkins <mjenkins@deltahealthsystem.org>, Brandi Roberts <broberts@ahmgt.com>, Scott Markstrom <smarkstrom@ahmgt.com>, Vearnail Rowe <vrowe@ahmgt.com>, Carol Ann Cockrell <CarolAnn.Cockrell@uhsinc.com>, "Wilkins, Jacob" <Jacob.Wilkins@uhsinc.com>, "Jay Shehi (Alliance Health Center CEO" <jay.shehi@uhsinc.com>, Bill King <bking@ahsofms.com>, Kenneth Williams <kfwilliams@ahsofms.com>, Debra Griffin <dgriffin@ahsofms.com>, Perry Williams <pewilliams@ahsofms.com>, Debi Pace <DPace@ahsofms.com>, "Jessica Washington (Alliance Re1venue Cycle Director" <jwashington@ahsofms.com>, "john.anderson" <john.anderson@bmhcc.org>, Daniel Estes <Daniel.Estes@bmhcc.org>, "Robert Coleman (CEO Baptist Golden Triangle" <robert.coleman@bmhcc.org>, Deena Keasler <Deena.Keasler@bmhcc.org>, Jenifer McCain <jenifer.mccain@bmhcc.org>, "Mac Flynt (CEO BM Attala" <Mac.Flynt@bmhcc.org>, Petra Dodd <petra.dodd@bmhcc.org>, "Ann Bishop (CEO BM Union" <ann.bishop@bmhcc.org>, Bill Thompson <bill.thompson@bmhcc.org>, "Daryl Weaver (Baptist CEO Leake" <daryl.weaver@bmhcc.org>, Jenifer McCain <jenifer.mccain@bmhcc.org>, Ron.Wachsman@bmhcc.org, Chris.Anderson@bmhcc.org, Robert Coleman <robert.coleman@bmhcc.org>, Christopher Threadgill <Christopher.Threadgill@bmhcc.org>, Karen Goodrum <karen.goodrum@bmhcc.org>, James Grantham <james.grantham@bmhcc.org>, Kim High <Kim.High@bmhcc.org>, "Brian Hogan (Baptist Desoto CEO" <brian.hogan@bmhcc.org>, Joe McWherter <joe.mcwherter@bmhcc.org>, Paul Cade <paul.cade@bmhcc.org>, Thomas Steadman <thomas.steadman@bmhcc.org>, Pam Wright <Pam.wright@bmhcc.org>, Cyrille Bullock <cyrille.bullock@bmhcc.org>, Robyn Dorris <Robyn.Dorris@bmhcc.org>, "Brian Welton (CEO Baptist NM" <brian.welton@bmhcc.org>, Krystal Whitten <Krystal.Whitten@bmhcc.org>, James Grantham <james.grantham@bmhcc.org>, Valerie Carter <Valerie.carter@bmhcc.org>, Janet Flake <Janet.Flake@bmhcc.org>, Kim High

EXHIBIT
B
tabbies

<Kim.High@bmhcc.org>, Kadie Burr <Kadie.Burr@bmhcc.org>, Robert Massey <Robert.Massey@bmhcc.org>, Lori York <Lori.York@bmhcc.org>, Bill Thompson <bill.thompson@bmhcc.org>, Bobbie Ware <bobbie.ware@bmhcc.org>, CEO Magnolia <Magnolia_ceo@freedombehavioral.com>, "Steve Waters (CEO Beacham" <swaters@freedombehavioral.com>, Jason Reed <jreed@freedomhc.com>, "Ashley Wood (CFO" <awood@freedomhc.com>, McCollum JoAnn - Cleveland <joann.mccollum@scionhealth.com>, Allen Rhonda - Cleveland <Rhonda.allen@scionhealth.com>, "James.Young" <James.Young@scionhealth.com>, Tommy.Stoves@lpnt.net, "Jones, Nigel" <nigel.jones@uhsinc.com>, "Jones, Shenequa (BWBH" <shenequa.jones@uhsinc.com>, "Land, Alison" <Alison.land@uhsinc.com>, "Suggs, Moniqueca" <moniqueca.suggs@uhsinc.com>, "Jones, Shenequa (Business Office" <shenequa.jones@uhsinc.com>, "Megan N. Snow" <megan.snow@choctawregional.com>, Patrick Donald <patrick.donald@choctawregional.com>, "Steve P. Marinelli" <steve.marinelli@choctawregional.com>, Ada Ratliff <aratliff@ccmcms.org>, Carolyn Dupre <cdupre@ccmcms.org>, Barry Keel <bkeel1@nmhs.net>, "Poole, Melody (Chief Quality Officer NMHS" <MAPoole@nmhs.net>, "Monroe, Kelvin" <kmonroe@nmhs.net>, "Sharon Nobles (CFO North MS" <sdnobles@nmhs.net>, Ben Lott <blott@copiahhealth.org>, "Dr. William Morgan" <wmorgan@copiahhealth.org>, Kortney Gaddy <kgaddy@copiahhealth.org>, Teresa Harvey <tharvey@copiahhealth.org>, Delilah Hudson <dhudson@covingtoncountyhospital.com>, Gregg Gibbes <ggibbes@covingtoncountyhospital.com>, Kathe Bryant <kbryant@covingtoncountyhospital.com>, Lorie Till <ltill@nwmrmc.org>, Erika Stapleton <estapleton@nwmrmc.org>, nheagwood@nwmrmc.org, Melissa Jenkins <mjenkins@deltahealthsystem.org>, Iris Stacker <istacker@deltahealthsystem.org>, Charles Moore <chamoore@deltahealthsystem.org>, Angie Parkinson-Piasecki <aparkinson@deltahealthsystem.org>, Frank Corcino <frank@onpointhealthcarepartners.com>, "Rolando Mantilla (Delta Regional" <rmantilla@onpointhealthcarepartners.com>, Genaro Grajeda <ggrajeda1@onpointhealthcarepartners.com>, "Swoopes, Patrick" <Patrick.Swoopes@uhsinc.com>, Mark Studdard <Mark.Studdard@encompasshealth.com>, "Cofield, Cynthia" <Cynthia.Cofield@encompasshealth.com>, "Taylor Davis (Encompass-Reimb" <Taylor.Davis@encompasshealth.com>, Chad Netterville <cnetterville@mhanet.org>, "Martin, Julie" <jmartin@bkd.com>, Richard Williams <rwilliams@fhsms.org>, Bryan Stevens <bstevens@fhsms.org>, Bryan Stevens <bstevens@fhsms.org>, Victoria Anders <vanders@fhsms.org>, "Andy Woodard (FG CEO" <awoodard@forrestgeneral.com>, Ben Hester <ben.hester@forrestgeneral.com>, DF Sanford <DFSanford@forrestgeneral.com>, Christina.Lofton@forrestgeneral.com, Leslie Morris <leslie.morris@forrestgeneral.com>, Kathy Farr <kathy.farr@fcmh.net>, Lillie Higginbotham <lillie.higginbotham@fcmh.net>, Mike Boleware <mboleware@fcmh.net>, Luke Schwarz <lschwarz93@georgeregional.com>, "Greg Havard (CEO" <ghavard@georgeregional.com>, Pat Howell <phowell@georgeregional.com>, Anthoney Fryfogle <Anthoney.Fryfogle@georgeregional.com>, Pat Howell <phowell@georgeregional.com>, Richard Daughdrill <rdaughdrill@georgeregional.com>, "Holmes, Dawne" <dholmes@glh.org>, "Marchand, Gary" <gmarchand@glh.org>, "Richardson, Morgan" <mrichardson@glh.org>, Cliff Hermes <cliff.hermes@oceanshealthcare.com>, "Eric Elliott (CFO Gulf Oaks BH"

2

<eric.elliott@oceanshealthcare.com>, Star Thompson
<star.thompson@oceanshealthcare.com>, "Dean Doty (GBHS"
<dean.doty@uhsinc.com>, David Butler <david.butler@ochsner.org>, Ben Hester
<ben.hester@forrestgeneral.com>, Leslie Morris <leslie.morris@forrestgeneral.com>,
"Candice D. Whitfield" <cdwhitfield@umc.edu>, Dodie McElmurray
<dmcelmurray@umc.edu>, Scott Whittemore <swhittemore@umc.edu>, Kimberly W
Martindale <kmartindale@umc.edu>, jsinclair2@umc.edu, Jeff Grimsley
<jgrimsley@umc.edu>, "Dodie McElmurray (CEO UMMC" <dmcelmurray@umc.edu>,
"Steven B. Reed" <sreed2@umc.edu>, Eric Jordan <eric.jordan@jghms.com>, Griff Kelly
<griff.kelly@jghms.com>, Jerry Kennedy <jkennedy@jeffhospital.com>, "Adrick Hunter
(CFO Jefferson" <hunteradrick@yahoo.com>, "Monica Griffin (Director of Nursing"
<mgriffin@jeffhospital.com>, bConway@panolamed.com, Kadeidra Eanochs
<keanochs@jeffhospital.com>, Natrisha Williams <nwilliams@jeffhospital.com>, Tomaz
McCarty <tomaz.mccarty@forrestgeneral.com>, Ben Hester
<ben.hester@forrestgeneral.com>, Leslie Morris <leslie.morris@forrestgeneral.com>,
David Butler <david.butler@ochsner.org>, Kristin.molony@rushhealth.org, Scott Vincent
<scott.vincent@rushhealth.org>, Scott Christensen <schristensen@kdmc.org>, Adam
Moore <amoore@kdmc.org>, Sharon Hughes <shughes@kdmc.org>, "Brianna Standberry
(King's Daughter Decision Support" <bstandberry@kdmc.org>, Amy Lampton Walker
<amy.walker@kdmc.org>, "Kerry Goff (KPC" <kgoff@kpcph.com>, Ken O'Amico
<kdamico@kpcph.com>, "Richard Wang (KPC" <Richard.Wang@kpcgm.com>, David
Butler <david.butler@ochsner.org>, Charla Rowley <charla.rowley@smrmc.com>, Cindy
Pickett <cindy.pickett@smrmc.com>, Kimberly Thomas <kimberly.thomas@smrmc.com>,
Mallory Ginn <mallory.ginn@smrmc.com>, "Robert C. Weathersby"
<robert.weathersby@smrmc.com>, Ed Tucker <ed@getucker.com>, Ed Tucker
<ed.tucker@simpsongeneral.com>, Gregg Gibbes
<ggibbes@covingtoncountyhospital.com>, Shelly Riley
<Shelly.Riley@simpsongeneral.com>, Marion Dickson <mdickson@mghosp.org>,
Suzanne Young <syoung@mghosp.org>, James Hobson <jhobson@mrhc.org>, "Lisa
Davidson (Magnolia" <ldavidson@mrhc.org>, "Thames, Stephen" <sthames@mrhc.org>,
Meredith Lee <MLee@mrhc.org>, james.turnage@forrestgeneral.com, Ben Hester
<ben.hester@forrestgeneral.com>, Cynthia Aultman
<Cynthia.Aultman@mariongenhospital.com>, Leslie Morris
<leslie.morris@forrestgeneral.com>, "Karen D. Krohn" <Kkrohn@mhg.com>, "Kent Nicaud
(Memorial Gulfport CEO" <knicaud@mhg.com>, "William Barrette (Memorial Gulfport
CFO" <wbarrette@mhg.com>, SAnderson@mrhc.org, Brett Maxfield
<Brett.Maxfield@mymerithealth.com>, "David Henry (CEO MH Madison Central"
<David.Henry@mymerithealth.com>, Jennifer Lott <Jennifer.Lott@mymerithealth.com>,
Justin Stroud <justin.stroud@mymerithealth.com>, "Athena Chapin (Quality, MH RO"
<athena.chapin@mymerithealth.com>, Amelia Conner
<amelia.conner@riverregion.com>, "Angela M. Benda" <abenda@mhg.com>,
dwayne_blaylock@chs.net, "Jennifer Woods (MH Biloxi/Gulfport" <Jenwoods@mhg.com>,
Brenda Moon <brenda.moon@merithealthnatchez.com>, Garett May
<garett.may@merithealthnatchez.com>, Kevin Samrow
<kevin.samrow@merithealthnatchez.com>, "Jonathan Koonce (CEO MH Rankin"
<Jonathan.koonce@mymerithealth.com>, Justin Stroud
<justin.stroud@mymerithealth.com>, Vanessa Stark
<vanessa.stark@mymerithealth.com>, Perry Parnell <perry.parnell@mymerithealth.com>,

3

Sam Dean <Sam.dean@mymerithealth.com>, Jodi Sumerall
<jodi.sumerall@riverregion.com>, Christy Wilson
<christy.wilson@merithealthwesley.com>, "Sheila Massengale (contract mgt asst"
<sheila.massengale@merithealthwesley.com>, Travis Sisson
<Travis.Sisson@merithealthwesley.com>, Justin Stroud
<justin.stroud@mymerithealth.com>, "David Baytos (MOBH CEO"
<david.baytos@mlh.org>, Eric Beaupre <Eric.Beaupre@mlh.org>, Kris Sanders
<kris.sanders@mlh.org>, Jennifer Williams <Jennifer.Williams2@mlh.org>, Christopher
Chandler <cchandler@monroeregionalhospital.com>, George Esper
<gesper@boavidahealthcare.com>, Dean Otey <dotey@boavidahealthcare.com>, Christy
Williams <cwilliams@monroeregionalhospital.com>, Gary Armstrong
<garya@mmrcrehab.org>, "David McMillin (CEO" <dmcmillin@mmrcrehab.org>, Renee
Morgan <RMorgan@mmrcrehab.org>, Justin Head <jhead@mmrcrehab.org>, Lee McCall
<lmccall@neshobageneral.com>, Scott McNair <smcnair@neshobageneral.com>, David
Wilson <DCWilson@nmhs.net>, "Monroe, Kelvin" <kmonroe@nmhs.net>, Shane Spees
<msspees@nmhs.net>, Sharon Nobles <sdnobles@nmhs.net>, Jamie Rodgers
<Jamie.rodgers@nmhs.net>, "Monroe, Kelvin" <kmonroe@nmhs.net>, Sharon Nobles
<sdnobles@nmhs.net>, Jennifer Baughman <Jennifer.baughman@northsunflower.com>,
sarabtoole@northsunflower.com, Carol Watt <carol.watt@ngcah.com>, Christy Weir
<Christy.weir@ngcah.com>, Danny McKay <danny.mckay@ngcah.com>, Meg Ebert
<meg.ebert@ngcah.com>, "Carla C. Dearman" <carla.dearman@msh.ms.gov>, "James G.
Chastain" <James.Chastain@msh.ms.gov>, Sonjia Kittrell <sonjia.kittrell@msh.ms.gov>,
Brandy Heppel <brandy.heppel@ochsner.org>, Jeff Edge <Jeffery.edge@ochsner.org>,
"Ken Smith (CFO Hancock" <gusmith@ochsner.org>, Melissa Dossett
<melissa.dossett@ochsner.org>, "James H. Jackson, Jr." <jhjackson@och.org>, Susan
Russell <srussell@och.org>, "Plunkett, Alicia" <alicia.plunkett@uhsinc.com>, "Denegri,
David" <david.denegri@uhsinc.com>, "Joshua James (PWBH"
<Joshua.James@uhsinc.com>, kevin.hedgepeth@forrestgeneral.com, Ben Hester
<ben.hester@forrestgeneral.com>, Jeff Cook <jwcook@forrestgeneral.com>, Shenika
Russell <Shenika.Russell@perrycountyhospital.org>, Leslie Morris
<leslie.morris@forrestgeneral.com>, David Paris <dparis@pcghosp.com>,
Nacole.dillon@forrestgeneral.com, "Monroe, Kelvin" <kmonroe@nmhs.net>, Leslia Carter
<lcarter@nmhs.net>, Sharon Nobles <sdnobles@nmhs.net>, Dana Hall
<dhall@panolamed.com>, Rhonda Burchett <Rhonda@phghealth.com>, Quentin
Whitwell <qwhitwell@panolamed.com>, Quentin Whitwell
<quentinwhitwell@icloud.com>, "Quentin (Trace Regional-Panola-Quitman CEO"
<Quentin@phghealth.com>, "Pam Roberts (CFO Trace-Quitman" <Pam@phghealth.com>,
Pam Roberts <proberts@panolamed.com>, mleach@panolamed.com, "Gavin, Eliza A."
<Egavin@regencyhospital.com>, James Proctor <jproctor@regionalonehealth.org>, "Neel,
Jason W." <jneel@regionalonehealth.org>, "CHAMPION, WILLIAM B. (Controller"
<wchampion@regionalonehealth.org>, Reginald Coopwood
<Rcoopwood@regionalonehealth.org>, "WHITEHEAD, MICHELE G."
<mwhitehead@regionalonehealth.org>, James.tyra@ochsner.org, David Butler
<david.butler@ochsner.org>, Buford Yates <byates@ihmii.com>, Erica Riser
<EricaRiser@lackeymemorialhospital.com>, Rene Bradford
<ReneBradford@lackeymemorialhospital.com>, Sydney Sawyer
<sydneysawyer@lackeymemorialhospital.com>, David Butler
<david.butler@ochsner.org>, Heather Davis <heather.davis@rushhealth.org>, Theresa

