DRAFT – 6/25/2026

## PRE-CLOSING HOSTING & ACCESS AGREEMENT

This **PRE-CLOSING HOSTING & ACCESS AGREEMENT** (this "Agreement") is made and entered into as of **[June ___]**, 2026 (the "Effective Date"), by and between **GREENWOOD LEFLORE HOSPITAL**, a public community hospital organized and existing under Miss. Code Ann. Section 41-13-10 et seq. ("**GLH**"); and **THE UNIVERSITY OF MISSISSIPPI MEDICAL CENTER**, acting as a department of The University of Mississippi and political body of the State of Mississippi ("**UMMC**").

### RECITALS

A.     GLH and UMMC are parties to, or are contemporaneously negotiating, that certain Contribution and Asset Transfer Agreement (as may be amended, supplemented, restated, or otherwise modified from time to time, the "**Contribution Agreement**"), pursuant to which GLH proposes to transfer certain GLH operations, assets, rights, and related business activities to UMMC at Closing.

B.     Before Closing, UMMC needs to prepare, load, configure, test, validate, and secure its systems and related data in the Pre-Closing IT Environment (as defined below), and GLH needs to make that environment available, operational, and secure, so that UMMC can be ready to operate the UMMC Systems immediately after Closing.

C.     The parties desire to enter into this Agreement to govern the pre-closing hosting, access, security, confidentiality, control, removal, and related rights and obligations concerning the Pre-Closing IT Environment, including the parties' rights and obligations if the Closing does not occur.

NOW, THEREFORE, for and in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

### ARTICLE 1
### DEFINITIONS

Capitalized terms used in this Agreement and not otherwise defined herein shall have the meanings ascribed to such terms in the Contribution Agreement.

1.1     "**Contribution Agreement**" is defined in Recital A, together with all exhibits, schedules, ancillary agreements, and related court orders to the extent applicable.

1.2     "**Pre-Closing IT Environment**" means GLH's servers, storage devices, virtual machines, cloud instances, wireless controllers, switches, firewalls, access points, virtual appliances, backup systems, telecommunications facilities, racks, power, cooling, management planes, security platforms, support portals, license entitlements, and related physical or virtual infrastructure identified on **Exhibit A** or otherwise designated in writing by UMMC and made available by GLH under this Agreement.

101227567.v2

1.3     **"Removal Period"** means the period beginning upon any failure of the Closing to occur and ending on the later of (a) **[one hundred eighty (180) days thereafter]** or (b) such later date as UMMC determines in good faith is reasonably necessary to remove, export, migrate, disable, wipe, or otherwise recover and protect UMMC Systems .

1.4     **"Server Agreements"** means that certain finance lease with Cisco Systems Capital Corporation attached as **Exhibit A**, together with any other lease, finance lease, equipment schedule, purchase-money financing arrangement, vendor financing document, addendum, invoice, support contract, subscription agreement, maintenance agreement, or other contract pursuant to which any component of the Pre-Closing IT Environment is financed, leased, licensed, supported, maintained, or otherwise made available to GLH.

1.5     **"UMMC Systems"** means all software, applications, virtual machines, databases, interfaces, settings, configurations, policies, rules, scripts, templates, workflows, mappings, integrations, certificates, controller settings, firewall rules, VLANs, SSIDs, usernames, passwords, passphrases, tokens, keys, encryption keys, multi-factor credentials, privileged access credentials, logs, backups, files, records, reports, extracts, images, metadata, audit trails, and all other data, information, content, credentials, configurations, or technical, security, and operational work product, including all confidential, proprietary, operational, financial, reimbursement, employee, physician, patient, and other non-public information of UMMC, in each case created, issued, loaded, uploaded, installed, configured, maintained, used, controlled, stored, transmitted, processed, or generated by or on behalf of UMMC in or through the Pre-Closing IT Environment.. For the avoidance of doubt, UMMC Systems do not include the underlying hardware or equipment owned by, leased to, or licensed by GLH or any third party, any embedded manufacturer or vendor software provided with such equipment apart from UMMC-created settings, configurations, and data, or any lease, license, subscription, support, maintenance, warranty, or other contractual rights of GLH or any third party, except solely to the extent of UMMC's limited rights of access and use expressly granted under this Agreement.