4

Hackman <Thackman@selectmedical.com>, "Bourn, Cris B."
<BBourn@selectmedical.com>, "Snyder, Wade" <wsnyder@selectmedical.com>,
"Canard, Robert Shannon" <rcanard@selectmedical.com>, "Theresa Hackman (CFO
Regency SS-GC SS-Jackson" <Thackman@selectmedical.com>, "John O'Keefe (CEO SS-
GC" <JMOKeefe@selectmedicalcorp.com>, "K. Shook"
<kshook@selectmedicalcorp.com>, MEClark@selectmedical.com, BCoates
<bcoates@sichosp.org>, Jerry Keever <jkeever@sichosp.org>, Chelsea Carter
<chelsea.carter@traceregional.com>, Renee Morgan <RMorgan@mmrcrehab.org>,
Kawanda.johnson@rushhealth.org, hilary_burton@chs.net, Jason McNeil
<Jason.McNeil@mysrhs.com>, "Laurin St.Pe' (CEO Singing River System"
<Laurin.stpe@mysrhs.com>, "Heath Thomspon (administrator SR Ocean Springs"
<Heath.thompson@mysrhs.com>, "Jillian Spring (administrator SR Ocean Springs"
<Jillian.spring@mysrhs.com>, "Heather Rowley (administrator SR Gulfport"
<Heather.rowley@mysrhs.com>, "justin.rickley" <Justin.Rickley@mysrhs.com>, "Scott,
Sam T" <samuel.scott@fmolhs.org>, "Reedy, Mary K" <mary.reedy@fmolhs.org>,
"Tinnerello, Jeremy M (St. D CEO" <Jeremy.Tinnerello@fmolhs.org>, "Estorge, Dave M"
<David.Estorge@fmolhs.org>, "Gordon, Tracy M" <Tracy.Gordon@fmolhs.org>, Jason
McNeil <Jason.McNeil@mysrhs.com>, "Janina Lee (Cash Application Singing River"
<janina.lee@mysrhs.com>, Julie Scruggs <Julie.Scruggs@mysrhs.com>, Jillian Strayham
<Jillian.Strayham@mysrhs.com>, "Courtney Phillips (South Sunflower CEO"
<cphillips@southsunflower.com>, Katie Yates <kyates@southsunflower.com>, Patrick
Chapman <patrickc@tc-hs.org>, Stephanie McAlister <stephaniem@tc-hs.org>, Tabitha
Clifton <tabithaj@tc-hs.org>, Brandon Graves <Brandong@tc-hs.org>, "David Andrew
Porter (Wayne General CEO" <aporter@waynegeneralhospital.org>, Clinton Eaves
<ceaves@waynegeneralhospital.org>, aholmes <aholmes@waynegeneralhospital.org>,
"Gregg Gibbes (South Central CEO" <ggibbes@scrmc.com>, Stephen East
<sheast@scrmc.com>, Mary Wilkins <mwilkins@scrmc.com>, Alecia Bigler
<ABigler@scrmc.com>, Beth Harrison <beth.harrison@thmh.org>, Cori Bailey
<cori.bailey@thmh.org>, Jim Blackwood <jblackwood@mytgh.com>, Drew Weissinger
<dweissinger@mytgh.com>, Rani Richard <rrichard@mytgh.com>, Billie Lawrence
<blawrence@mytgh.com>, sheila.brockman@sunlinkhealth.com, "Mixon, Robin"
<rmixon@nmhs.net>, "Michael Nester (Administrator" <mnester@winstonmedical.org>,
Matt Woodward <mwoodward@winstonmedical.org>, "Jessica Embry (CEO Yalobusha"
<jembry@yalobushageneral.com>, aanderson@yalobushageneral.net, Tonya Latady
<Tonya.Latady@mysrhs.com>, Kimily Taylor <kimily.taylor@oceanshealthcare.com>,
"Eric.Elliott (CFO Oceans Tupelo" <Eric.Elliott@oceanshealthcare.com>, Sherry Brewer
<sbrewer@scrmc.com>, Tyler Whittington <twhittington@scrmc.com>, Lacy Grant
<lgrant@scrmc.com>, Juliana Adams <jadams@kdmc.org>,
tjames@neshobageneral.com, Kim Hoover <khoover@mhanet.org>, "Don T. Avera"
<Donald.Avera@bmhcc.org>, CEO Magnolia <Magnolia_ceo@freedombehavioral.com>,
Daniel Ceja <Daniel.Ceja@northsunflower.com>, sheneka.davis@bmhcc.org, Patti
Hollifield <Patti.Hollifield@bmhcc.org>, "Ellen A. Robinson" <erobinson@mhg.com>,
nathan_summar@chs.net, Brooke Reaves <brooke_reaves@chs.net>,
joelizabeth.ammer@bmhcc.org, diana.johnston@bmhcc.org, Belinda Sanderson
<belinda.sanderson@bmhcc.org>, tangela.jackson@forrestgeneral.com, "Wilkins, Jacob"
<Jacob.Wilkins@uhsinc.com>, Julia Jesuit <jjesuit@criadv.com>, Tennille Allen
<tallen@ahsofms.com>, "Rector, Edwin B" <Edwin.rector@scionhealth.com>,
Jlynn@mhg.com, "Karen D. Krohn" <Kkrohn@mhg.com>, jturnage1@umc.edu, Rachel

Camargo <rachel_camargo@chs.net>, Lisa Didion <LDidion@umc.edu>, "WOODS, CHRISTINE" <cwoods@regionalonehealth.org>, janet@phghealth.com, smaholoch@umc.edu, sdufford@mhg.com, Pchandler@mhg.com, Jenwoods@mhg.com, Ewing Chandler <Chandler.Ewing@scionhealth.com>, ChamathW@mhanet.org, Rhonda McCardle <rhonda.mccardle@scrmc.com>, Tammy_Brown2@chs.net, "Raymond L. Riley" <rriley5@umc.edu>, joy.akanji@mymerithealth.com, jburnside@umc.edu, bpheLps@umc.edu, Justin Stroud <justin.stroud@mymerithealth.com>, Muriel Osburn <Muriel.Osburn@bmhcc.org>

**Cc:** QIPP <QIPP@medicaid.ms.gov>, MississippiCAN Plan <MississippiCan.Plan@medicaid.ms.gov>, Keith Heartsill <Keith.Heartsill@medicaid.ms.gov>, "Shatara M. Bogan" <Shatara.Bogan@medicaid.ms.gov>, Jim Post <James.Post@medicaid.ms.gov>, "Kaetryn C. Carpenter" <Kaetryn.Carpenter@medicaid.ms.gov>, "Domonique P. Varnado" <Domonique.Varnado@medicaid.ms.gov>, Sade Stewart <Sade.Stewart@medicaid.ms.gov>, "Lisa C. Shaw" <Lisa.Shaw@medicaid.ms.gov>, "Jennifer O. Wentworth" <jennifer.wentworth@medicaid.ms.gov>

**Subject: SFY 26 MHAP – CMS Approved Preprint and Payment Models**

---

**WARNING:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

---

Dear Hospital Representatives,

Good morning. The Division of Medicaid (Division) is providing hospitals with the following SFY 2026 Mississippi Hospital Access Program (MHAP) Models:

(1) the CMS Approved MHAP Model for SFY 26 titled "2026 MHAP Approved Preprint Model – 3-14-2025," and

(2) the MHAP payment model used for making the actual payments during SFY 26 titled "Year 9 - MHAP Payment Model SFY 2026 - 09-2025 - 09.17.2025."

The Division has instructed the Managed Care Organizations (MCO) to process the July, August, and September 2025 MHAP payments to the hospitals by September 19, 2025. Please see the attached MHAP payment model for MCO monthly payment information in the tab labeled "FY-26 Monthly MHAP Pmts."

For questions or concerns, please email the QIPP mailbox: QIPP@medicaid.ms.gov.

Thank you,

Mississippi Division of Medicaid
550 High Street, Suite 1000 | Jackson, Mississippi 39201
Email: QIPP@medicaid.ms.gov
Website: http://medicaid.ms.gov

DSH PSR SharePoint site: DSH PSR - Home (sharepoint.com)
Website for QIPP resources: Value-Based Incentives - Mississippi Division of Medicaid (ms.gov)

6

**CONFIDENTIALITY NOTE**: This message and all attachments are confidential and/or proprietary to the Mississippi Division of Medicaid, and may contain sensitive information, including, but not limited to, protected health information as defined by the Health Insurance Portability and Accountability Act (HIPAA) of 1996. The information contained in and attached to this message is intended for the exclusive use of the intended recipient. The use, disclosure, copying, or distribution by any means, to anyone other than the intended recipient without the prior written permission of the Mississippi Division of Medicaid, is strictly prohibited. Any such unauthorized use, disclosure, copying, or distribution may violate federal and/or state privacy laws, including, but not limited to, HIPAA. If you have received this message or any attachments in error, please notify the sender by replying to the email or contact the telephone number above and delete this message from your computer without additional disclosure. Thank you for your assistance in the protection of confidential information.

Case: 25CH1:25-cv-01314      Document #: 3      Filed: 11/10/2025      Page 12 of 21