## ARTICLE 2
## GRANT OF RIGHTS; IMMEDIATE EFFECT

2.1     <u>Immediate Effect</u>. This Agreement is effective immediately upon execution and is not conditioned on the occurrence of the Closing. The parties acknowledge and agree that UMMC requires enforceable present rights under this Agreement before Closing in order to prepare for day-one operations.

2.2     <u>Grant of License, Access, and Use Rights</u>. Subject to the terms of this Agreement, GLH hereby grants to UMMC a non-exclusive, nontransferable, fully paid, royalty-free right and license to access, use, occupy, configure, install, upload, stage, test, validate, maintain, and operate the Pre-Closing IT Environment solely for purposes of preparing for day-one operations following the Closing and, if the Closing does not occur, for purposes of protecting, removing, exporting, migrating, disabling, or wiping UMMC Systems.  As between the parties, such rights shall be exclusive with respect to UMMC Systems, and any network segments, management domains, or environments designated by UMMC for its sole use, but shall not by themselves transfer to UMMC any ownership interest in the underlying hardware or any Server Agreement prior to Closing.

2.3     No Assignment, Sublease, or Assumption. UMMC's pre-closing access to and use of the Pre-Closing IT Environment is intended solely to permit operational readiness and nothing in this Agreement, and no access to or use of the Pre-Closing IT Environment by UMMC, shall constitute or be deemed to constitute an assignment, sublease, novation, assumption, or transfer to UMMC of any Server Agreement or any obligations thereunder. UMMC shall not be deemed the lessee, sublessee, assignee, guarantor, obligor, customer, account debtor, or end-user contracting party under any Server Agreement unless and until UMMC expressly assumes or takes assignment of the same in a separate writing executed by UMMC after satisfaction or waiver of the conditions to Closing.

2.4     Sensitivity of UMMC Systems; Required Protections. GLH acknowledges that UMMC Systems may include highly sensitive, confidential, proprietary, strategic, regulated, or otherwise protected information. Accordingly, GLH shall make the Pre-Closing IT Environment available and shall perform its obligations under this Agreement in a manner that preserves UMMC's exclusive control over UMMC Systems and complies with the access restrictions, security requirements, confidentiality obligations, ownership protections, and removal rights expressly set forth in this Agreement.

2.5     No Payment / Risk of Loss / Tax / Insurance Obligations. Prior to the Closing, UMMC shall have no obligation to pay any rent, installment, advance payment, purchase price, buyout amount, support fee, subscription fee, maintenance charge, tax, insurance premium, shipping charge, return charge, or other amount arising under any Server Agreement, and UMMC shall not bear any risk of loss, casualty risk, tax risk, insurance obligation, maintenance obligation, or return obligation with respect to the underlying hardware except to the extent directly caused by the gross negligence or willful misconduct of UMMC while exercising the access rights expressly granted hereunder.

2.6     Cooperation; Environment Bring-Up. GLH shall, at its sole cost and expense, promptly place the designated components of the Pre-Closing IT Environment online and maintain them online, connected, powered, cooled, reasonably secure, and suitable for UMMC's intended use. Without limiting the foregoing, GLH shall provide all physical access, remote access, rack space, network connectivity, VPN access, cabling, power, cooling, and technical cooperation reasonably requested by UMMC. GLH shall also keep all Server Agreements in full force and effect, without amendments, timely pay all amounts due thereunder, keep all support, maintenance, subscription, and warranty rights current, and refrain from taking or omitting to take any action that would cause a default, termination, lapse, suspension, repossession right, or loss of support or entitlement affecting any component of the Pre-Closing IT Environment.

2.7     No Obligation to Close. Nothing in this Agreement shall obligate UMMC to consummate the Closing or to assume any duty, liability, or responsibility under the Contribution Agreement except as expressly provided therein. The existence of this Agreement and UMMC's use of the Pre-Closing IT Environment shall not be asserted as evidence of any obligation of UMMC to close the transactions contemplated by the Contribution Agreement.

2.8     Vendor / Lessor Cooperation. GLH and UMMC shall cooperate fully with each other in communicating with vendor and/or lessor to obtain and maintain any consents, notices, acknowledgments, administrative delegations, or other cooperation reasonably necessary or

advisable for UMMC to access and use the Pre-Closing IT Environment as contemplated by this Agreement without triggering a default under any Server Agreement. Without limiting the foregoing, GLH shall cause UMMC to be designated, to the extent reasonably feasible, as an authorized technical and administrative contact for support, maintenance, configuration, portal, licensing, and entitlement purposes with the applicable lessors, licensors, vendors, resellers, and support providers.