**MHAP Monthly Payments - SFY2026 Payment**
State of Mississippi
Month: September

-0.01

| B | C | D (Provider) | F | H | I | J | K = sum(F thru J) | M | N | O = K - M + N |
|---|---|---|---|---|---|---|---|---|---|---|
| 252015 | 02472238 | Allegiance Specialty Hospital of Greenville | 894,015.41 | 866,184.42 | 866,184.42 | 868,785.57 | 3,495,169.82 | | | 3,495,169.42 |
| 250151 | 100000173 | Alliance Health Center | 5,923.63 | 5,619.05 | 5,619.05 | 6,262.14 | 23,423.87 | | | 23,423.87 |
| 250012 | 00200631 | Alliance Healthcare - Holly Springs | 946,426.16 | 1,254,446.73 | 1,254,446.73 | 1,258,213.85 | 4,713,533.47 | (11,711.94) | 11,711.94 | 4,713,533.47 |
| 250104 | 00200046 | Baptist Anderson Regional Medical Center | 19,023.88 | 39,529.80 | 39,529.80 | 39,648.53 | 137,732.01 | (68,856.01) | | 68,856.01 |
| 250091 | 00200485 | Baptist Anderson Regional Medical Center - South | 74,717.13 | 74,720.46 | 74,720.46 | 74,944.85 | 299,102.90 | | | 299,102.90 |
| 251336 | 00200035 | Baptist Medical Center - Attala | 97,826.79 | 115,724.03 | 115,724.03 | 116,071.55 | 445,346.40 | | | 445,346.40 |
| 251313 | 00200809 | Baptist Medical Center - Yazoo | 76,928.43 | 50,614.05 | 50,614.05 | 50,766.04 | 228,922.57 | | | 228,922.57 |
| 251315 | 00200084 | Baptist Medical Center Leake | 83,453.73 | 77,403.48 | 77,403.48 | 77,635.93 | 315,896.62 | | | 315,896.62 |
| 250044 | 00200213 | Baptist Memorial Hospital - Booneville | 46,721.55 | 51,206.64 | 51,206.64 | 51,860.40 | 200,485.23 | | | 200,485.23 |
| 251331 | 00200143 | Baptist Memorial Hospital - Calhoun | 1,437,623.19 | 1,833,900.10 | 1,833,900.10 | 1,839,407.31 | 6,944,830.70 | | | 6,944,830.70 |
| 250141 | 00200136 | Baptist Memorial Hospital - Desoto County | 1,390,064.69 | 1,439,907.84 | 1,439,907.84 | 1,444,312.13 | 5,714,352.50 | | | 5,714,352.50 |
| 250100 | 00200016 | Baptist Memorial Hospital - Golden Triangle | 1,380,700.38 | 1,382,635.04 | 1,382,635.04 | 1,385,787.09 | 5,532,847.55 | | | 5,532,847.55 |
| 250094 | 00200010 | Baptist Memorial Hospital - North MS | 1,289,616.38 | 1,245,450.13 | 1,245,450.13 | 1,249,190.24 | 5,009,706.88 | | | 5,009,706.88 |
| 250006 | 00200043 | Baptist Memorial Hospital of Union County | 4,416.97 | 9,512.88 | 9,512.88 | 9,541.45 | 32,984.18 | | 32,984.18 | |
| 250049 | 00200604 | Beacham Memorial Hospital | 575,411.55 | 665,210.07 | 665,210.07 | 667,207.71 | 2,574,039.40 | | 174,834.80 | 2,399,204.60 |
| 250093 | 00200625 | Bolivar Medical Center | 959,232.85 | 807,177.95 | 807,177.95 | 809,901.90 | 3,383,190.65 | | | 3,383,190.65 |
| 254007 | 00431215 | Brentwood Behavioral Healthcare of MS | 27,928.16 | 27,918.29 | 27,918.29 | 28,002.13 | 111,766.87 | | | 111,766.87 |
| 251336 | 00200140 | Choctaw Behavioral Medical Center | 35,915.67 | 43,288.20 | 43,288.20 | 39,076.37 | 161,568.44 | | | 161,568.44 |
| 250067 | 00200079 | Claiborne County Hospital | 404,223.46 | 476,866.35 | 476,866.35 | 478,298.38 | 1,836,254.54 | | | 1,836,254.54 |
| 251327 | 00200115 | Clay County Medical Corporation | 84,373.73 | 93,636.13 | 93,636.13 | 93,917.32 | 365,563.31 | | | 365,563.31 |
| 251325 | 00200133 | Copiah County Medical Center | 43,737.22 | 56,444.13 | 56,444.13 | 62,904.04 | 219,529.52 | | | 219,529.52 |
| 250082 | 00200145 | Covington County Hospital | 918,795.39 | 1,094,728.26 | 1,094,728.26 | 1,098,015.73 | 4,206,267.64 | | | 4,206,267.64 |
| 250011 | 00200411 | Delta Regional Medical Center | 593,100.25 | 417,336.47 | 417,336.47 | 418,589.73 | 1,846,362.92 | | | 1,846,362.92 |
| | 33333333 | Diamond Grove Center | 23,350.40 | 43,215.04 | 43,215.04 | 43,344.81 | 153,125.29 | | | 153,125.29 |
| 252027 | 01384596 | East Mississippi State Hospital | 30,922.91 | 41,665.41 | 41,665.41 | 41,790.54 | 156,044.27 | | | 156,044.27 |
| 251309 | 00200012 | Encompass Health Rehabilitation Hospital | 4,063,276.94 | 4,060,556.49 | 4,060,556.49 | 4,072,750.35 | 16,257,137.69 | | | 16,257,137.69 |
| 251319 | 00200007 | Field Memorial Community Hospital | 27,283.36 | 30,352.21 | 30,352.21 | 30,443.35 | 118,431.13 | | | 118,431.13 |
| 251330 | 00200130 | Forrest General Hospital | 223,124.22 | 347,627.90 | 347,627.90 | 348,671.82 | 963,668.24 | (303,383.60) | | 963,668.24 |
| 250096 | 00200290 | Franklin County Memorial Hospital | 4,809.64 | 5,275.14 | 5,275.14 | 5,290.99 | 20,650.91 | | | 20,650.91 |
| 251329 | 06200741 | George County Hospital | 284,380.93 | 718,833.05 | 718,833.05 | 720,991.70 | 2,447,038.73 | (900,000.00) | | 1,547,038.73 |
| 250099 | 00200025 | Greene County Hospital | 663,394.12 | 511,200.73 | 511,200.73 | 512,735.86 | 2,198,531.44 | | | 2,198,531.44 |
| 250013 | 09730779 | Greenwood Leflore Hospital | 34,452.64 | 36,258.41 | 36,258.41 | 36,367.30 | 147,336.76 | | | 147,336.76 |
| 251316 | 00200214 | Gulfport Behavioral Health Systems | 429,410.96 | 480,160.86 | 480,160.86 | 481,603.79 | 1,871,335.47 | | | 1,871,335.47 |
| 250117 | 00200682 | H.C. Watkins Memorial Hospital | 53,049.37 | 64,420.00 | 64,420.00 | 64,613.64 | 246,522.81 | | | 246,522.81 |
| 251319 | 00220609 | Highland Community Hospital | 2,692.45 | 3,615.84 | 3,615.84 | 3,264.03 | 13,188.16 | | | 13,188.16 |
| 250018 | 00200177 | Holmes County Hospital and Clinics | 4,459.82 | 5,280.04 | 5,280.04 | 5,295.90 | 20,315.80 | | 20,315.80 | |
| 250040 | 00200183 | Jasper General Hospital | 29,575.26 | 31,163.45 | 31,163.45 | 31,257.03 | 123,159.19 | | | 123,159.19 |
| 251326 | 00200441 | Jefferson County Hospital | 42,506.90 | 34,777.13 | 34,777.13 | 34,881.55 | 146,742.71 | | | 146,742.71 |
| 251335 | 02934741 | Jefferson Davis General Hospital | 845,787.01 | 944,604.36 | 944,604.36 | 947,441.00 | 3,682,436.73 | | | 3,682,436.73 |
| 250057 | 00200008 | John C. Stennis Memorial Hospital | 42,328.46 | 43,489.99 | 43,489.99 | 43,620.58 | 172,929.02 | | | 172,929.02 |
| 251332 | 04125505 | King's Daughter Medical Center | 25,482.18 | 28,159.70 | 28,159.70 | 28,244.27 | 110,045.85 | | | 110,045.85 |
| 251305 | 00200170 | Laird Hospital | | | | | | | | |
| 250010 | 02778753 | Lawrence County Hospital | | | | | | | | |
| 250124 | 00200042 | LTAC Hospital of Greenwood, LLC | 104,451.89 | 138,850.44 | 138,850.44 | 139,267.41 | 521,420.18 | | | 521,420.18 |
| 250009 | 00200020 | Magee General Hospital | 676,129.07 | 872,581.00 | 872,581.00 | 875,201.37 | 3,296,492.44 | | | 3,296,492.44 |
| 250005 | 00200116 | Magnolia Regional Health Center | 96,151.98 | 94,024.89 | 94,024.89 | 94,307.24 | 378,509.00 | | | 378,509.00 |
| 250019 | 00200027 | Marion General Hospital | 2,620,463.89 | 2,382,247.89 | 2,382,247.89 | 2,389,401.79 | 9,774,361.46 | | | 9,774,361.46 |
| 250036 | 00200182 | Memorial Hospital at Gulfport | 919,902.74 | 897,724.93 | 897,724.93 | 900,420.80 | 3,615,773.40 | | | 3,615,773.40 |
| 250072 | 00200630 | Merit Health - Biloxi | 1,155,677.93 | 1,589,587.36 | 1,589,587.36 | 1,594,360.90 | 5,929,208.55 | (462,145.13) | | 5,467,063.43 |
| 250064 | 00200172 | Merit Health - Central | 502,556.43 | 618,180.01 | 618,180.01 | 620,036.41 | 2,358,952.86 | | | 2,354,952.86 |
| 250096 | 00200417 | Merit Health - Natchez | 103,146.47 | 195,805.88 | 195,805.88 | 196,393.88 | 691,152.11 | | | 691,152.11 |
| 250138 | 00200467 | Merit Health - Rankin | 881,166.38 | 1,215,330.61 | 1,215,330.61 | 1,218,980.25 | 4,530,807.85 | | | 4,530,807.85 |
| 250091 | 00200461 | Merit Health - River Oaks | 708,609.14 | 1,062,933.12 | 1,062,933.12 | 1,066,125.21 | 3,900,600.79 | | | 3,900,600.79 |
| 250094 | 00200462 | Merit Health - River Region | 1,342,484.78 | 1,464,362.48 | 1,464,362.48 | 1,468,759.96 | 5,759,969.70 | | | 5,759,969.70 |
| 250136 | 00200466 | Merit Health - Wesley | 266,263.94 | 353,725.42 | 353,725.42 | 354,787.65 | 1,328,502.43 | | | 1,328,502.43 |
| 250187 | 01701363 | Merit Health - Woman's Hospital | 684,961.66 | 813,270.06 | 813,270.06 | 815,712.33 | 3,127,214.15 | | | 3,127,214.15 |
| 250102 | 00200392 | Methodist Healthcare - Olive Branch Hospital | 1,640,145.87 | 1,655,007.57 | 1,655,007.57 | 1,659,977.57 | 6,610,138.58 | | | 6,610,138.58 |
| 250152 | 00200233 | Mississippi Baptist Medical Center | 116,063.82 | 119,660.96 | 119,660.96 | 120,028.32 | 475,430.06 | | | 475,430.06 |
| 250035 | 00200003 | Mississippi Methodist Rehabilitation Center | 569,836.30 | 725,709.18 | 725,709.18 | 727,888.49 | 2,749,243.15 | | | 2,749,243.15 |
| 251302 | 00200692 | Monroe Health Services, Inc. | 44,869.91 | 45,060.93 | 45,060.93 | 45,196.25 | 180,188.02 | | | 180,188.02 |
| 250043 | 00200161 | Monroe Regional Hospital | 187,827.30 | 255,144.54 | 255,144.54 | 255,914.76 | 953,839.14 | | | 953,839.14 |
| 250004 | 00200061 | Neshoba County General Hospital | 3,550,434.81 | 3,578,103.35 | 3,578,103.35 | 3,588,848.41 | 14,295,489.92 | | | 14,295,489.92 |
| 254009 | 22222222 | North Mississippi Medical Center | | | | | | | | |
| | | North Mississippi State Hospital | | | | | | | | |

**MHAP Monthly Payments - SFY2026 Payment**

State of Mississippi

Month

September

-0.01

| A | B | C | D | F | H (Only paid in September, December, March, June) | I (Only paid in September, December, March, June) | J (Only paid in September, December, March, June) | K = sum(F thru J) | M | N | O = K - M + N |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 65 | 251318 | 00020118 | North Sunflower Medical Center | 156,375.16 | 156,596.46 | 156,596.46 | 157,066.73 | 626,634.81 | | - | 626,634.81 |
| 66 | 250042 | 00220380 | Northwest Mississippi Regional Medical Center | 392,093.92 | 885,802.40 | 885,802.40 | 888,462.47 | 3,052,161.19 | (1,526,080.60) | | 1,526,080.60 |
| 67 | 251307 | 00020041 | Noxubee General Critical Access Hospital | 33,070.97 | 31,225.61 | 31,225.61 | 31,319.37 | 126,841.56 | - | | 126,841.56 |
| 68 | 250338 | 00220338 | Oak Circle Center | 44,345.76 | 31,262.33 | 31,262.33 | 31,356.20 | 138,246.62 | - | | 138,246.62 |
| 69 | 254012 | 01150230 | Oceans Behavioral Hospital of Biloxi | 318,706.54 | 246,315.59 | 246,315.59 | 247,055.28 | 1,058,393.00 | - | | 1,058,393.00 |
| 70 | 254014 | 200019051 | Oceans Behavioral Hospital of Jackson | 233,704.68 | - | - | - | 233,704.68 | - | | 233,704.68 |
| 71 | 254013 | 200005726 | Oceans Behavioral Hospital of Tupelo | 168,385.13 | 176,112.51 | 176,112.51 | 176,641.37 | 697,251.52 | - | | 697,251.52 |
| 72 | 250162 | 00020166 | Ochsner Medical Center - Hancock | 220,372.83 | 347,509.47 | 347,509.47 | 348,553.03 | 1,263,944.80 | (631,972.40) | | 631,972.40 |
| 73 | 250050 | 00020219 | Oktibbeha County Hospital | 653,017.70 | 921,202.34 | 921,202.34 | 923,968.71 | 3,419,391.09 | - | | 3,419,391.09 |
| 74 | 250128 | 00020229 | Panola Medical Center | 87,384.35 | 113,374.17 | 113,374.17 | 126,349.59 | 440,482.28 | | 215,824.57 | 224,657.71 |
| 75 | 254005 | 00220612 | Parkwood Behavioral Health System | 539,850.80 | 484,077.19 | 484,077.19 | 485,530.87 | 1,993,536.05 | - | | 1,993,536.05 |
| 76 | 250163 | 01956816 | Patients' Choice Medical Center of Smith County | - | - | - | - | - | | - | - |
| 77 | 251333 | 00220297 | Pearl River County Hospital | 43,278.53 | 34,566.80 | 34,566.80 | 34,670.60 | 147,082.73 | - | | 147,082.73 |
| 78 | 251306 | 00020191 | Perry County General Hospital | 7,748.58 | 4,432.19 | 4,432.19 | 4,445.50 | 21,058.46 | - | | 21,058.46 |
| 79 | 251308 | 00020096 | Pontotoc Health Services | 57,234.16 | 66,234.77 | 66,234.77 | 66,433.66 | 256,137.36 | - | | 256,137.36 |
| 80 | 250785 | 200017995 | Progressive Health of Houston | 968.29 | 2,150.81 | 2,150.81 | 2,396.96 | 7,666.87 | (3,833.44) | 3,833.44 | 36,282.27 |
| 81 | 251339 | 02755745 | Quitman Community Hospital | 10,983.70 | 8,424.42 | 8,424.42 | 8,449.73 | 36,282.27 | - | | 36,282.27 |
| 82 | 252006 | 07176518 | Regency Hospital of Meridian | - | - | - | - | - | | - | - |
| 83 | 252009 | 07603524 | Regency Hospital of Southern Mississippi | - | - | - | - | - | | - | - |
| 84 | 440152 | 00020421 | Regional Medical Center of Memphis | 248,378.92 | 274,387.79 | 274,387.79 | 275,211.78 | 1,072,366.28 | - | | 1,072,366.28 |
| 85 | 250069 | 00020049 | Rush Foundation Hospital | 1,079,004.26 | 1,100,032.91 | 1,100,032.91 | 1,103,336.31 | 4,382,406.39 | - | | 4,382,406.39 |
| 86 | 251300 | 00220324 | S. E. Lackey Critical Access Hospital & Swingbed | 93,216.40 | 121,680.37 | 121,680.37 | 122,045.78 | 458,622.92 | - | | 458,622.92 |
| 87 | 251323 | 00220144 | Scott Regional Hospital | 31,521.65 | 36,548.73 | 36,548.73 | 36,658.48 | 141,277.59 | - | | 141,277.59 |
| 88 | 252003 | 00220174 | Select Specialty Belhaven | - | - | - | - | - | | - | - |
| 89 | 252005 | 04586568 | Select Specialty Hospital Gulf Coast | - | - | - | - | - | | • | - |
| 90 | 252007 | 05553701 | Select Specialty Hospital of Jackson | - | 301.63 | 301.63 | 302.53 | 905.79 | (452.90) | | 452.90 |
| 91 | 251338 | 00020129 | Sharkey Issaquena Community Hospital | 6,500.99 | 9,361.86 | 9,361.86 | 9,389.96 | 34,614.69 | - | | 34,614.69 |
| 92 | 251317 | 00020167 | Simpson General Hospital | 38,835.82 | 43,289.24 | 43,289.24 | 43,419.25 | 168,833.55 | - | | 168,833.55 |
| 93 | 250123 | 00220734 | Singing River Gulfport | 669,918.11 | 924,676.70 | 924,676.70 | 927,453.51 | 3,446,725.02 | - | | 3,446,725.02 |
| 94 | 250040 | 00020059 | Singing River Hospital | 2,204,265.86 | 2,865,014.28 | 2,865,014.28 | 2,873,617.92 | 10,807,912.34 | - | | 10,807,912.34 |
| 95 | 250163 | 200015368 | Smith County Emergency Hospital | 8,999.83 | - | - | - | 8,999.83 | - | • | 8,999.83 |
| 96 | 250058 | 00020141 | South Central Regional Medical Center | 1,412,146.00 | 1,558,461.25 | 1,558,461.25 | 1,563,141.30 | 6,092,209.80 | - | | 6,092,209.80 |
| 97 | 254008 | 11111111 | South Mississippi State Hospital | - | - | - | - | - | | - | - |
| 98 | 250095 | 00020032 | South Sunflower County Hospital | 211,363.26 | 314,578.50 | 314,578.50 | 315,523.18 | 1,156,043.44 | - | | 1,156,043.44 |
| 99 | 250097 | 00020207 | Southwest Mississippi Regional Medical Center | 1,026,784.81 | 1,263,775.43 | 1,263,775.43 | 1,267,570.57 | 4,821,906.24 | - | | 4,821,906.24 |
| 100 | 252004 | 00220723 | Specialty Hospital of Meridian | - | - | - | - | - | | - | - |
| 101 | 250048 | 00020034 | St. Dominic - Jackson Memorial Hospital | 2,310,978.84 | 2,688,092.92 | 2,688,092.92 | 2,696,165.26 | 10,383,329.94 | - | | 10,383,329.94 |
| 102 | 251304 | 00020161 | Tallahatchie General Hospital | 18,187.27 | 13,797.65 | 13,797.65 | 15,376.77 | 61,159.34 | - | | 61,159.34 |
| 103 | 250172 | 09929228 | Tate County Hospital | 57,642.36 | 25,157.95 | 25,157.95 | 25,233.51 | 133,191.77 | - | | 133,191.77 |
| 104 | 251337 | 00020111 | Tippah County Hospital | 36,068.07 | 37,789.01 | 37,789.01 | 37,902.49 | 149,548.58 | - | | 149,548.58 |
| 105 | 250002 | 00020393 | Tishomingo Health Services, Inc. | 46,950.31 | 49,245.06 | 49,245.06 | 49,392.95 | 194,833.38 | - | | 194,833.38 |
| 106 | 251312 | 00020156 | Tyler Holmes Memorial Hospital | 50,003.70 | 57,774.16 | 57,774.16 | 57,947.66 | 223,499.68 | - | | 223,499.68 |
| 107 | 250038 | 08087360 | UMMC - Madison | 183,763.06 | 274,102.44 | 274,102.44 | 274,925.57 | 1,006,893.51 | (63,946.30) | | 942,947.22 |
| 108 | 250001 | 00020149 | University of Mississippi Medical Center | 9,746,336.45 | 9,795,536.57 | 9,795,536.57 | 9,824,952.59 | 39,162,362.18 | - | | 39,162,362.18 |
| 109 | 250168 | 00020026 | University of Mississippi Medical Center - Grenada | 606,847.50 | 593,325.58 | 593,325.58 | 595,107.35 | 2,388,606.01 | - | | 2,388,606.01 |
| 110 | 251324 | 00020208 | Walthall County General Hospital | 55,914.85 | 56,034.32 | 56,034.32 | 56,202.58 | 224,186.07 | - | | 224,186.07 |
| 111 | 250077 | 00020131 | Wayne General Hospital | 237,815.36 | 298,606.53 | 298,606.53 | 299,503.25 | 1,134,531.67 | - | | 1,134,531.67 |
| 112 | 250020 | 00020178 | Webster Health Services | 62,449.50 | 72,297.37 | 72,297.37 | 72,514.47 | 279,558.71 | - | | 279,558.71 |
| 113 | 250134 | 00020011 | Whitfield Medical Surgical Hospital | - | 326.79 | 326.79 | 327.77 | 981.35 | - | | 981.35 |
| 114 | 250027 | 00220243 | Winston Medical Center | 69,328.84 | 68,958.40 | 68,958.40 | 69,165.49 | 276,411.13 | - | | 276,411.13 |
| 115 | 250061 | 00020175 | Yalobusha General Hospital | 14,664.40 | 16,449.38 | 16,449.38 | 14,848.89 | 62,412.05 | | 7,141.04 | 55,271.01 |
| | | | | 57,895,828.42 | 63,706,408.87 | 63,706,408.87 | 63,912,693.96 | 249,221,340.12 | (3,972,892.29) | 466,645.76 | 244,782,302.08 |
| | | | | - | - | | | | | | 245,248,947.84 |
| | | | | | | | | | | | 244,782,302.08 |