## ARTICLE 3
## EXCLUSIVE CONTROL; ACCESS RESTRICTIONS

3.1     Exclusive Control. As between the parties, UMMC shall have exclusive control over all UMMC Systems within the Pre-Closing IT Environment, including all administrator credentials, encryption keys, user credentials, configurations, security settings, and access permissions relating thereto, whether or not resident on GLH-owned or GLH-leased hardware.

3.2     No Access by GLH. Except as expressly authorized in advance in writing by UMMC, neither GLH nor any of its officers, employees, contractors, vendors, managed service providers, medical staff, creditors, or other representatives shall access, log into, monitor, review, copy, image, export, alter, delete, interfere with, or otherwise interact with any UMMC Systems, or any environment, application, database, backup, credential, or device containing the same.

3.3     Limited Emergency or Maintenance Access. If infrastructure-level access is strictly necessary for maintenance of hardware, connectivity, or base operating environment, such access may occur only (a) with UMMC's prior written consent, except in a bona fide emergency threatening imminent material outage or damage, (b) on a least-privilege and minimum-necessary basis, (c) with full logging and audit trail, and (d) without access to the substance of UMMC Systems except to the unavoidable extent technically necessary. GLH shall notify UMMC immediately of any such access and provide a written summary promptly thereafter.

3.4     No Revocation or Interference. GLH shall not revoke, suspend, restrict, impair, terminate, or interfere with UMMC's access to or use of the Pre-Closing IT Environment without UMMC's prior written consent, except pursuant to a final non-appealable court order that expressly requires such action and after GLH has used diligent efforts, at its sole cost, to oppose or narrow such relief.

## ARTICLE 4
## SECURITY; SEGREGATION; INCIDENT RESPONSE

4.1     Security Safeguards. GLH shall maintain, at its sole cost and expense, commercially reasonable and industry-standard administrative, physical, and technical safeguards to protect the Pre-Closing IT Environment and all UMMC Systems from unauthorized access, use, disclosure, acquisition, destruction, corruption, loss, exfiltration, ransomware, malware, or other compromise.

4.2     Segregation and Credential Control. GLH shall maintain reasonable network, system, and logical segregation between the Pre-Closing IT Environment and all other GLH systems and data. UMMC shall have the right to install and operate such endpoint protection, monitoring agents, encryption, backup tools, and other security measures as UMMC deems

4

appropriate. GLH shall not possess, request, escrow, or require access to UMMC administrative credentials or encryption keys except to the extent expressly approved in writing by UMMC.

4.3     Incident Notification and Response. GLH shall notify UMMC immediately, and in no event later than four (4) hours after discovery, of any actual or suspected outage, security incident, unauthorized access, loss of data, corruption event, malware event, ransomware event, or other compromise affecting the Pre-Closing IT Environment or any UMMC Systems. GLH shall fully cooperate with UMMC in investigating, containing, mitigating, remediating, and documenting any such event. Upon any such event, GLH shall provide UMMC immediate access to relevant logs, audit trails, images, vendor tickets, and technical personnel, and shall implement reasonable containment and remediation steps requested by UMMC with respect to UMMC Systems.

4.4     Logs; Audit Rights. GLH shall preserve logs and audit trails relating to the Pre-Closing IT Environment and any access thereto for not less than two (2) years after expiration or termination of this Agreement, and shall provide copies promptly upon UMMC's request. UMMC and its designees may audit GLH's compliance with this Agreement on reasonable notice.

4.5     Privacy and Regulated Data. To the extent UMMC Systems contains protected health information, personally identifiable information, or other regulated data, GLH shall protect such information in accordance with this Agreement and applicable law. Nothing in this Agreement authorizes GLH to use, access, disclose, or process such information for GLH's own purposes.

4.6     Preservation of Lease / Support Status. GLH shall preserve the Pre-Closing IT Environment and shall not surrender, return, replace, de-install, relocate, materially reconfigure, or permit repossession of any material component thereof without UMMC's prior written consent. GLH shall not permit any support, maintenance, subscription, software assurance, warranty, or entitlement covering the Pre-Closing IT Environment to lapse, terminate, or be suspended prior to the earlier of Closing or completion of UMMC's removal rights under Article 6.