### ADMINISTRATIVE APPEAL
### BEFORE THE DIVISION OF MEDICAID OFFICE OF APPEALS
### OFFICE OF THE GOVERNOR, STATE OF MISSISSIPPI

IN RE:  **Request for Appeal and Formal Hearing Dated October 10, 2025**
**Greenwood Leflore Hospital (Provider No. 00020025)**

---

## APPELLANT'S VERIFIED MOTION FOR STAY RECOUPMENT PENDING APPEAL

## URGENT AND NECESSITOUS – EXPEDITED CONSIDERATION REQUESTED

---

Appellant Greenwood Lefore Hospital ("GLH") files this Motion to Stay Recoupment Pending Appeal and sets forth as follows:

1.  GLH is a Medicaid-participating hospital located in Greenwood, Mississippi, and is a Medicaid-participating hospital providing services to Medicaid participants in GLH's service area, which generally is in the central Mississippi Delta including Leflore, Holmes, Sunflower, Carroll, and Montgomery counties.

2.  As a Medicaid-participating hospital, GLH participates in the Mississippi Division of Medicaid's (the "Division") Mississippi Hospital Access Program ("MHAP"), which was created by the Mississippi Legislature in Miss. Code Ann. § 43-13-117(A)(18)(c) "for the purpose of protecting patient access to hospital care through hospital inpatient reimbursement programs provided in this section designed to maintain total hospital reimbursement for inpatient services rendered by in-state hospitals. . . at the maximum levels permissible under applicable statutes and regulations."

3.  Under the MHAP program, the State of Mississippi provides supplemental MHAP payments to Medicaid-participating hospitals like GLH. The State's portion of the MHAP program is funded by increased hospital taxes as set forth in Miss. Code Ann. § 43-13-145(a).

4.  For State Fiscal Year 2024, which ran from July 1, 2023, through June 30, 2024,



the Centers for Medicare & Medicaid Services ("CMS") approved a Section 438.6(c) Preprint ("the Preprint"), which amended the basis for calculating MHAP payments, generally, from the difference between Medicaid rates and Medicare rates to the difference between Medicaid rates and average commercial rates. *See* Exhibit C.[1] Under this Preprint, interim payments were made during State Fiscal Year 2024 using patient encounters from State Fiscal Year 2022. The modification provided that these interim payments would be reconciled during May 2025 based upon actual patient encounters during State Fiscal Year 2024.

5.      Due to financial challenges outside of GLH's control, including recovery from the COVID-19 pandemic, GLH was forced to reduce services and costs during 2022 and 2023. Consequently, GLH's actual patient encounters in State Fiscal Year 2024 were significantly reduced from GLH's patient encounters in State Fiscal Year 2022, upon which the Division based GLH's State Fiscal Year 2024 interim MHAP payments.

6.      On June 23, 2025, the Division published the results of the Division's preliminary reconciliation of State Fiscal Year 2024 MHAP payments. Due to the significant difference in GLH's patient encounters in State Fiscal Year 2022 and GLH's actual patient encounters for State Fiscal Year 2024, this June 3, 2025, preliminary reconciliation of GLH's State Fiscal Year 2024 MHAP payments showed that GLH owed $5,518,929 in overpayments. *See* Exhibit D.[2]

7.      Promptly after learning of the Division's preliminary recoupment determination, GLH initiated discussions with the Division regarding the significant impact that this recoupment would have on GLH's ability to remain financially viable, operational, and providing services to Medicaid beneficiaries in GLH's service area. *See* Exhibit E.

---

[1] All exhibits are attached to GLH's appeal and request for hearing dated October 9, 2025.

[2] During September 2025, GLH was notified that its SFY 2026 MHAP payments will be reduced by approximately $4.3 million, bringing GLH's total payment reduction to approximately $9.8 million.

2

8.      On June 30, 2025, GLH met with representatives of the Division to request the Division's consideration of alternatives to the proposed recoupment. As a result of this meeting, the Division agreed to pause recoupment of the State Fiscal Year 2024 MHAP payments for sixty (60) days to allow GLH to prepare and propose a recoupment plan to the Division. GLH agreed to refrain from filing an administrative appeal during the pause. *Id.*

9.      On August 25, 2025, GLH proposed a recoupment plan that would allow GLH to remain financially viable while simultaneously permitting the Division to recoup the full $5,518,929 in State Fiscal Year 2024 MHAP overpayments. As a part of this plan, GLH requested that the Division stay the recoupments for the remainder of State Fiscal Year 2026, with the outstanding balance of overpayments to be recouped thereafter in twenty-four (24) equal monthly payments, with these monthly payments beginning October 1, 2026. GLH explained to the Division that, if this proposal were not accepted by the Division, GLH would face closure by December 31, 2025, and would have to give notice of employee layoffs pursuant to the Worker Adjustment and Retraining (WARN) Act, 29 U.S.C. §2101, *et seq.*, by November 1, 2025. *See* Exhibit B.

10.     On September 9, 2025, GLH supplemented its proposal with revised financial projections and a revised recoupment schedule that provided for twelve (12) monthly payments of $75,000, beginning October 1, 2025, followed by twenty-four (24) monthly payments of $146,845.56. Under this supplemental plan, GLH would make $4,424,293 in total payments to the Division. GLH explained again that, if this supplemental proposal were not granted, GLH would face closure. *See* Exhibit F. This proposal was again supplemented on September 18, 2025. *See* Exhibit H.

3

11.     On September 9, 2025, the Division notified GLH that the Division intended to resume the recoupments no later than September 25, 2025. *See* Exhibit G. On September 17, 2025, the Division issued a revised notice of State Fiscal Year MHAP-CMS Approved Preprint and Payment Models. In this revised model, the Division announced that it would recoup $900,000 per quarter from payments the Division otherwise would have made to GLH ("the Decision"). Under this recoupment schedule as set forth in the Division's revised model, GLH will face closure. *See* Exhibit A.

12.     GLH has filed the present appeal contesting the Division's rejection of GLH's proposed recoupment schedules. While this appeal is pending, the Division continues to recoup payments the Division otherwise would have made to GLH. Presently, the Division has recouped $1,994,636, with the recoupments continuing unabated. Consequently, while this appeal is pending, GLH faces the risk of closure.

13.     For this reason, GLH files the present motion, seeking a stay of the Division's recoupment during the pendency of this appeal. A stay is necessary to prevent irreparable harm to GLH that would occur if GLH were to be forced to close while this appeal is pending. The Mississippi Supreme Court has previously held that recoupments that financially hamper a Medicaid-participating healthcare provider's ability to provide services to Medicaid beneficiaries constitutes irreparable harm. *United Healthcare of Mississippi Inc. v. Mississippi's Cmty. Mental Health Commissions*, 335 So. 3d 1055, 1061 (Miss. 2022).[3] Certainly, if a reduction in services to Medicaid beneficiaries constitutes irreparable harm, then the outright closure of a Medicaid-

---

[3] "Those cuts would eliminate approximately 100,000 patient visits per year, causing irreparable harm to the CMHCs and the patients they serve. The decrease in funding would cause staff layoffs, even further weakening the CMHCs' ability to serve its patients. The 5 percent reduction in payments would severely hamper all CMHCs' ability to fulfill their mission of providing necessary mental health services to the residents of those counties served."

4

participating hospital like GLH would as well. Along similar lines, the Southern District of Mississippi has held that state action that results in the closure of a healthcare provider is irreparable harm. *Jackson Womens' Health Org. v. Currier*, 940 F. Supp. 2d 416, 423-424 (S.D. Miss. 2013), *order clarified sub nom. Jackson Women's Health Org. v. Mary Currier, MD., M.P.H.*, No. 3:12CV436-DPJ-FKB, 2013 WL 12122002 (S.D. Miss. Aug. 13, 2013), and *aff'd as modified sub nom. Jackson Women's Health Org. v. Currier*, 760 F.3d 448 (5th Cir. 2014).

14.  Just like in *United Healthcare of Mississippi Inc.*, not only would GLH be irreparably harmed, but so would the Medicaid beneficiaries in GLH's service area. GLH is the only Medicaid-participating hospital in Leflore County or Carroll County. For those Medicaid beneficiaries residing there, the closure of GLH would deprive those beneficiaries of readily accessible necessary healthcare services available through the Medicaid program. The impact of this irreparable harm is worsened by the fact that GLH's service area is in the central Mississippi Delta, one of the areas in Mississippi where the need for readily accessible Medicaid services is the highest.

15.  The Division recognized GLH's importance and the harm that its closure would cause in the Preprint, in which it explained:

> 34 of Mississippi's 74 rural hospitals are struggling financially and at risk of closure. Twenty-five of those are at risk of closing immediately, or within the next couple of years." The attached article labeled as "Mississippi hospital lays off dozens of workers" specifically highlights one of the hospitals at risk of closure. Greenwood Leflore Hospital, located in Greenwood, MS, is a significant provider of services to Medicaid beneficiaries. This hospital provides greater than twenty percent of their total medical services to Medicaid beneficiaries .... The additional strain imposed by COVID-19 only exacerbates financial challenges for Mississippi hospitals. Based on CMS guidance issued, the state directed payment at the average commercial rate is a reasonable level for reimbursement with the state's current limitation to 80% of the ACR gap.

*See* Exhibit C, at 11.

5

16. Likewise, the Division would also be irreparably harmed upon the closure of GLH. The Division's ability to seek recoupment of the State Fiscal Year 2024 MHAP overpayments is contingent on GLH staying open, operational, and financially viable. If GLH were to close, the Division's sole source of recoupment of the State Fiscal Year 2024 MHAP overpayments, future payments to be made by the Division to GLH, would cease to exist, and the Division would be left without recourse.

17. The requested stay is authorized and required by Miss. Code Ann. §43-13-121(j), which authorizes the Division "to collect any overpayments to providers sixty (60) days after the conclusion of any administrative appeal unless the matter is appealed to a court of proper jurisdiction and bond posted." The authority to structure recoupments to minimize the impact on participating hospitals is recognized in the SFY 2026 Preprint, which states that "[i]f necessary, the Division may extend the payment reconciliation amount over more than one month." *See* Exhibit J.

18. A stay of the recoupments is also appropriate to preserve GLH's due process rights. Both the United States Constitution and the Mississippi Constitution guarantee a right to due process before an administrative agency. *See* U.S. Const. amend. XIV § 1; Miss. Const. art. 3, § 14. GLH's due process rights require that GLH be given both notice and an opportunity to be heard, *see Booth v. Miss. Emp't Sec. Comm'n*, 588 So.2d 422, 428 (Miss. 1991), with this administrative appeal being required to be "conducted in a fair and impartial manner, free from any just suspicion or prejudice, unfairness, fraud, or oppression." *CLC of Biloxi, LLC v. Mississippi Div. of Medicaid*, 238 So. 3d 16, 23 (Miss. Ct. App. 2018). GLH's due process rights cannot be satisfied if the oppressive weight of the Division's current recoupment schedule results in GLH being forced to close before the merits can be reached in this appeal.

6

19.     In further support of this motion, GLH adopts and incorporates its appeal filed in this matter and exhibits thereto.

Accordingly, for these reasons, GLH respectfully requests that the recoupments be stayed during the pendency of this appeal.

RESPECTFULLY SUBMITTED, this the 10th day of October, 2025.

                          **GREENWOOD LEFLORE HOSPITAL**


                    By:     /s/ George H. Ritter
                            GEORGE H. RITTER (MSB #5372)
                            BEAU M. BETTIGA (MSB #105905)
                            WISE CARTER CHILD & CARAWAY, P.A.
                            401 East Capitol Street, Suite 600 (39201)
                            Post Office Box 651
                            Jackson, MS 39205
                            Telephone: 601-968-5500
                            Facsimile: 601-967-5593
                            ghr@wisecarter.com
                            bmb@wisecarter.com
                            *Attorneys for Appellant Greenwood Leflore Hospital*

## VERIFICATION

STATE OF MISSISSIPPI

COUNTY OF HARRISON

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for the jurisdiction aforesaid, the within named Gary Marchand, hereinafter being by me first duly sworn, stated that he is the interim Chief Executive Officer for Greenwood Leflore Hospital, and that the information contained in this *Verified Motion For Stay Recoupment Pending Appeal* is true and correct to the best of his information, knowledge and belief and that he signed this *Verification* for and on behalf of Greenwood Leflore Hospital for the purposes therein stated after being duly authorized so to do.

SWORN TO AND SUBSCRIBED BEFORE ME, this the 9th day of October, 2025.