## ARTICLE 5
## OWNERSHIP; CONFIDENTIALITY; NON-USE

5.1     Ownership. All UMMC Systems are and shall remain the sole and exclusive property of UMMC. GLH acknowledges that it acquires no ownership, license, intellectual property right, integration right, possessory right, or other interest in or to any UMMC Systems by virtue of this Agreement or UMMC's use of the Pre-Closing IT Environment. For the avoidance of doubt, nothing in this Agreement grants UMMC any ownership interest in the underlying hardware or in any Server Agreement prior to Closing; provided, however, that all UMMC Systems, implementation work product, and technical architecture created or supplied by or on behalf of UMMC shall be and remain the sole and exclusive property of UMMC.

5.2     No Lien; No GLH Property. GLH shall not assert, and hereby waives, any lien, security interest, right of retention, setoff, recoupment, adequate protection claim, administrative expense claim, or other claim against any UMMC Systems. To the maximum extent permitted by law, the parties agree that UMMC Systems are not assets or property of GLH and shall not be

used, sold, assigned, transferred, pledged, or otherwise disposed of by GLH or in connection with any bankruptcy, insolvency, receivership, or similar proceeding of GLH.

5.3     Confidentiality and Non-Use. GLH shall hold all UMMC Systems in strict confidence and shall not copy, download, image, disclose, transmit, publish, use, analyze, mine, reverse engineer, decompile, sell, license, exploit, or otherwise use any UMMC Systems for any purpose whatsoever other than hosting them in accordance with this Agreement. GLH shall cause all of its employees, trustees, representatives and agents to comply with the same restrictions.

## ARTICLE 6
## FAILURE OF CLOSING; REMOVAL RIGHTS

6.1     If the Closing Occurs. If the Closing occurs, UMMC shall take ownership of, leasehold rights in, license rights in, or possession and control of only those portions of the Pre-Closing IT Environment that are expressly conveyed, assigned, licensed, made available, or otherwise transferred to UMMC at Closing pursuant to the Contribution Agreement and related Closing documents; provided, however, if there are any components that are not contributed and transferred to UMMC as part of the Closing, UMMC shall have all rights under this Agreement to continue to use such components until UMMC determines, in its sole discretion, that its systems, data, and operations have been transitioned to UMMC's permanent production environment or otherwise no longer require the portion of the Pre-Closing IT Environment that is not transferred to UMMC.  UMMC may remove or disable UMMC Systems, firewall rules, switch settings, controller settings, SSIDs, certificates, monitoring connections, backups, logs, and other UMMC-created or UMMC-controlled elements at any time, and GLH shall have no right to continue using such item after failure of Closing except with UMMC's prior written consent.

6.2     If the Closing Does Not Occur. If the Closing does not occur for any reason, or if the Contribution Agreement is terminated for any reason, UMMC shall nevertheless have the right during the Removal Period to continue to access and use the Pre-Closing IT Environment solely to remove, export, migrate, disable, wipe, or otherwise recover and protect UMMC Systems, and GLH shall continue to perform all hosting, access, security, confidentiality, and cooperation obligations required by this Agreement during the Removal Period.

6.3     Deletion and Certification. After UMMC confirms in writing that it has completed such removal or wipe activities, GLH shall promptly cease all hosting of UMMC Systems and shall permanently delete and destroy all remaining copies, extracts, images, backups, and other embodiments of UMMC Systems in its possession, custody, or control, except to the extent retention is expressly required by applicable law. Within ten (10) business days thereafter, GLH shall deliver a written certification of deletion and destruction signed by an authorized officer.

6.4     No Liability to UMMC if No Closing. If the Closing does not occur, no party shall have any claim against UMMC arising out of or relating to the failure of the Closing to occur, the negotiation or execution of this Agreement, or UMMC's use of the Pre-Closing IT Environment as contemplated hereby, including any claim for reliance, promissory estoppel, expectation damages, lost profits, or other similar theory.  UMMC shall have no liability whatsoever under

any Server Agreement or to any lessor, licensor, vendor, reseller or other third party by reason of executing and entering into this Agreement or using the Pre-Closing IT Environment.

## ARTICLE 7
## TERM; SURVIVAL; REMEDIES

7.1     Term. This Agreement shall commence on the Effective Date and remain in effect until the earlier of (a) written termination by UMMC, or (b) completion of the obligations in Section 6.3, except that all confidentiality, ownership, no-lien, no-use, survival, and remedies provisions shall survive as provided herein.