NOTARY PUBLIC

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID# 472087
HANNAH VOLENTINE
Commission Expires
June 10, 2028
HARRISON COUNTY

8

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Greenwood Leflore Hospital

**DEFENDANTS**

State of Mississippi/Division of Medicaid and Cindy H. Bradshaw, in her official capacity as the Executive Director

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
George Howard Ritter, Esq.
Wise, Carter, Child & Caraway, P.A.
P.O. Box 651

Attorneys *(If Known)*
Craig M. Geno, Esq.
Law Offices of Geno and Steiskal, PLLC
601 Renaissance Way, Suite A

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**     **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane     ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product        Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability     ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &        Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| & Enforcement of Judgment | Slander        Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'        Product Liability | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | Liability     ☐ 368 Asbestos Personal | | New Drug Application | ☐ 470 Racketeer Influenced and |
| Student Loans | ☐ 340 Marine        Injury Product | | ☐ 840 Trademark | Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product        Liability | | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | Liability     **PERSONAL PROPERTY** | **LABOR** | Act of 2016 | (15 USC 1681 or 1692) |
| of Veteran's Benefits | ☐ 350 Motor Vehicle     ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle     ☐ 371 Truth in Lending | Act | **SOCIAL SECURITY** | Protection Act |
| ☒ 190 Other Contract | Product Liability     ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal        Property Damage | Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury     ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | ☐ 362 Personal Injury -        Product Liability | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**     **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights     **Habeas Corpus:** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting     ☐ 463 Alien Detainee | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment     ☐ 510 Motions to Vacate | | or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/        Sentence | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations     ☐ 530 General | | 26 USC 7609 | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -     ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment     **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities -     ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other     ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education     ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding    ☒ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 157; 28 U.S.C. 1334; 28 U.S.C. 1452

Brief description of cause:
State court appeal of an administrative decision of Medicaid

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☐ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE   5/11/2026

SIGNATURE OF ATTORNEY OF RECORD   *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

AMSSDC-6008535

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

IN RE:     **GREENWOOD LEFLORE HOSPITAL**                          **CHAPTER 9**

       **DEBTOR(S)**                                                **CASE NO. 26-11337-SDM**

---

**GREENWOOD LEFLORE HOSPITAL**                                    **APPELLANT**

**VS.**                                    **CIVIL ACTION NO. 3:26-cv-00336-KHJ-MTP**

**STATE OF MISSISSIPPI/DIVISION OF MEDICAID
AND CINDY H. BRADSHAW, IN HER OFFICIAL
CAPACITY AS THE EXECUTIVE DIRECTOR OF
THE MISSISSIPPI DIVISION OF MEDICAID**                           **APPELLEES**

---

## MEDICAID'S MOTION TO
## REFER CIVIL ACTION TO BANKRUPTCY COURT

---

COME NOW the State of Mississippi/Division of Medicaid and Cindy H. Bradshaw, in her Official Capacity as the Executive Director of the Mississippi Division of Medicaid (the "Appellees" or "Medicaid"), by and through undersigned counsel, in the above styled and numbered cause, and file this their *Motion to Refer Civil Action to Bankruptcy Court* (the "Motion"), and in support thereof would respectfully show as follows, to-wit:

1.     An appeal of an administrative decision of the Division of Medicaid was commenced by the filing of a Notice of Appeal on November 10, 2025, in the Chancery Court of the First Judicial District of Hinds County, Mississippi, Civil Action 25-cv-01314 (the "Chancery Case") by Greenwood Leflore Hospital (the "Appellant") as Appellant, against the State of Mississippi/Division of Medicaid and Cindy Bradshaw as Appellees.  On the same date, the

# EXHIBIT "D"

Appellant filed a Motion to Stay Recoupment seeking injunctive relief to prohibit Medicaid from recouping funds it owes the Appellant, "against" funds that the Appellant owes Medicaid.

2.      The Chancery Court entered its Memorandum Opinion on March 11, 2026, which purported to enjoin Medicaid from recouping funds it owes to the Appellant "against" funds owed by the Appellant to Medicaid, after certain administrative action had been taken. A copy of the Chancery Court's "Memorandum Opinion and the Court's Finding of Facts and Conclusions of Law on Appellant's Emergency Motion to Stay Recoupment" (the "Chancery Court Opinion") is attached, incorporated by reference, and marked as **Exhibit "A"**. The Chancery Court held that the Appellant was entitled to a stay of the recoupments as a matter of right pursuant to Miss. Code Ann. § 43-13-121(1)(j), and the Appellant was entitled to a stay pursuant to Rule 8(b)(1) of the Mississippi Rules of Appellate Procedure. Chancery Court Op., at p. 4. The Chancery Court held that the Appellant had met its burden for an injunction against Appellee's recoupment efforts. First, the Appellant established a likelihood of success on the merits by showing that Appellee's own Administrative Code permitted [Appellant] to appeal Appellee's decision to deny [Appellant's] request for a revised MHAP recoupment schedule. Chancery Court Op, at p. 5. Second, the Appellant showed irreparable harm because without a stay, the Appellant faced an imminent closure. Chancery Court Op., at p. 6. Third, the public interest weighed in favor of a stay against the Appellee because Medicaid beneficiaries would be denied accessible and necessary medical services if the Appellant were to close. Chancery Court Op., at p. 7-8.

3.      The funds Medicaid sought to recoup are not routine ordinary claims payments for treatment of patients. Medicaid continues to pay claims for medical services for patients who are Medicaid beneficiaries. Rather, the funds Medicaid sought to recoup are funds that are part of a federally funded program called Mississippi Hospital Access Program known as MHAP. A copy

-2-

of a general description of MHAP is attached, incorporated by reference, and marked as **Exhibit**

**"B"**, for the Court's benefit in considering the significant issues presented here.  This

underscores the need for one court to oversee the bankruptcy reorganization and operations while

considering, at the same time, Medicaid's interest in properly administering its MHAP

obligations.

4.     The Appellant's Chancery Case claims against Medicaid allegedly arise out of an

administrative appeal by the Appellant, seeking injunctive relief to avoid the recoupment of

funds that Medicaid had begun.  Generally, orders and judgments entered in pending state court

actions, prior to the filing of a voluntary petition in bankruptcy, remain binding absent further

action being taken in the bankruptcy court.

5.     On April 15, 2026 (the "Petition Date"), the Appellant/Debtor filed its voluntary

petition for relief under Chapter 9 of Title 11 (the "Bankruptcy Code") in the United States

Bankruptcy Court for the Northern District of Mississippi (the "Bankruptcy Court").

6.     Pursuant to applicable provisions of Chapter 9 of the Bankruptcy Code, the

Appellant/Debtor is operating its business and managing its affairs in its Chapter 9 case.

7.     The United States District Court/Bankruptcy Court have original jurisdiction over

this action pursuant to 28 U.S.C. § 1452(a) (Removal of Claims Related to Bankruptcy Cases).

8.     The Chancery Case litigation now involves fundamental bankruptcy issues and

questions, which include, but are not limited to: whether Medicaid may continue to recoup

(which is not barred by the automatic stay) claims that are owed to it by the Appellant "against"

claims and obligations it owes the Appellant; the automatic stay of 11 U.S.C. § 362; use of

property of the bankruptcy estate; the continuation of injunctive relief despite an insufficient

bond; claims by Medicaid against the Appellant/bankruptcy estate; adjustment of the

debtor/creditor relationship between Appellant and Medicaid; release issues which may or may not entitle Appellant to any of the funds Medicaid seeks to recoup; federal questions regarding a joint federal and state program governed by federal regulations (MHAP); regulations regarding the functioning and funding of the MHAP; the relationship Medicaid has through MHAP with all other participating hospitals in this state, and numerous related issues. It is noted that Medicaid continues to process, and pay, claims for patient treatment rendered by the Appellant, separate and apart from the injunction issues related to MHAP.

9. The issues that exist in the underlying state court matters (as to which the Bankruptcy Court has "core" jurisdiction) are inextricably intertwined with the bankruptcy case, and litigation of those issues in separate courts is likely to lead to multiple, inconsistent, duplicative, or otherwise problematic rulings when the cases and issues are tried in multiple courts.

10. Accordingly, these matters described herein are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (F), (K), (M), (N) and (O), related statutes, related rules and various orders of reference.

11. Alternatively, this action is a claim or cause of action arising in or related to a case under Title 11 of the United States Code over which the United States District Court/Bankruptcy Court hold original, but not exclusive, jurisdiction pursuant 28 U.S.C. § 1334(b).

12. Moreover, this Court's standing order of reference provides reasoning and authority for this Honorable Court to refer or transfer this cause to the Bankruptcy Court. A copy of the United States District Court for the Southern District of Mississippi's "Internal Rule 1 - Assignment of Cases to Judges and Magistrate Judges" is attached, incorporated by reference, and attached as **Exhibit "C"**. It appears to be mandatory.

13.    Since the Bankruptcy Court has core jurisdiction in the underlying bankruptcy case, as to the debtor/creditor relationship in general, the Bankruptcy Court is particularly well situated to litigate all of the issues that are pending in the underlying state court matter.

14.    Medicaid will also submit its memorandum brief in support of this Motion.

WHEREFORE, PREMISES CONSIDERED, Medicaid respectfully prays that upon a hearing hereof, this Honorable Court will refer or transfer this cause to the United States Bankruptcy Court for the Northern District of Mississippi. Medicaid also prays for all general relief.

THIS, the 29th day of May, 2026.

Respectfully submitted,

STATE OF MISSISSIPPI/DIVISION OF MEDICAID AND CINDY H. BRADSHAW, IN HER OFFICIAL CAPACITY AS THE EXECUTIVE DIRECTOR OF THE MISSISSIPPI DIVISION OF MEDICAID

By Their Attorneys,

LAW OFFICES OF GENO AND STEISKAL, PLLC

By:_____
        Craig M. Geno

-5-

OF COUNSEL:

Craig M. Geno; MSB No. 4793
Christopher J. Steiskal, Sr.; MSB No. 101654
LAW OFFICES OF GENO AND STEISKAL, PLLC
601 Renaissance Way, Suite A
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
csteiskal@cmgenolaw.com

-and-

Suzanne C. Hudson, Esq., MSB No. 103079
Laura M. Glaze, Esq., MSB No. 100625
Mississippi Division of Medicaid
550 High Street, Ste 1000
Jackson, MS 39201
T: 601-359-6462
Suzanne.Hudson@medicaid.ms.gov
Laura.Glaze@mediciad.ms.gov
N:\Firm Data\Users\Bankrupt\MS Division of Medicaid (Greenwood Leflore Bkcy)\Adv. Proc\USDC Removal\Pleadings\Mot to Refer to Bankruptcy Court 5-15-26.wpd

## CERTIFICATE OF SERVICE

I, Craig M. Geno, do hereby certify that I have caused to be served this date, via

electronic transmission, a true and correct copy of the above and foregoing to the following:

George Howard Ritter, Esq.
ghr@wisecarter.com

Douglas C. Noble, Esq.
dnoble@mmqnlaw.com

THIS, the 29th day of May, 2026.

Craig M. Geno

IN THE CHANCERY COURT OF THE FIRST JUDICIAL DISTRICT OF
HINDS COUNTY, MISSISSIPPI

FILED
MAR 1 1 2026
EDDIE JEAN CARR, CHANCERY CLERK
BY_____ D.C.

GREENWOOD LEFLORE HOSPITAL                              APPELLANT

VS.                                CAUSE NO. G2025-1314 T/1

MISSISSIPPI DIVISION OF MEDICAID AND                   APPELLEES
CINDY BRADSHAW, IN HER OFFICIAL CAPACITY
AS EXECUTIVE DIRECTOR OF THE MISSISSIPPI
DIVISION OF MEDICAID

## MEMORANDUM OPINION OF THE COURT AND THE COURT'S FINDING OF FACTS AND CONCLUSIONS OF LAW ON APPELLANT'S EMERGENCY MOTION TO STAY RECOUPMENT

**THIS CAUSE** came before this Court on the 11th day of March, 2026, where this Court

has received the Appellant's, Greenwood Lefore Hospital (GLH) Verified Emergency Motion

to Stay Recoupment, and this Court instructed both GLH and Appellees, Mississippi

Division of Medicaid (Division), to file with this Court their competing Finding of Facts and

Conclusions of Law on the issue of recoupment of funds based upon GLH's Verified

Emergency Motion to Stay Recoupment, and this notice was through an email from this

Court's administrator  on March 5, 2026.  This Court has received submissions from GLH

and the Division, and this Court, after receiving GLH's and the Division's submissions, now

enters its Memorandum Opinion and Finding of Facts and Conclusion of Law on GLH's

Verified Emergency Motion to Stay Recoupment of certain funds that MDM wished to

recoup, as follows, to-wit:

1

**EXHIBIT "A"**

## FINDING OF FACTS

On June 23, 2025, GLH was informed by the Division of Medicaid (the "Division") that the Division would be "recouping" $5,518,829 in State Fiscal Year 2024 Mississippi Hospital Access Program ("MHAP") payments by withholding future MHAP payments that GLH otherwise receive (the "June 23 Decision"). See Dkt. 4, at 4. On September 17, 2025, the Division rejected GLH's proposed alternative recoupment schedules, which were designed to keep GLH open and viable and thus continuing to receive the same MHAP payments against which the recoupment could be offset (the "September 17 Decision"). GLH sought to appeal the September 17 Decision, but, on October 29, 2025, the Division denied GLH's right to appeal (the "October 29 Final Decision"). See Dkt. #3, at Ex. A.

GLH filed this appeal and the subject motion to stay on November 10, 2025, to address the imminent impact of the Division's decision to recoup $900,000 per quarter from GLH until the total outstanding balance of $3,524,294.41 was recouped. GLH sought a stay of these recoupments because GLH would not be able to stay open without relief.

On December 1, 2025, the Division's Executive Director informed GLH that the Division agreed to pause the recoupments at least until March 2026. On December 12, 2025, the Division informed GLH that the decision to pause the recoupments had been reversed and that GLH's entire MHAP payment due in December would be withheld. Without the December MHAP payment, GLH would be unable to make payroll past December 19, 2025, and forced to close.

In the present motion, GLH asks this Court to stay all recoupments pending this appeal and any administrative appeal conducted on remand. GLH further requests such other equitable relief as the Court deems proper and necessary to provide relief from the irreparable harm caused by the Division's refusal to entertain its administrative appeal.

On December 18, 2025, this Court conducted a hearing, at which the Court heard arguments of counsel and received testimony from GLH. GLH's witness, interim chief executive officer Gary Marchand, testified to GLH's financial condition, the impact of the MHAP recoupments on GLH, GLH's efforts to remain financially viable in the face of these recoupments, and options available to GLH, including leasing or selling the hospital, bankruptcy, and obtaining a bond. Mr. Marchand explained why these options were either not available or would not alleviate GLH's financial crisis.

At the conclusion of the hearing, at the Court's request, the parties negotiated an Agreed Order Regarding Appellant's Motion to Stay Recoupments and Appellees' Motion to Dismiss, which was subsequently entered by this Court. See Dkt. #13.

On March 4, 2026, counsel for GLH emailed the Court to announce that GLH had exhausted all reasonable efforts to obtain a bond or other security instrument to secure repayment of the unpaid balance of GLH's SFY 2024 MHAP overpayment, that, unfortunately, GLH was unable to obtain any such bond or other security instrument, and that good faith negotiations with the Division for an agreement on another option acceptable to the Division to secure GLH's debt had been unsuccessful. GLH, therefore, asks the Court to grant its motion to stay the recoupments pending this appeal.

### CONCLUSIONS OF LAW

GLH is entitled to a stay of the recoupments as a matter of right pursuant to Miss.

Code Ann. Section 43-13-121(1)(j) (emphasis added), which provides in relevant part:

> The division shall be authorized to collect any overpayments to providers sixty (60)
> days *after the conclusion of any administrative appeal unless the matter is
> appealed to a court of proper jurisdiction* and bond is posted.

Miss. Code Ann. Section 43-13-121(1)(j) (emphasis added). As explained below, GLH

requests this Court to set bond at a reasonable amount. Subject to the Court's ruling on

that issue, the Court finds that GLH is entitled to a stay of the recoupments pending this

appeal pursuant to Section 43-13-121(l)(j).

In addition to this statutory right to a stay, GLH is entitled to a stay pursuant to MRAP

8(b)(1). Trial courts sitting as appellate tribunals follow the Mississippi Rules of Appellate

Procedure to the extent applicable. *Pilate v. Miss. Dept. of Employment*, 282 So.3d 566,

569 n. 4 (Miss. 2019) ("it seems every few years this Court rules in another case that the

Rules of Appellate Procedure apply to the trial clerks and trial courts when a trial court is

sitting as an appellate court"); see *Van Meter v. Alford*, 774 So.2d 430, 432 (Miss. 2000)

(appeal from county court to circuit court governed by MRAP). Relevant here, MRAP 9(b)(1)

provides:

> Application for a stay of the judgment or the order of a trial court pending appeal
> or for approval or disapproval of a contested supersedeas bond or for an order
> suspending, modifying, restoring, or granting an injunction during the pendency
> if an appeal must ordinarily be made in the first instance to the trial court. The
> court shall require the giving of security by the appellant in such form and in such
> sum as the court deems proper, and for good cause shown may set a supersedeas
> bond in an amount less than the 125 percent required in cases under Rule 9(a).