7.2     Survival. The provisions of this Agreement relating to confidentiality, non-use, access restrictions, security, ownership, no lien, no GLH property, incident response, deletion and destruction, governing law, venue, and remedies shall survive the failure of the Closing to occur and any expiration or termination of this Agreement.

7.3     Specific Performance and Injunctive Relief. GLH acknowledges that any breach of this Agreement may cause UMMC immediate and irreparable harm for which monetary damages may be inadequate. UMMC shall therefore be entitled to temporary, preliminary, and permanent injunctive relief, specific performance, and other equitable remedies, without the necessity of proving actual damages or posting bond, in addition to all other rights and remedies available at law or in equity.

7.4     Allocation of Responsibility; No Assumption by UMMC.  As between GLH and UMMC, GLH shall be solely responsible for, and shall satisfy, pay, discharge,  and resolve, any and all claims, demands, causes of action, liabilities, losses, damages, costs, expenses, fines, penalties, response costs, and reasonable attorneys' fees and expenses actually incurred arising out of or relating to: (a) any unauthorized access to, use of, disclosure of, loss of, or damage to UMMC Systems or the Pre-Closing IT Environment caused by GLH or any GLH representative or agent; (b) any security incident, outage, corruption, or compromise affecting UMMC Systems caused by GLH or the Pre-Closing IT Environment; and (c) any claim by Cisco Systems Capital Corporation, SHI, or their respective affiliates, any other lessor, licensor, vendor, service provider, or other third party arising from or relating to UMMC's authorized pre-Closing access to or use of the Pre-Closing IT Environment, except, in each case, to the extent resulting solely from the gross negligence or willful misconduct of UMMC.  All such matters are and shall remain obligations of GLH and not of UMMC, and UMMC shall have no responsibility therefor. GLH acknowledges that it is solely responsible for addressing, defending, resolving, and paying any such matter.

## ARTICLE 8
## MISCELLANEOUS

8.1     Relationship to Contribution Agreement. This Agreement governs pre-closing hosting, access, and security matters relating to the Pre-Closing IT Environment. In the event of any conflict between this Agreement and the Contribution Agreement, this Agreement shall control as to such pre-closing IT hosting, access, security, confidentiality, and removal matters, and the Contribution Agreement shall otherwise control.

8.2     Notices. Any notice under this Agreement shall be given in the manner and to the addresses set forth in the Contribution Agreement unless the parties agree otherwise in writing.

8.3     Governing Law; Venue. This Agreement shall be governed by the laws of the State of Mississippi, without regard to conflict-of-laws principles, except to the extent federal law or any order in the Bankruptcy Case applies. Venue for any action arising out of or relating to this Agreement shall lie exclusively in the Bankruptcy Court while the Bankruptcy Case is pending and, thereafter, in the state or federal courts located in Hinds County, Mississippi.

8.4     No Assignment. Neither party may assign, by operation of law or otherwise, this Agreement without the other party's prior written consent.

8.5     Amendments; Waivers. This Agreement may be amended only in a writing signed by GLH and UMMC. No waiver shall be effective unless in writing and signed by the party against whom enforcement is sought.

8.6     Entire Agreement. This Agreement constitutes the entire agreement of the parties with respect to the subject matter of pre-closing hosting and access by UMMC to the Pre-Closing IT Environment and supersedes all prior or contemporaneous oral and written understandings relating thereto.

8.7     No Third-Party Beneficiaries. Except as expressly provided in Article 7 with respect to UMMC's equitable remedies, nothing in this Agreement is intended to confer upon any person other than the parties any rights or remedies hereunder.

8.8     Severability. If any provision of this Agreement is held invalid or unenforceable, the remaining provisions shall remain in full force and effect, and the invalid or unenforceable provision shall be enforced to the maximum extent permitted by law to carry out the parties' intent.

8.9     Counterparts; Electronic Signatures. This Agreement may be executed in counterparts and by electronic or PDF signature, each of which shall be deemed an original and all of which together shall constitute one instrument.

[Signature Pages Follow]

**GREENWOOD LEFLORE HOSPITAL**

By: _Harris Powell_
Name: _Harris Powers, Jr._
Title: _Chairman_
Date: _6-29-26_

**THE UNIVERSITY OF MISSISSIPPI MEDICAL CENTER**

By: _____
Name: _____
Title: _____
Date: _____

*Signature Page to Pre-Closing Hosting and Access Agreement*

## EXHIBIT A

Designated Pre-Closing It Environment

(See attached.)