GLH has met the requirements of MRAP 8(b)(1).  *First*, GLH moved for a stay of the recoupments in the administrative proceedings below.  When the Division rejected GLH's appeal, it denied this motion as moot.  *See* Dkt. #3, at Ex. A.  Second, GLH has requested the Court to set bond at a reasonable amount that GLH can obtain without sacrificing its healthcare mission.  *Third*, and most important, GLH has shown that it will be forced to close if a stay is not granted.  Certainly, this constitutes good cause for relief under MRAP 9(b)(1).  For these reasons, GLH's motion to stay should be granted pursuant to MRAP 8(b)(1).

The Division argues GLH's motion as a motion for a preliminary injunction under Miss. R. Civ. P. 65.  Without deciding whether GLH is required to meet the elements of such a motion to receive the relief requested, the Court finds that GLH has met those elements in this instance.

### 1. **Substantial Likelihood of Success**

GLH has established the likelihood of success on the merits of this appeal by showing that the Division's own Administrative Code permitted GLH to appeal the Division's decision to deny GLH's request for a revised MHAP recoupment schedule.  Importantly, this is not an appeal of the June 23 Decision or the September 17 Decision.  Instead, this is an appeal of the October 29 Final Decision, in which the Division refused to grant GLH an appeal of the September 17 Decision.

According to Part 300, Rule 3.1(A)(2) of the Division's Administrative Code, "[t]he Mississippi Division of Medicaid conducts provider hearings for the following reasons:

...[t]he provider is dissatisfied with a Final Agency Action of the Division of Medicaid **relating to ... withholding of funds resulting from overpayments."** See 23 Miss. Admin. Code Pt. 300, R. 3.1(A)(2). The October 29 Final Decision, denying GLH's right to appeal the rejection of GLH's proposed alternative recoupment schedules, is plainly "relat[ed] to ... withholding of funds resulting from overpayments," and, therefore, falls squarely within the categories of appealable actions under Rule 3.1(A)(2). See 23 Miss. Admin. Code Pt. 300, R. 2.1(A)(2).

GLH timely requested an appeal of the Division's September 17 Decision. See Dkt. 4-1. Rather than provide the hearing and due process rights required by its own Administrative Code, the Division summarily denied GLH these rights. Dkt. 4-3. That denial – and not the underlying repayment schedule – is the subject of this appeal.

Because the Division's own Administrative Code unambiguously grants GLH the right to appeal decisions "relating to ... withholding of funds resulting from overpayments," and because GLH's underlying request to appeal the September 17 Decision clearly fell within that category, GLH has shown a substantial likelihood of success on its argument that the Division's denial of GLH's appeal rights were arbitrary and capricious, exceeded the scope of the Division's authority, and violated the GLH's appeal and due process rights. *Mississippi Div. of Medicaid v. All. Health Ctr.*, 174 So.3d 254, 258 (Miss. 2015). Thus, GLH has established "a substantial likelihood of success on the merits" in the present appeal, justifying a stay of the MHAP recoupments pending this appeal and any administrative appeal conducted on remand. *Mississippi State Bd. of Contractors v. Hobbs Constr., LLC,*

291 So.3d 762, 774 (Miss. 2020).  This factor weighs in favor of granting GLH's requested

stay.

## 2. **Irreparable Harm.**

GLH has established irreparable harm – without a stay, GLH faces imminent closure.

See Dkt. 4-1; *see also* Jackson Womens' Health Org. v. Currier, 940 F. Supp. 2d 416, 423-

424 (S.D. Miss. 2013), *clarified sub nom. Jackson Women's Health Org. v. Mary Currier, MD.,*

*M.P.H.*, No. 3:12CV436-DPJ-FKB, 2013 WL 12122002 (S.D. Miss. Aug. 13, 2013), *aff'd as*

*modified sub nom. Jackson Women's Health Org. v. Currier*, 760 F.3d 448 (5th Cir. 2014)  (the

closure of a medical provider is irreparable harm).

Based on GLH's financial projections, DOM's recoupments will render GLH unable to

fund its payroll without a stay.  GLH will be required to issue notices under the Worker

Adjustment and Retraining (WARN) Act, 29 U.S.C. Section 2101, et seq., to its employees

informing them that GLH will close and that all employees will be laid off. *Id*.  GLH has

clearly shown irreparable harm in the absence of a stay.  This factor weighs in favor of

granting GLH's requested stay.

## 3. **The Public Interest**

Instead of just "a loss of money" as argued by the Division, see Dkt. 7, at 9, GLH's

closure will have immediate and long-lasting consequences not just for GLH, but for those

GLH employees laid off, for those Medicaid beneficiaries in GLH's service area who will be

deprived of accessible and necessary medical services, and for the Division itself, which

will lose the source of funds from which the recoupment is collected (future payments to

GLH), none of which can be redressed by GLH reopening at some undefined point in the future. This factor weighs in favor of granting GLH's requested stay.

### 4. **Balancing the potential harm**

The potential harm to the Division and the public at large align with the harm to GLH. GLH, the Division, and the public will all be harmed by the commencement of the Division's accelerated recoupment schedule, as GLH's closure harms all three. *Hobbs Constr., LLC,* 291 So.3d at 774 (describing elements that "injury to the plaintiffs outweighs the harm an injunction might do the defendants" and that an injunction "is consistent with the public interest"). This factor weighs in favor of granting GLH's requested stay.

### 5. **Bond**

MRAP 8(b)(1) allows an appellate court to set bond "in such amount as the court deems proper, and for good cause shown may set supersedeas bond in an amount less than the 125 percent required in cases under Rule 8(a)." GLH has shown good cause to set the bond in an amount that GLH can feasibly obtain while continuing to meet its healthcare-related expenses. A bond for 125% of $3.5 million is likely impossible for GLH to obtain. Indeed, GLH has tried but been unable to obtain such a bond. Even if GLH could obtain such a bond, doing so would divert valuable resources that would be better allocated to ensuring GLH's continued ability to care for its patients. Rather than create a procedural hurdle that will be difficult for GLH to meet and which heightens the Division's risk of receiving a shortfall to a surety, this Court will set a nominal bond, which will allow this matter to proceed to the merits.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the 2024 MHAP recoupments are stayed pending this appeal and any administrative appeal that may occur if this Court grants relief to GLH, provided that GLH post a cash bond in the amount of $50,000 within thirty (30) days of the date of this Order.

**IT IS FURTHER ORDERED** that counsel for the parties shall confer in good faith to submit an Agreed Scheduling Order for the completion of this appeal.

**SO ORDERED**, this the _____ day of March, 2026.

_____
J. DEWAYNE THOMAS, CHANCELLOR

MEMORANDUM

**Mississippi Hospital Access Program & Greenwood Leflore Hospital**

MISSISSIPPI DIVISION OF
MEDICAID

### General Authority of DOM

The Division of Medicaid (Division or DOM) administers Medicaid and Children's Health Insurance Program (CHIP) benefits provided for in:

- Title 42, Chapter 7, Subchapters XIX and XXI of the United States Code
- Title 43, Chapter 13 of the Mississippi Code

Administration of those benefits involves reimbursing healthcare providers for medical services provided to the Division's beneficiaries, among other things.

### Direct Reimbursement for Services

Reimbursement is made through two models: (1) a fee-for-service ("FFS") model in which providers submit claims for reimbursement directly to the Division for payment, and (2) a managed care model in which the Division pays a private managed care organization ("MCO") a predetermined monthly fee for each of the Medicaid beneficiaries enrolled with that MCO and the MCO is then responsible to reimburse all healthcare providers for services rendered to those beneficiaries.[1]

Payments made under either model represent *direct reimbursement* for services rendered.  Providers, such as Greenwood Leflore Hospital (GLH), submit claims for reimbursement to the Division and the three MCOs when services are rendered to an enrolled beneficiary.  Claims are processed and paid on a weekly basis.

---

[1] For reference, Medicaid Managed Care is analogous to Medicare Advantage.  In both programs, the agency responsible for administering benefits pays what is essentially an insurance premium to a private sector health insurer.  That insurer is responsible to reimburse providers for all covered services and is at-risk of financial loss if the amount of provider reimbursement exceeds the amount of income received in "premiums."

1 of 17
# EXHIBIT "B"

**Mississippi Hospital Access Program (MHAP)**

The Division also administers the Mississippi Hospital Access Program (MHAP), which is a state directed payment program authorized by:

- Miss. Code Ann. § 43-13-117
- 42 C.F.R. § 438.6(c)

MHAP is designed to support access to inpatient and outpatient hospital services and to incentivize quality improvement efforts by the participating hospitals.  Payments under the MHAP program are *supplemental* in nature and *do not represent* direct reimbursement for services rendered to Medicaid beneficiaries.

The Centers for Medicare & Medicaid Services (CMS)[2] must approve the MHAP program on an annual basis.  CMS provides a template – called a "preprint" – for all states to use to submit their state directed payment programs for approval.  The CMS-approved preprint is the governing document for each year's payment model and is published on the Division's website[3] and CMS' website.[4]

The Division has chosen to administer MHAP on the State Fiscal Year (SFY) – July 1 to June 30 – which is also referred to as the "rating period." There are issues related to the SFY 2024, SFY 2025, and SFY 2026 MHAP payments made to GLH which may be impacted by GLH's bankruptcy. To understand these issues, it is important to understand how the Division calculates MHAP payments for each hospital.

---

[2]  CMS is a sub-agency of the United States Department of Health and Human Services and is the Division's federal funding partner.

[3] https://medicaid.ms.gov/value-based-incentives-archive/

[4] https://www.medicaid.gov/medicaid/managed-care/guidance/state-directed-payments/approved-state-directed-payment-preprints

**I.      MHAP Funding**

In Mississippi, the federal government funds approximately 75% of all medical payments made under the Medicaid program.  MHAP is eligible for that same level of federal financial participation.  The available amount of federal funding for state directed payments, such as MHAP, is limited only by (1) designing a payment model that meets CMS' requirements for approval and (2) the state's ability to generate the state portion of those payments ("the state share").

The state share of MHAP payments is primarily funded through a hospital assessment authorized under Miss. Code Ann. § 43-13-145.[5] The basis of the assessment is defined in statute and does not directly correspond with a hospital's ability to receive MHAP payments.  Mississippi is responsible for approximately 25% of MHAP payments and the revenue generated through the hospital assessment is used to meet that obligation.

**II.      MHAP Payment Calculations**

The total dollar amount of MHAP is calculated using the state's payment model approved by CMS in the preprint.  The exact dollar amount changes annually.  Hospitals are eligible for a comparative amount of MHAP funds based on each hospital's utilization in the managed care program.

Each SFY, 100% of MHAP funds are distributed to participating hospitals as interim payments based on the utilization data from a prior year. (For SFY 2024 interim payment calculations, the Division used SFY 2022 actual utilization data.)  After the actual utilization data for the SFY is available, the Division is required by CMS to reconcile the interim

---

[5] Funds for the state share are also generated through specific legislative appropriations and intergovernmental transfers.  This explanation of the MHAP funding is informational only and not relevant to the issues which are impacted by the GLH bankruptcy.

payments.  Some hospitals will have been underpaid in initial payments if their utilization had increased, while others will have been overpaid if their utilization had decreased.  The Division must appropriately redistribute 100% of the MHAP funds.

The following example is overly simplified, but illustrative, of how the amount of MHAP funds each hospital is eligible to receive is determined.[6]  As a hypothetical example, if the state has $100,000,000 available in total MHAP funds and five participating hospitals, the MHAP funds available to each hospital may be calculated as follows:

| | Total Managed Care Encounters | Percentage of Statewide Utilization | MHAP Funds Hospital is Eligible to Receive |
|---|---|---|---|
| Hospital A | 350 | 3.38 % | $3,381,642.51 |
| Hospital B | 5750 | 55.56 % | $55,555,555.56 |
| Hospital C | 1200 | 11.59 % | $11,594,202.90 |
| Hospital D | 300 | 2.90 % | $2,898,550.72 |
| Hospital E | 2750 | 26.57 % | $26,570,048.31 |
| **Statewide Total** | **10,350** | **100 %** | **$100,000,000.00** |

This distribution is complicated because federal regulation requires that MHAP payments be based on utilization for the "rating period" (or SFY) in which they are made. Hospitals have a "runout period" of 180 days after the date of service to file a claim with an MCO.  Thus, the Division does not have the full set of utilization data available until the 180-day runout period has passed. This is an example of that timeline for SFY 2024:

---

[6] For actual calculations, refer to the MHAP payment model.  For purposes of this memorandum, the simplified hypothetical explains what created GLH's debt to the Division. For the sake of full disclosure, MHAP distribution is calculated in three ways:

- Each hospital is paid a "uniform dollar" amount for each Medicaid Managed Care inpatient discharge (*i.e.*, every hospital is paid $X for each discharge, regardless of acuity or length of stay.)

- Each hospital is paid a "uniform percentage" increase for each Medicaid Managed Care encounter (*i.e.*, every hospital is paid X% on top of the direct reimbursement for each outpatient encounter.)

- QIPP funds are proportionally calculated using the amount of MHAP funds from the prior SFY. (See III. The Two Components of MHAP, below, for an explanation of QIPP.)

| | Rating Period<br>State Fiscal Year 2024<br>July 1, 2023 to June 30, 2024 | Runout Period<br>180 days following<br>June 30, 2024 | ***** | |

(Months shown: January 2023, February 2023, March 2023, April 2023, May 2023, June 2023, July 2023, August 2023, September 2023, October 2023, November 2023, December 2023, January 2024, February 2024, March 2024, April 2024, May 2024, June 2024, July 2024, August 2024, September 2024, October 2024, November 2024, December 2024, January 2025, February 2025, March 2025, April 2025, May 2025, June 2025, July 2025, August 2025, September 2025, October 2025, November 2025, December 2025)

***** **January 2025 is the first time the Division has access to a full set of data from SFY 2024.**

As illustrated below, the 180-day claims runout period means that each SFY's runout period overlaps the next SFY.   In fact, the subsequent SFY is always more than halfway over before the Division has a full set of data (*****) to measure each hospital's managed care utilization in the preceding SFY. Once complete managed care utilization data is available, the Division reconciles the interim payments with each hospital's actual utilization during the rating period.  All hospitals are on notice of this reconciliation far in advance of ever receiving a single penny subject to that reconciliation.[7]

| SFY 2020 | SFY 2021 | SFY 2022 Runout ***** | SFY 2023 Runout ***** | SFY 2024 Runout ***** | SFY 2025 Runout ***** | SFY 2026 Runout ***** | SFY 2027 Runout ***** | SFY 2028 Runout ***** | SFY 2029 |

(Calendar markers: January / July for CY 2020, CY 2021, CY 2022, CY 2023, CY 2024, CY 2025, CY 2026, CY 2027, CY 2028)

For example, the most recent full data set available to the Division at the beginning of SFY 2024 (*see* vertical black line in the image below) is the utilization data from SFY 2022 (blue *****).  Thus, the utilization data from SFY 2022 was used to calculate interim MHAP payments made to hospitals throughout SFY 2024.  When the full utilization data for SFY

---

[7] For example, SFY 2024 Notice of MHAP Parameters email sent to the Mississippi Hospital Association for distribution for all hospitals sent more than three months prior to distribution of first SFY 2024 MHAP funds.

2024 became available (orange *****) in early 2025, the Division reconciled those interim payments with the hospital's actual experience during SFY 2024.



The following calculations illustrate how such reconciliations would be calculated and the impact on the MHAP funds for each hospital:

### Interim MHAP Payments (utilization data from SFY 2022)

|  | Total Managed Care Encounters | Percentage of Statewide Utilization | MHAP Funds Available to the Hospital |
|---|---|---|---|
| Hospital A | 350 | 3.38 % | $3,381,642.51 |
| Hospital B | 5,750 | 55.56 % | $55,555,555.56 |
| Hospital C | 1,200 | 11.59 % | $11,594,202.90 |
| Hospital D | 300 | 2.90 % | $2,898,550.72 |
| Hospital E | 2,750 | 26.57 % | $26,570,048.31 |
| *Statewide Total* | *10,350* | *100.00 %* | *$100,000,000.00* |

### Final MHAP Payments (utilization data from SFY 2024)

|  | Total Managed Care Encounters | Percentage of Statewide Utilization | MHAP Funds Available to the Hospital |
|---|---|---|---|
| Hospital A | 435 | 4.43% | $4,434,250.76 |
| Hospital B | 5,900 | 60.14% | $60,142,711.52 |
| Hospital C | 350 | 3.57% | $3,567,787.97 |
| Hospital D | 375 | 3.82% | $3,822,629.97 |
| Hospital E | 2,750 | 28.03% | $28,032,619.78 |
| *Statewide Total* | *9,810* | *100.00%* | *$100,000,000.00* |

6 of 17

In this example, Hospital C's utilization declined significantly between SFY 2022 and SFY 2024 – going from 1200 total managed care encounters to 350.  Because each hospital's MHAP funds are calculated comparatively to all other hospitals based on their volume of managed care utilization, Hospital's C's significant utilization decline resulted in an increase in the MHAP funds available to the other four hospitals.  More funds are available even to Hospital E, whose actual utilization in SFY 2022 and SFY 2024 was unchanged.  The following chart illustrates how those funds would be redistributed:

| | Total Interim Payments Received | Total Final Amount of MHAP Funds | Amount to be Redistributed |
|---|---|---|---|
| Hospital A | $3,381,642.51 | $4,434,250.76 | $1,052,608.25 |
| Hospital B | $55,555,555.56 | $60,142,711.52 | $4,587,155.96 |
| Hospital C | $11,594,202.90 | $3,567,787.97 | ($8,026,414.93) |
| Hospital D | $2,898,550.72 | $3,822,629.97 | $924,079.25 |
| Hospital E | $26,570,048.31 | $28,032,619.78 | $1,462,571.47 |
| *Statewide Total* | *$100,000,000.00* | *$100,000,000.00* | *$0.00* |

Once the reconciliation is completed, the Division will immediately pay Hospitals A, B, D, and E the amounts to be redistributed to them in a lump sum.  For Hospital C, the Division will offset current year MHAP payments with the amount of that overpayment.  As shown in the timelines illustrated above, the hospital would be receiving ongoing SFY 2025 interim MHAP payments at the time of the SFY 2024 reconciliation.  Those payments would be returned to the Division rather than remitted to the hospital until such time as the Division had been made whole for the full amount of Hospital C's SFY 2024 overpayment.

It is important to note that although MHAP is approximately 75% federally funded and the state share is derived from the hospital assessment rather than the State General Fund, the Division only has authority to use the exact amount of federal funds approved by CMS.  Therefore, when the underpaid hospitals are immediately paid the amounts they are

due in a lump sum but the amount to be returned by the overpaid hospitals has not been fully returned to the Division – it is State General Funds that are at risk in the event the Division is ultimately unable to fully recover.

### III. The Two Components of MHAP

There are two components to MHAP payments: (1) the Fee Schedule Adjustment ("FSA"), and (2) the Quality Incentive Payment Program ("QIPP"). The FSA is intended to increase the amount paid for each inpatient discharge and outpatient encounter. It is calculated based on the hospital's actual utilization. Hospitals receive FSA payments as long as (1) CMS approves the Division's preprint and (2) the hospital has managed care utilization during the rating period.

QIPP payments promote quality care in hospitals throughout the state. QIPP has programs designed to reduce preventable hospital readmissions, reduce preventable health complications, and expand data sharing for care coordination across Mississippi's healthcare community. Unlike FSA, utilization alone does not entitle the hospital to a QIPP payment. There are specific actions, certifications, and quality metrics the hospital must meet for the various programs under QIPP, and failure to do any of those things results in portions of the QIPP payment being unearned.

### IV. Enhanced MHAP Beginning in SFY 2024

Starting in SFY 2024, an enhanced MHAP rate was paid to qualifying hospitals following efforts by Governor Reeves' administration to provide more financial support to Mississippi hospitals.[8] The total MHAP pool jumped from $601,153,602 to $1,522,313,885 – an increase of more than 250% in MHAP funds paid to hospitals.

---

[8] https://us11.campaign-archive.com/?e=1c51692119&u=08cb3e52aa1308600f84d49ea&id=03358e364d



**Greenwood Leflore Hospital**

Between SFY 2022 and SFY 2024, GLH voluntarily reduced the services offered by the hospital, including completely shuttering obstetrics and pediatrics – two service lines utilized extensively by Medicaid beneficiaries. Medicaid is the payer for approximately 60% of newborn deliveries in Mississippi[9] and covers approximately half of the state's children.[10]

In SFY 2024, GLH knew it had voluntarily discontinued highly utilized Medicaid services but continued to spend interim MHAP payments which were based on utilization data prior to the closure of those service lines.  GLH knew or should have known these payments would ultimately be reconciled with their actual, much lower, utilization and should have put some of those interim funds in reserve.

Further, the interim MHAP payments received by GLH in SFY 2026 were approximately 250% higher than the MHAP payments paid to GLH in prior SFYs. The

---

https://mailchi.mp/d3b69877f6d7/governor-tate-reeves-medicaid-reimbursement?e=1c51692119
https://governorreeves.ms.gov/cms-approves-second-component-of-governor-reeves-medicaid-reimbursement-reforms/

[9] https://www.kff.org/state-health-policy-data/state-indicator/births-by-source-of-payment-for-delivery/?currentTimeframe=0&sortModel=%7B%22colId%22:%22Location%22,%22sort%22:%22asc%22%7D

[10] https://www.kff.org/state-health-policy-data/state-indicator/children-0-18/?currentTimeframe=0&sortModel=%7B%22colId%22:%22Location%22,%22sort%22:%22asc%22%7D

enhanced MHAP funding coupled with decreased operational costs due to closing some of its

service lines should have put GLH in a position to easily maintain an appropriate reserve to

address any MHAP overpayment at the time of reconciliation.  However, GLH chose not to

put any MHAP funds aside – resulting in putting the taxpayers at risk of GLH's failure to repay

the overpaid MHAP funds.

The following charts illustrate the scale of GLH's voluntary reduction in services and

its impact on Medicaid managed care utilization.





Despite the scale of GLH's intentional reduction of services between SFY 2022 and SFY 2024, GLH's MHAP payments exponentially increased due to the enhanced MHAP plan:

|  | Interim MHAP Payments | Final MHAP Payments |
|---|---|---|
| SFY 2022 |  | $7,990,637 |
| SFY 2023 |  | $8,089,950 |
| SFY 2024 | $20,818,834 | $15,319,905 |
| SFY 2025 | $16,664,334 | $11,789,004 |
| SFY 2026 | $9,071,402* |  |

*Anticipated total interim payments through the end of SFY 2026.*
*SFY 2024 was the first year enhanced MHAP funds were paid to the hospitals.*

Even post-reconciliation, GLH was paid 191% *more* in MHAP funds in SFY 2024 than it was paid in SFY 2022 while providing Medicaid Managed Care beneficiaries 42% *less* in outpatient services and 94% *less* in inpatient services.  Moreover, MHAP payments are *in addition to* the direct reimbursement GLH was paid for those services.

GLH has participated in the MHAP program since its inception in December 2015 and was on clear notice of how the MHAP reconciliation works.  GLH should have been well-aware that its decision to reduce the primary service lines used by Medicaid Managed Care beneficiaries would have a dramatic impact on its MHAP payments – especially since the primary purpose of MHAP is to increases access to medical services for Medicaid Managed Care beneficiaries.[11]

Yet, GLH received almost double the amount of MHAP funding in SFY 2024 than it did in the previous SFYs, net of the reconciliation.  This begs the question, ***how did GLH spend the more than $20,000,000 it received in initial SFY 2024 MHAP payments?***  It can be

---

[11] GLH was not the only hospital whose initial SFY 2024 MHAP payments exceeded the amount the hospital was eligible to receive in SFY 2024 once the final reconciliation was completed.  Forty-four hospitals had overpayments which had to be recouped by the Division and redistributed to other hospitals, including four hospitals which had to return more than $5,000,000 and 17 hospitals which had to return more than $1,000,000.

safely assumed from GLH's utilization numbers, that money was not spent providing services to Medicaid Managed Care beneficiaries.

In addition to MHAP payments, GLH receives ongoing claims payments for services rendered and supplemental payments from the fee-for-service program. For context, the following charts represent the most current information the Division has regarding payments made to GLH during SFYs 2024, 2025, and 2026.

### State Fiscal Year 2024

| Source of Payment | Amount |
|---|---|
| Fee for Service Claims | $2,594,088 |
| Magnolia Health Plan Claims | $1,758,822 |
| Molina Healthcare of Mississippi Claims | $579,703 |
| UnitedHealthcare Community Plan of Mississippi Claims | $1,402,482 |
| TrueCare Claims | - |
| MHAP Payments | $20,818,834 |
| Fee for Service Supplemental Payments | $1,142,558 |
| **Total Payments from the Medicaid Program to GLH** | **$28,296,487** |
| **MHAP Overpayment** | **$5,518,929\*** |

*\*$3,077,256.02 of this overpayment remains outstanding.*

### State Fiscal Year 2025

| Source of Payment | Amount |
|---|---|
| Fee for Service Claims | $2,136,368 |
| Magnolia Health Plan Claims | $2,070,107 |
| Molina Healthcare of Mississippi Claims | $781,931 |
| UnitedHealthcare Community Plan of Mississippi Claims | $1,400,689 |
| TrueCare Claims | - |
| MHAP Payments | $16,664,334 |
| Fee for Service Supplemental Payments | $582,685 |
| **Total Payments from the Medicaid program to GLH** | **$23,636,114** |
| **MHAP Overpayment** | **$4,875,330\*** |

*\* Not final. None collected.*

*State Fiscal Year 2026 (to date)*

| Source of Payment | Amount |
|---|---|
| Fee for Service Claims | $1,244,510 |
| Magnolia Health Plan Claims | $1,759,169 |
| Molina Healthcare of Mississippi Claims | $738,405 |
| UnitedHealthcare Community Plan of Mississippi Claims | $65,213 |
| TrueCare Claims | $487,482 |
| MHAP Payments | $6,335,982* |
| Fee for Service Supplemental Payments | $371,914** |
| **Total Payments from the Medicaid program to GLH** | **$11,002,675** |

*The MHAP Payments number represents payments made to date. $2,735,420 is scheduled to be paid in May and June. That amount is not included here.*

**The FFS Supplemental Payment number includes all payments to be made for the entirety of SFY26.*

## I.     SFY 2024 MHAP Reconciliation

It is undisputed that, upon final reconciliation of SFY 2024 MHAP payments, GLH was eligible to receive $5,518,929 *less* than it received in initial payments. Although the parties do not dispute that GLH received these excess funds, GLH did challenge the Division's intended timeline for such collection.

GLH filed an administrative appeal regarding the recoupment schedule with the Division's Office of Appeals, which was denied on October 29, 2025. The appeal did not raise an issue that is appealable under Title 23, Part 300 of the *Mississippi Administrative Code* and GLH is contractually obligated to repay overpayments "within 30 days … or on other terms approved by the Division of Medicaid."[12] GLH appealed the Division's denial of its administrative appeal to the Chancery Court of Hinds County, Mississippi.

The original balance to be recouped following the final reconciliation of SFY 2024 MHAP payments was $5,518,929. Following partial recoupments in June, September, and

---

[12] GLH Provider Agreement.

13 of 17

December 2025, the current balance owed to the Division for the SFY 2024 MHAP overpayment is now $3,077,256.02.  This $3,077,256.02 debt is **undisputed**.  However, the Chancery Court has entered an order preventing the Division from any further recoupment until the appeal is resolved.[13]

## II.    SFY 2025 Reconciliation and Preprint Parameters

On November 14, 2025, the Division notified all hospitals of a preliminary reconciliation using managed care encounters incurred in SFY 2025 which were available to the Division through September 30, 2025.[14]   At that time, GLH had an estimated overpayment in SFY 2025 MHAP funds of $1,779,269.  GLH included this amount on their schedule of creditors.

The Division attempted to begin immediate reduction of ongoing SFY 2026 MHAP payments to reduce the impact of a large recoupment at the time of final reconciliation. However, GLH filed an administrative appeal with the Division regarding this reduction. Because the SFY 2025 preprint stated that recoupments due to reconciliation would begin in May 2026, the Division ceased any efforts to recoup or offset the SFY 2025 MHAP overpayment prior to May 2026 and dismissed the appeal as moot.

Since the run-out period has ended, the Division has been preparing the final SFY 2025 reconciliation, which shows the SFY 2025 MHAP overpayment to GLH as being $4,875,330.  This overpayment – as with the SFY 2024 MHAP overpayment – was caused by

---

[13] *Greenwood Leflore Hospital v. Mississippi Division of Medicaid and Cindy Bradshaw, in her official capacity as Executive Director of the Mississippi Division of Medicaid,* Civil Action No. 25CH1:25-CV-01314T/1, In the Chancery Court of the First Judicial District of Hinds County, Mississippi.

[14] This reconciliation was preliminary because the full claims runout period would not close until after December 27, 2025 (180 days after the close of SFY 2025).

GLH's voluntary reduction in services which GLH knew or should have known would result in reducing the amount of MHAP funds available.

The reason for this significant increase from the interim reconciliation was the reallocation of the QIPP pool, resulting in a $2,980,892 overpayment to GLH in QIPP alone.[15] The preliminary reconciliation only involved the FSA portion of MHAP. The final reconciliation of the FSA portion of MHAP funds was more closely aligned with the interim reconciliation at $1,894,438.

The SFY 2025 preprint has this language regarding reconciliation of the FSA portion of MHAP:

> Interim FSA payments for the single class of network providers will be calculated using managed care inpatient discharges and outpatient payments from the state fiscal year July 1, 2022, through June 30, 2023 (based on paid date). This data represents the best information on utilization that is available to use at the time the payment calculations need to be performed. *These interim FSA payments will be adjusted using actual fiscal year utilization data in April 2026 when a reconciliation will be completed.* The actual utilization will be reconciled based on encounters for the rating period, July 1, 2024 - June 30, 2025 (based on service date). In May 2026, any underpayments will be paid via a lump-sum payment and any overpayment will be recouped in the May 2026 MHAP payment. If necessary, any recoupments from hospitals may extend beyond the May 2026 MHAP payment. *For hospitals who have closed or filed bankruptcy, they will not be considered in the reconciliation, and the amounts paid under the interim arrangement will be considered final.*

Of note, GLH would still have appeal rights as to the identification and calculation of the SFY 2025 MHAP overpayment and therefore this debt is not undisputed.

---

[15] QIPP payments are based on prior year MHAP fund amounts. *See* FN6, above. When the SFY 2025 interim payments were calculated, the SFY 2024 MHAP payments had not yet been fully reconciled. Therefore, the reduction in GLH's SFY 2024 overall MHAP payments reduced its SFY 2025 QIPP payment.

### III. SFY 2026 Ongoing MHAP Payments and Preprint Parameters

GLH is currently receiving ongoing MHAP payments in SFY 2026. Those payments are scheduled as follows:

| | | |
|---|---|---|
| July 2025 | $288,380.93 | PAID |
| August 2025 | $288,380.93 | PAID |
| September 2025 | $2,447,038.75* | PAID |
| October 2025 | $288,380.93 | PAID |
| November 2025 | $288,380.93 | PAID |
| December 2025 | $2,447,038.75** | PAID |
| January 2026 | $288,380.93 | PAID |
| February 2026 | $288,380.93 | PAID |
| March 2026 | $2,447,038.75 | PAID |
| April 2026 | $288,380.93 | PAID |
| May 2026 | $288,380.93 | NOT PAID AS OF DATE OF MEMO |
| June 2026 | $2,447,038.75*** | NOT PAID AS OF DATE OF MEMO |

*$900,000 was recouped from the September 2025 MHAP payment and applied to the outstanding balance of the SFY 2024 MHAP overpayment.*

**447,038.75 was recouped from the December 2025 MHAP payment and applied to the outstanding balance of the SFY 2024 MHAP overpayment.*

***Estimated amount, which may be adjusted to include funds reallocated from other hospitals.*

The FSA payment is made monthly. The QIPP payment is made quarterly. The dollar amounts paid in September, December, March, and April represent the quarterly QIPP payment in addition to the monthly FSA payment.

The Division believes GLH's utilization has stabilized somewhat and anticipates an FSA overpayment between $300,000 and $400,000. However, this estimate does not take into account the recent announcements by GLH regarding service line closures which immediately preceded the bankruptcy filing. The Division anticipates the QIPP reconciliation and overpayment will be higher than the FSA overpayment because it will reflect the reduction in MHAP funds to GLH in SFY 2025.

The SFY 2026 preprint contains this language regarding the Fee Schedule Adjustment

portion of MHAP:

> Interim FSA payments for the classes of network providers will be calculated using managed care inpatient discharges and outpatient payments from the state fiscal year July 1, 2023, through June 30, 2024 (based on paid date). This data represents the best information on utilization that is available to use at the time the payment calculations need to be performed. These interim FSA payments will be adjusted using actual fiscal year utilization data in the second quarter of calendar year 2027 (expected to occur in April 2027) when a reconciliation will be completed. The actual utilization will be reconciled based on encounters for the rating period, July 1, 2025 - June 30, 2026 (based on service date). DOM plans to begin in May 2027 making any underpayments via a lump-sum payment, and any overpayments via recoupments from monthly MHAP payments. *The Division may run "initial" encounter reconciliation reports prior to the final reconciliation to determine if significant variation in the managed care encounters have occurred for any providers comparing the SFY 2026 rating period to the base period of SFY 2024. If the Division determines that significant variation has occurred for any provider, the Division may require payment from or make payments to the providers based on the interim reconciliation amount prior to the end of the SFY 2026 rating period.*

> DOM will evaluate the reconciliation of encounters in the reconciliation process to determine that sufficient time has been allowed for a complete reconciliation. If necessary, any recoupments from providers may extend beyond the May 2027 MHAP payment. *For providers who have closed or filed bankruptcy, they will not be considered in the reconciliation, and the amounts paid under the interim arrangement will be considered final.*

Of note, GLH would still have appeal rights as to the identification and calculation of any SFY

2026 MHAP overpayment and therefore any debt related to the SFY 2026 MHAP payments

is not undisputed.

17 of 17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI

FILED

Nov 03 2025

ARTHUR JOHNSTON, CLERK

By: _____, Deputy Clerk



# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

### INTERNAL RULE 1

*as amended effective November 1, 2025*

### <u>ASSIGNMENT OF CASES TO JUDGES AND MAGISTRATE JUDGES</u>

This *Assignment of Cases to Judges and Magistrate Judges* will apply to all cases filed on or after November 1, 2025, except as provided in Sections XI and XIII below.

Each civil case filed in this Court will bear a number as follows: The number of the division 1- Southern Division at Gulfport; 2- Eastern Division at Hattiesburg; 3- Northern Division at Jackson; 5- Western Division at Natchez, followed by a colon and the last two digits of the year in which the case is filed, followed by the letters "cv", followed by the sequential number of the case filed in the division. Civil cases may be assigned on the percentage distribution described below by use of a manual or automated random draw. The district judge and magistrate judge assignment in each case is indicated in the case docket by the initials of the district judge and the magistrate judge, as follows:

| | | | |
|---|---|---|---|
| DCB | District Judge Bramlette | ASH | Magistrate Judge Harris |
| LG | District Judge Guirola | LGI | Magistrate Judge Isaac |
| KHJ | District Judge Johnson | RPM | Magistrate Judge Myers |
| DPJ | District Judge Jordan | MTP | Magistrate Judge Parker |
| TSL | District Judge Lee | BWR | Magistrate Judge Rath |
| TBM | District Judge McNeel | | |
| HSO | District Judge Ozerden | | |
| CWR | District Judge Reeves | | |
| HTW | District Judge Wingate | | |

–1–

# EXHIBIT "C"

Each criminal case filed in the Southern District will bear the same number format as the civil docket number, with the exception of the letters "cr" being substituted for the letters "cv."

## I.  ASSIGNMENT OF CIVIL CASES TO DISTRICT JUDGES

Civil cases in this district are to be assigned a district judge as follows:

**A.  NORTHERN DIVISION -** Civil cases will be assigned as follows:

Judge Wingate - 23%    Judge Jordan - 23%    Judge Reeves - 23%

Judge Lee - 12%    Judge Johnson - 19%.

**B.  SOUTHERN DIVISION** - Civil cases will be assigned as follows:

Judge Guirola - 24%    Judge Ozerden - 38%    Judge McNeel - 38%.

**C.  EASTERN DIVISION** - Civil cases will be assigned as follows:

Judge Guirola - 20%    Judge Johnson - 20%    Judge Ozerden - 30%

Judge McNeel - 30%.

**D.  WESTERN DIVISION** - Civil cases will be assigned as follows:

Judge Bramlette - 100%.

## II.  ASSIGNMENT OF CRIMINAL CASES TO DISTRICT JUDGES

Criminal cases in this district are assigned to district judges as follows:

**A.  NORTHERN DIVISION** – Criminal cases will be assigned randomly and without regard to grand jury schedules

as follows:

Judge Lee - 12%        Judge Jordan - 26%

Judge Johnson - 10%    Judge Wingate - 26%

Judge Reeves - 26%.

**B.  WESTERN DIVISION** - Criminal cases will be assigned as follows:

Judge Bramlette - 100%.

C. **EASTERN DIVISION** - Criminal cases will be assigned as follows:

Judge Guirola - 30%      Judge Johnson - 70%.

D. **SOUTHERN DIVISION** - Criminal cases will be assigned as follows:

Judge Guirola - 18%      Judge Ozerden - 30%      Judge McNeel - 52%.

E. **RELATED CRIMINAL CASES** - Upon notice filed by the United States Attorney, a criminal matter which is related to a previously assigned criminal case will be transferred by the Clerk of Court to the judge with the previously assigned criminal case. For purposes of this order, criminal cases are related if they involve substantially the same parties and factual situation, relate to or are based upon the same act or transaction, or involve actions connected with or constituting part(s) of a common scheme or plan.

III. **CAPITAL HABEAS CASES** - All habeas corpus cases filed in this district reviewing a sentence of death will be assigned to district judges equally, regardless of division, utilizing the sequence: HTW, DPJ, HSO, CWR, KHJ and TBM. A case previously assigned to a district judge which is returned to this district will not impact this sequencing.

IV. **REASSIGNMENT** - The Chief Judge may, after conferring with the affected district judge(s) or magistrate judge(s), reassign cases in any division in order to ensure an equal distribution of the workload and to effectuate a prompt disposition of all pending matters.

–3–

**V.**   **PARTICIPATION** - No district judge of this court will participate in any way or to any extent with the processing or disposition of any case which is not assigned to the judge by action of this plan unless agreed to by the district judge to whom the case is assigned.

**VI.**   **REVERSALS AND REMANDS** - If any case is subsequently reversed or remanded, the Clerk of Court will assign such case to the same district judge who previously tried or handled the case and who will have the sole responsibility for the case's final disposition, unless that district judge agrees to the assignment of the case to another district judge or the Fifth Circuit Court of Appeals so dictates. If the latter occurs, then the case will be returned to the draw and reassigned.

**VII.**   **REFERRAL OF CIVIL CASES TO MAGISTRATE JUDGES**

    **A.**   Referral of civil cases to a magistrate judge for trial will be in accordance with the provisions of FED. R. CIV. P. 72 and 73.

    **B.**   The notice required by FED. R. CIV. P. 73(b) concerning the opportunity to consent to trial by a magistrate judge will be included with the pretrial notices and instructions or provided upon request of the parties.

    **C.**   The consent form(s) will be filed in the division in which the case is pending. No consent form will be filed unless all parties have consented to the referral of the case to a magistrate judge.

**D.** In those cases which are referred to a magistrate judge, only the magistrate judge's designated initial(s) will appear in the case number suffix.

**E.** Pursuant to 28 U.S.C. § 636 (b)(1)(B), the following matters are hereby referred to the magistrate judge to conduct hearings, including evidentiary hearings, and to submit proposed findings of fact and recommendations for disposition:

(1)    prisoner petitions challenging conditions of confinement;

(2)    applications for post-trial relief made by individuals convicted of criminal offenses, excluding capital cases; and,

(3)    social security appeals.

An Order of Reference executed by the district judge assigned to the case is required in all other cases assigned to a magistrate judge. Motions to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255 are referred to the sentencing judge.

## VIII. ASSIGNMENT OF CIVIL CASES TO MAGISTRATE JUDGES

**A.** Except as provided in paragraphs B and C below, in all civil actions filed in this district, the following shall apply:

1.    **Magistrate Judge Harris** is assigned all civil cases assigned to Judge Jordan, 50% of the cases assigned to Judge Reeves, and 5% of the cases assigned to Judge Lee.

2. **Magistrate Judge Isaac** is assigned all civil cases assigned to Judge Wingate, 50% of the cases assigned to Judge Reeves, and 5% of the cases assigned to Judge Lee.

3. **Magistrate Judge Parker** is assigned all civil cases assigned to Judge Johnson, all Eastern Division cases assigned to Judge Guirola, and 65% of the cases assigned to Judge Lee.

4. **Magistrate Judge Myers** is assigned all civil cases assigned to Judge McNeel, 50% of the cases assigned to Judge Guirola in the Southern Division, 40% of the cases assigned to Judge Bramlette, and 25% of the cases assigned to Judge Lee.

5. **Magistrate Judge Rath** is assigned all civil cases assigned to Judge Ozerden, 50% of the Southern Division cases assigned to Judge Guirola, and 60% of the cases assigned to Judge Bramlette.

B. Cases arising under the Social Security Act including appeals thereof shall be assigned a magistrate judge utilizing the sequence: RPM, MTP, LGI, ASH, and BWR, regardless of the assigned district judge.

C. Cases filed by pro se prisoners seeking habeas relief under 28 U. S. C. § 2254 shall be assigned a magistrate judge utilizing the sequence: BWR, ASH, LGI, MTP, RPM regardless of the assigned district judge.

–6–

## IX.    ASSIGNMENT OF CRIMINAL MATTERS TO MAGISTRATE JUDGES.

**A.**    All misdemeanor criminal cases will be assigned, upon the filing of an information, complaint or violation notice, or the return of an indictment, to a magistrate judge, who will proceed in accordance with the provisions of 18 U.S.C. §§ 3401-02 and FED. R. CRIM. P. 58.

**(1)    NORTHERN AND WESTERN DIVISIONS** –

(a) All criminal "CR" cases will be assigned randomly and without regard to grand jury schedules as follows:

Judge Isaac – 50%

Judge Harris – 50%.

(b) The Petty Offense Docket will rotate on a yearly basis among Judges Harris, Isaac and Parker.

(c) "MJ" cases will be assigned in chambers by month as follows:

January, March, May, July, September, November
        – Judge Harris;

February, April, June, August, October, December
        – Judge Isaac.

**(2)    SOUTHERN DIVISION** -All criminal matters will be shared among Magistrate Judges Rath, Myers, and Parker. Indictments and informations will be assigned 39% to Judge Rath, 39% to Judge Myers, and 22% to Judge Parker. The Petty Offense Docket will rotate between Judges Rath and Myers.

–7–

**(3)** **EASTERN DIVISION** - All criminal matters are assigned to Magistrate Judge Parker.

**B.** All pretrial criminal motions are hereby referred to a magistrate judge for hearing and determination, with the exception of motions to dismiss or quash an indictment or information made by the defendant, motions to suppress evidence, motions *in limine* regarding evidentiary matters, motions for extensions of time with regard to matters pending before a district judge, motions for continuances and motions for severance.

**C.** All other criminal matters authorized to be handled by a magistrate judge by statute, Federal Rules of Criminal Procedure, Local Uniform Rules, or Order, including the Plan to implement the Magistrate's Act, are hereby assigned to magistrate judges for appropriate action.

**D.** Individual case exceptions to the foregoing assignment method may be directed by the Chief Judge in order to more expeditiously address particular case situations.

**X.    RECUSAL**

**A.** When the presiding district judge must recuse himself or herself from a case, the Clerk of Court will return that case to the applicable divisional draw described in Sections I and II above for automatic, random reassignment. However, any Western Division civil or criminal case from which Judge Bramlette is recused will be returned to the Northern Division

–8–

criminal draw described in Sections I A and II A for automatic, random reassignment. Such case will remain a Western Division case.

**B.** When the assigned magistrate judge must recuse himself or herself from a case, the reassignment will be conducted in the following sequence:

**Eastern, Western and Northern Division cases:**

| Isaac | → | Harris | → | Myers |
| Harris | → | Isaac | → | Rath |
| Myers | → | Harris | → | Isaac |
| Rath | → | Isaac | → | Harris |
| Parker | → | Rath | → | Myers |

**Southern Division cases**:

| Rath | → | Myers | → | Parker |
| Myers | → | Rath | → | Parker |
| Parker | → | Rath | → | Myers |

If a case cannot be reassigned using the methodologies described above, the Chief Judge may assign the case to a judge outside thereof.

When a district judge is recused from a case and a new district judge is assigned, the magistrate judge originally assigned to the case shall remain so assigned unless otherwise ordered by the Chief Judge.

## XI. ASSIGNMENT OF BANKRUPTCY CASES TO BANKRUPTCY JUDGES.

Pursuant to 28 U. S. C. § 157, the District Court hereby ORDERS *nunc pro tunc* that any and all cases arising under Title 11 of the United States Code and any and all proceedings arising under Title 11 or arising in or related to a case under Title 11 shall be referred to the bankruptcy judges for the Southern District of Mississippi for consideration and resolution consistent with the law.

## XII. ASSIGNMENT OF CASES UPON SELECTION OF SUCCESSOR MAGISTRATE JUDGE.

Upon the death or retirement of a magistrate judge, the Clerk of Court is directed to substitute the name and initials of the successor judge in place of the retiring or deceased judge in paragraphs VIII, IX, and X above unless otherwise directed by the Court.

## XIII. EFFECTIVE DATES.

This order is effective November 1, 2025, and supplants all prior court case assignment orders and rules. However, the provisions of Section XI of this Order shall be effective *nunc pro tunc* to December 7, 2011.

**SO ORDERED AND ADJUDGED** this the 3rd day of November 2025.


*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE